UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

MICHAEL WARD d/b/a BRAINTEASER
PUBLICATIONS,

                Plaintiff,

                - against -

BARNES & NOBLE, INC., STERLING
PUBLISHING CO., INC., FRANCIS HEANEY,
and PATRICK BLINDAUER,

                Defendants.

------------------------------------------------------------- x

Civil Action No. 13-cv-7851 (JMF)

## DEFENDANTS' ANSWER TO COMPLAINT
## AND AFFIRMATIVE DEFENSES

Defendants Barnes & Noble, Inc., Sterling Publishing Co., Inc. ("Sterling"), Francis Heaney, and Patrick Blindauer (collectively, "Defendants"), by and through their counsel, hereby respond to the Complaint filed by Plaintiff Michael Ward d/b/a Brainteaser Publications ("Plaintiff" or "Ward") as follows:

1. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1, and accordingly deny the allegations therein.

2. Admitted.

3. Admitted.

4. Admitted.

5. Defendants admit that Patrick Blindauer is an employee of Sterling, but deny the remaining allegations in Paragraph 5.

## JURISDICTION AND VENUE

6. Defendants admit that this Court has subject matter jurisdiction over actions arising under the copyright and trademark laws of the United States, and do not contest that venue is proper in this district. Defendants deny the merits of Ward's claims, and deny the remaining allegations in Paragraph 6.

## NATURE OF CASE

7. Defendants admit that the Complaint purports to allege causes of action arising under the copyright and trademark laws of the United States, as well as causes of action for unfair competition and unjust enrichment. Defendants deny the merits of the allegations in the Complaint, and further state that such allegations fail to state a claim for copyright infringement, trade dress infringement, unfair competition or unjust enrichment.

## INFRINGING ACTS

8. Defendants admit that Ward is an author, but deny the remaining allegations in Paragraph 8.

9. Admitted.

10. Admitted.

11. Defendants admit that Francis Heaney and Patrick Blindauer have been employed by Sterling, but deny the remaining allegations in Paragraph 11.

12. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12, and accordingly deny such allegations. In further response to such allegations, Defendants state that on or about October 14, 2004, Plaintiff entered into a publishing agreement with Sterling whereby (a) Sterling agreed to publish works authored by Plaintiff "tentatively entitled SCRATCH HANGMAN, a series from which six

books are to be published initially under the terms of this Agreement with an option for two additional books every six months, (the "Work")", and (b) to the extent Sterling "supplie[d] material for the Work (such as illustrations), [Sterling] may copyright such material in its own name or in the name of its owner, as [Sterling] may elect."

13. Defendants deny the allegations set forth in Paragraph 13, except state that Sterling and Ward entered into the aforesaid October 14, 2004 publishing agreement (a copy of which was not attached to the Complaint, as Plaintiff alleges, but is attached hereto as Exhibit A), and a publishing agreement dated January 22, 2013 (a copy of which is attached as Exhibit B to the Complaint), among other agreements. Defendants further state that such agreements speak for themselves.

14. Defendants deny the allegations set forth in Paragraph 14, except state that Sterling has published approximately forty (40) Hangman-themed books in its SCRATCH & SOLVE Hangman book series (said series being owned by, and said series name being a registered trademark of Sterling, *i.e.*, U.S. Trademark Registration No. 3,168,718), which books contain words and phrases, *i.e.*, text, that were contributed by Plaintiff and others, including Defendants Heaney and Blindauer. Defendants further state that the referenced books speak for themselves.

15. Defendants deny the allegations set forth in Paragraph 15, except state that Sterling submitted to Plaintiff, at Plaintiff's request, the release attached as Exhibit E to the Complaint, the terms of which speak for themselves, and Plaintiff declined to execute such release.

16. With respect to the allegations set forth in Paragraph 16, Defendants state that although Plaintiff did not authorize or license Defendants to publish the purported "Scratch-

Hangman" series under any other author's names, they deny that any such authorization was necessary, as Sterling is the owner of the SCRATCH & SOLVE Hangman book series, and the owner or licensee of the artwork and other subject matter complained of.

17. Denied.

18. Denied.

19. Defendants deny the allegations in Paragraph 19, and further state that since Sterling is the owner of the series of books published under the SCRATCH & SOLVE name, and the owner or licensee of the artwork and other materials it contributed to such series, it was not required to alert Plaintiff as to the publications at issue, obtain Plaintiff's agreement thereto, or compensate Plaintiff therefor.

20. Denied.

21. Denied.

22. Denied.

## FIRST CLAIM FOR RELIEF
### (Copyright Infringement)

23. Defendants restate and incorporate by reference their responses to Paragraphs 1-22 as if fully set forth herein.

24. Denied.

25. Denied.

26. Denied.

27. Denied.

28. Denied.

29. Denied.

30. Denied.

31. Denied.

32. Denied.

33. Denied.

34. Denied.

## SECOND CLAIM FOR RELIEF
### (Infringement)

35. Defendants restate and incorporate by reference their responses to Paragraphs 1-34 as if fully set forth herein.

36. Denied.

37. Denied.

38. Denied.

39. Denied.

40. Denied.

## THIRD CLAIM FOR RELIEF
### (Unfair Competition under New York Common Law)

41. Defendants restate and incorporate by reference their responses to Paragraphs 1-40 as if fully set forth herein.

42. Denied.

43. Denied.

44. Denied.

45. Denied.

46. Denied.

47. Denied.

## FOURTH CLAIM FOR RELIEF
(Unjust Enrichment)

48. Defendants restate and incorporate by reference their responses to Paragraphs 1-47 as if fully set forth herein.

49. Denied.

50. Denied.

51. Denied.

52. Denied.

53. Denied.

## PRAYER FOR RELIEF

Defendants deny that Plaintiff is entitled to any of the requested relief, and deny all allegations in Plaintiff's prayer for relief.

## AFFIRMATIVE DEFENSES

Defendants allege and assert the following defenses, affirmative or otherwise, without assuming any burden of proof that they would not otherwise have. In addition to the affirmative defenses set out below, and subject to their responses above, Defendants specifically reserve all rights to assert additional defenses, affirmative or otherwise, that become known through the course of discovery.

## FACTS COMMON TO ALL AFFIRMATIVE DEFENSES

In support of their affirmative defenses to Plaintiff's claims, Defendants allege the following facts common to all such defenses:

1. Sterling's first publishing agreement with Plaintiff, dated October 14, 2004 (a copy of which is attached hereto as Exhibit A), provided for the publication and distribution of six books having a Hangman-game theme, with an option for the publication of additional books.

6

Such agreement further provided that Plaintiff would be the owner of copyright in such books, except to the extent Sterling "supplie[d] material for the Work[s] (such as illustrations)".

2. The only materials provided by Plaintiff for such books, or for any Hangman-themed books later published by Sterling that credit Plaintiff as the author, were the "words and phrases" that comprised the answers to the various Hangman puzzles. Sterling, however, provided the Hangman game illustrations and artwork used throughout the SCRATCH & SOLVE Hangman series, as well as the cover illustrations and artwork for each book, and, accordingly, Plaintiff was not, and is not the owner of copyright thereof.

3. In subsequent publishing agreements entered into by Sterling and Plaintiff, such as the January 22, 2013 agreement attached as Exhibit B to the Complaint, the parties agreed that Plaintiff's sole contribution thereto would be a "sufficient list of words and phrases to fill 96 pages". Such contributions by Plaintiff were further defined as the "Works" that were the subject of said agreements, and Sterling agreed to register copyright in Plaintiff's name solely for such each such "Work", *i.e.*, the "words and phrases" contributed by Plaintiff, and not the remaining subject matter of each book, including the Hangman game illustrations and artwork used throughout the books, or the cover illustrations and artwork used thereon, all of which were contributed by Sterling.

4. Consistent with the parties' aforesaid agreements, when applying to register copyrights in any books for which Plaintiff received authorship credit, Sterling expressly limited the scope of each such copyright application to the "text" or "entire text" of such books. Accordingly, at no time has Plaintiff ever owned a copyright, or intellectual or other property right of any kind, in the illustrations and other materials contained within such books, or on their covers, all of which were contributed by Sterling.

5. Moreover, contrary to Plaintiff's assertion that he "came up with the concept and created the unique style" of the SCRATCH & SOLVE Hangman series books, for years prior to ever having contracted with Plaintiff, Sterling had published and widely distributed a popular, similarly styled series of books of puzzles, games, challenges and crosswords under the name SIT & SOLVE (said series name being a registered trademark of Sterling, *i.e.*, U.S. Trademark Registration No. 3,076,650). Further, in 2005, Sterling launched a popular parallel series of similarly styled books in the fields of puzzles, games and challenges, including hangman games and crossword puzzles marketed under the name SIP & SOLVE (said series name also being a registered trademark of Sterling, *i.e.*, U.S. Trademark Registration No. 3,168,719).

6. In addition, well prior to having published any of the SCRATCH & SOLVE Hangman game books for which Plaintiff is credited as author, Sterling had already established a significant reputation and substantial goodwill among the consuming public as the publisher of a quality series of game books marketed and sold under the name SIT & SOLVE. Sterling's subsequent introduction of its SIP & SOLVE and SCRATCH & SOLVE series were accordingly marketed as extensions of its successful SIT & SOLVE series, and were collectively promoted using similar packaging, including a unique notch element at the top of each book, and displayed together on display racks specially designed to vertically hang such books together as part of an overall Sterling display of game books by the unique notch element.

7. As a result of the foregoing, the unique styling and presentation of Sterling's SCRATCH & SOLVE book series (including the Hangman books for which Plaintiff is credited as author) has long been associated in the minds of consumers with Sterling, not Plaintiff.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted, including, but not limited to, failure to meet the standard for pleading set by the Supreme Court in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claim for copyright infringement is barred because the Complaint fails to allege the particulars of the purported copyrighted work(s) and/or the copyright registration(s) upon which Plaintiff relies.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claim for copyright infringement is barred because the portions of the SCRATCH & SOLVE Hangman books that Defendants are alleged to have infringed do not consist of, comprise or constitute copyrightable subject matter.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff lacks standing to maintain his claim for copyright infringement because the elements of the SCRATCH & SOLVE Hangman books that Defendants are alleged to have infringed are not covered by any copyright registration issued in Plaintiff's name, given that such registrations cover only "text" or "entire text" (*i.e.*, the "words and phrases" Plaintiff contributed to such books).

## FIFTH AFFIRMATIVE DEFENSE

The subject matter of Plaintiff's claim for copyright infringement consists of, comprises or constitutes material not original to Plaintiff, and, therefore, there can been no infringement of any copyrights owned by Plaintiff.

## SIXTH AFFIRMATIVE DEFENSE

Any similarities existing between the materials contained in Sterling's accused books and

the materials contained in the books that credit Plaintiff as author relate to unprotectable ideas, and not the original expression of such ideas, and, therefore, there can be no infringement of any copyright owned by Plaintiff.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claim for copyright infringement is barred under the doctrine of misuse of copyright.

### EIGHTH AFFIRMATIVE DEFENSE

The portions of Sterling's books that have been accused by Plaintiff are not substantially similar to Plaintiff's alleged copyrighted subject matter, and, therefore, there has been no infringement.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's claim for copyright infringement is barred under the doctrine of fair use.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff's claim for trade dress infringement is barred because the Complaint fails to allege Plaintiff's purported trade dress with the requisite specificity.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claim for trade dress infringement is barred because Plaintiff's purported trade dress has not acquired secondary meaning.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claim for trade dress infringement is barred because Plaintiff's purported trade dress is functional and/or generic, in that it is used, and must be used, to play the Hangman game, and is, therefore, unprotectable.

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claim for trade dress infringement is barred because, to the extent any

protectable trade dress exists, it is owned by Sterling, as Sterling contributed the illustrations and artwork that comprises such alleged trade dress, while Plaintiff's contribution to the books on which he was credited as author was limited to "words and phrases".

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claim for trade dress infringement is barred, as there can be no likelihood of confusion between Plaintiff's alleged trade dress and any materials used by Sterling, since Sterling is identified as the source of the books in which such materials are found.

### FIFTEENTH AFFIRMATIVE DEFENSE

Defendants have not engaged in any acts or practices that are unfair, deceptive, untrue, or misleading.

### SIXTEENTH AFFIRMATIVE DEFENSE

Defendants have not engaged in any acts or practices that were undertaken in bad faith.

### SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's second through fourth claims are preempted, in whole or in part, under the Copyright Act.

### EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claim for unjust enrichment is barred, since there are underlying agreements between Plaintiff and Defendants, as identified in the Complaint.

### NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

### TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, under the doctrines of waiver, acquiescence and/or consent.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, under the doctrine of laches.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims for equitable relief are barred, in whole or in part, under the doctrines of equitable estoppel and/or unclean hands.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff has not been damaged in any amount or manner by reason of any of Defendants' alleged acts.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Without admitting that the Complaint states a claim, any remedies sought by Plaintiff are limited insofar as Plaintiff seeks an overlapping or duplicative recovery against Defendants for a single wrong.

## PRAYER FOR RELIEF

WHEREFORE, Defendants pray for judgment as follows:

1. That Plaintiff take nothing by way of his Complaint;

2. That Defendants recover their attorneys' fees and litigation-related expenses (including expert witness fees) as provided for by law;

3. That Defendants recover their costs of suit herein incurred; and

4. That Defendants be awarded such other and further relief as the Court deems just and proper.

Dated: November 27, 2013                Respectfully submitted,

                                        ARNOLD & PORTER LLP

                                    By  _____
                                        Louis S. Ederer
                                        Matthew T. Salzmann
                                        399 Park Avenue
                                        New York, NY 10022-4690
                                        Telephone: (212) 715-1000
                                        Facsimile: (212) 715-1399
                                        louis.ederer@aporter.com
                                        matthew.salzmann@aporter.com

                                        *Attorneys for Defendants Barnes & Noble, Inc.,
                                        Sterling Publishing Co., Inc., Francis Heaney and
                                        Patrick Blindauer*

# Exhibit A

**AGREEMENT** made October 14, 2004 between

**STERLING PUBLISHING CO., INC., (the "Publisher"),**
with offices at 387 Park Avenue South, New York, NY 10016,

and **MIKE WARD (the "Author"),**
of Brainteaser Publications, P.O. Box 10101, Hamilton 2035, New Zealand

the author and proprietor of a work tentatively entitled
**SCRATCH HANGMAN**, a series from which six books are to be published initially under the terms of this Agreement with an option for two additional books every six months, **(the "Work").**

In consideration of the following covenants, the parties hereby mutually agree as follows:

1. **Grant of Rights; Term; Territory.** The Author grants and assigns to the Publisher, during the full term of copyright and any renewals thereof, the exclusive rights to manufacture, publish, distribute and vend the Work in the printed book form and all E-versions in any and all languages throughout the world, together with all ancillary and additional rights pertaining to the Work.

2. **Copyright.** The Publisher shall copyright the Work in the United States in the name of the Author. If the Publisher supplies material for the Work (such as illustrations), the Publisher may copyright such material in its own name or in the name of its owner, as the Publisher may elect.

    The Author shall take all steps necessary to protect the copyright, its renewals and all rights pertaining to the Work. The Publisher shall have the right to commence litigation in the name of the Publisher, Author, or both, for the purpose of enjoining infringements of the copyright or other rights in and to the Work and for recovering resulting damages. Any recovery from such litigation (after deducting all incident expenses) shall be divided between the Author and the Publisher in accordance with the percentages set forth in this agreement, as though the Publisher had authorized the infringing act in the exercise of its rights.

3. **Royalties; Advance.** In full consideration for the rights granted to the Publisher, and for the Author's promises, warranties and representations, the Publisher agrees to pay to the Author the following royalties based on all copies of the Work sold by the Publisher in the United States and paid for, less returns:

    a. For regular hard-cover trade editions, on sales made at discounts up to 50% off the list price, 10% based on the suggested retail list price; on sales made at discounts of 50% or more off the list price, 10% based on the net amount billed;

    b. For paperback editions, 10% of the net amount billed on sales made at discounts up to 50% off the list price, 5% of the net amount billed on sales made at discounts of 50% or more off the list price;

    c. For all sales of sheets, the royalty shall be the same as for bound books;

    d. For all books sold outside the United States, one-half of the stipulated royalties;

    e. For all sales where the Publisher has made advertising allowance to a dealer for special promotion or sale of the Work, for special printed editions, and for sales made as a result of special mail order advertising, direct mail, display marketing, school book fairs, or the Publisher's efforts to find an additional market outside of regular bookstore sales, one-half of the stipulated royalties;

    f. For all copies sold for premium use or as special editions, 5% of the net amount received by the Publisher;

    g. For all copies of an omnibus edition sold by the Publisher under its own imprint containing the Work or an abridgement of it, that proportion of 5% of the net amount billed on all copies sold, as the Work bears to all literary properties contained in said book;

h. In the event the Publisher creates a kit or gift set using the book plus additional components, the :vailing royalty shall be calculated on the percentage that the book cost represents of the total cost of the actual :kage. Total cost is defined as packaging and all components;

i. No royalties shall be paid for copies sold to or furnished gratis to the Author, or furnished to third parties for review, bonus, advertising, sample or like purpose, or for copies that are defective, unsalable, sold at a loss or destroyed.

As an advance against all monies due the Author under this Agreement, the Publisher shall pay an advance of $3,000.00 per book for a total of $18,000.00, for the first six books, payable one-half upon signing the contract, one-half upon publication.

**4. Ancillary Rights.** The Publisher shall have the right to sell, lease, license and otherwise dispose of the following rights in and to the Work to third parties. The net proceeds thereof, after deducting all direct expenses incurred by the Publisher shall be shared as follows:

a. First periodical rights (publication in periodical form before book publication) 50% to the Author and 50% to the Publisher;

b. Second periodical rights (publication in pamphlets, compilations, magazines, newspapers or other books after book publication) 50% to the Author and 50% to the Publisher;

c. Abridgement, condensation, digest, excerpt, extract, anthology and serialization rights, 50% to the Author and 50% to the Publisher;

d. Hardcover and paperback reprints by third parties including book clubs (after deduction by the Publisher of the cost of films or plates), 50% to the Author and 50% to the Publisher;

e. Dramatic, motion picture, radio and/or television, microfilm, electronic media rights or by any other reproduction method now or hereafter known or devised, 50% to the Author and 50% to the Publisher;

f. Foreign publication and translation rights in book or serial form (in full length, condensed or abridged version), 50% to the Author and 50% to the Publisher;

g. Commercial tie-in and merchandising rights, 50% to the Author and 50% to the Publisher;

h. All rights not otherwise specified, 50% to the Author and 50% to the Publisher;

i. The Publisher is authorized to permit publication of the Work in Braille, or photographing, recording and/or microfilming the Work for the physically handicapped without payment of fees; in case compensation is received, 50% to the Author and 50% to the Publisher;

j. For electronic rights, which means the sole and exclusive right to use or adapt, and to authorize others to use or adapt, distribute or market, the Work or any portion thereof, as a basis for photographic, video, audio, digital or any other form or method of copying, recording or transmission, now known or hereafter devised including, without limitation, copying or recording by phonographic, photographic, magnetic, laser, electronic or any other means and whether on phonographic records, film, microfilm, microfiche card or other microfiche reproductions, slides, filmstrips, transparencies, electronic, chemical, photographic or other method of reprography, programmed instruction, magnetic tape, video cassettes, video discs, CD-ROMS, databases, online services and/or other electronic channels, computers or computer programs, floppy disks or any other human or machine-readable medium, or any system for the storage and retrieval of information, and the reproduction or dissemination thereof by any means, and the broadcast or transmission thereof, 50% to the Author and 50% to the Publisher.

**5. Author's Warranties.** The Author represents and warrants that except as otherwise specifically set forth in this Agreement, the Work as submitted is original; that he is the sole author, writer, creator, and proprietor of the Work, and has full power to enter into this Agreement; that the Work has not heretofore been published in whole or in part, in book form or otherwise and that he has not entered into nor become bound by any contract, agreement, or understanding with any third party with respect to the Work other than this Agreement; that neither the Work nor any part thereof is in the public domain; that the Work does not contain any writings or other matter previously published (either by the Author or by any other party) for which the Author has not obtained satisfactory written permission from the owners for inclusion in the Work, and the Author shall deliver copies of these written permissions to the Publisher; and that the Work contains no libelous or other unlawful matter, and in no way infringes upon any copyright or violates any other right of any party.

The Author shall indemnify and hold the Publisher harmless from and against any claim, demand, suit, action or proceeding and any loss, liability, damage, cost or expense incurred by the Publisher arising out of or for the purpose of avoiding, defending or settling any litigation or demand which may be commenced or asserted against the Publisher by reason of the Publisher's exercise of any of the rights granted to the Publisher by the Author. Each party shall serve the other with prompt, written notice of such litigation or demand commenced or asserted against it.

The Author shall not, while the work is in print (without the written consent of the Publisher), write, print or publish, or cause to be written, printed or published, any revised, corrected, enlarged or abridged version of the

Work, or in any way assist or be involved in the creation of any such version or in any book or publication of a character that might interfere with or reduce sales of the Work.

Each of the foregoing warranties and representations shall survive the expiration or termination of all of the Publisher's rights under this Agreement.

6. **Delivery of Manuscript.** The Author shall deliver to the Publisher not later than October 18, 2004 for the first four books and April 4, 2005 for the fifth and sixth books, complete, clean, legible, final copies of the manuscripts of the first two books, acceptable and satisfactory to the Publisher in content and form. At the same time and at his own expense, the Author shall deliver to the Publisher all photographs, art work, drawings, charts, maps and designs which (in the opinion of the Publisher) are necessary parts of the Work. See Addendum 2A and Addendum 2B, Instructions for Authors. The Author shall obtain all written permissions required for the inclusion of the foregoing materials in the Work. Moreover, if the Author delivers a manuscript that is not clean and legible, the Publisher may have the original retyped or duplicated and charge the expense thereof against the Author. If the Author fails to supply all of the materials required to be delivered under this paragraph, the Publisher may cause same to be made and charge the expense thereof against the Author.

The Publisher shall exercise the same care with any manuscripts, illustrations or other property belonging to the Author as it would take of its own property.

The provisions of this paragraph as to the character, condition and time of receipt of the materials referred to herein are of the essence of this Agreement. In the event of the Author's default under this paragraph, the Publisher may, at its option, decline to publish the Work. The Author shall then have 30 days following demand by the Publisher to return to the Publisher all amounts advanced to the Author or paid out on behalf of the Author by the Publisher hereunder. The Author's failure to return such sums shall entitle the Publisher to retain all rights in and to the Work.

7. **Editing and Marketing.** The Publisher shall have the right to make all decisions concerning editing and revising the text and illustrations of the Work; and the manners of design, publication, production, marketing, distribution, advertising and publicity of the Work. The Publisher shall publish the Work in such style, at such price and under such title and imprint as it may deem advisable.

The Author grants to the Publisher the right to use and exploit the Author's photograph, name, likeness and biographical data in connection with the promotion, exploitation, publicity, advertising and sale of the Work and in all other rights hereunder.

The Author acknowledges that the Publisher may authorize free quotation of excerpts from the Work as it may consider desirable for its promotion and sale.

In the event the Work is not published within two years of the submission of a complete and satisfactory manuscript of the Work, the Author may terminate this Agreement by giving the Publisher written notice that publication must commence within six months of the date of such notice. If the Publisher does not commence publication of the Work within said six-month period, this Agreement shall then terminate and the Publisher shall return the manuscript to the Author.

8. **Author's Alterations.** In the event that the Publisher supplies the Author with galley or page proofs for checking, the Author shall return them with the Author's corrections within 14 days of the Author's receipt. All expenses in excess of $100.00 incurred in connection with altering any proofs from final copy shall, if made pursuant to a direction from the Author, be charged to the Author.

9. **Revisions.** If the Publisher determines after publication that revisions to the Work are desirable, the Publisher shall notify the Author of same and the Author shall make such revisions. The Author shall have three months following the Publisher's notice as aforesaid to deliver a satisfactory revision of the Work to the Publisher. If the Author fails to supply the Publisher with a satisfactory revision within said three month period, the Publisher may engage another party to make such revision, in which event the Publisher may charge against the Author's royalty account all expenses incurred.

10. **Accountings.** The Publisher shall render to the Author (or to such representative as the Author may designate in writing), in April and October of each year, statements of sales and earnings of the Work during the six month period ending the preceding December 31 and June 30, respectively. Such statements shall be accompanied by payment of amounts due the Author. However, the Publisher shall have the right to withhold a reasonable reserve for returns against royalty earnings. Whenever earnings in any six-month period fall below $25.00, no accountings shall be made until the next settlement date after earnings have aggregated that amount.

In the event that the Author receives an overpayment of royalties or other sums from the Publisher, or is otherwise indebted to the Publisher, the Publisher may deduct the amount thereof from any further royalties or other

sums otherwise due from the Publisher to the Author hereunder or under any other agreement between the parties. The foregoing shall not apply to any unearned advances specified by the parties as only applying to a work other than the Work.

Upon written request to the Publisher and during reasonable business hours, the Author may examine the Publisher's books of account with respect to the Author. Notwithstanding, the Author shall have no more than two years after receiving any statement or royalty payment to examine the books and records. No litigation pertaining to any statement or royalty rendered to the Author may be commenced more than two years following the rendition of said statement or royalty to the Author.

11. **Author's Copies.** The Publisher shall furnish the Author with 24 copies of each book when published, free of charge. Additional copies may be purchased by the Author at a discount of 40% off the list price, free of royalty. The Publisher will bill the Author and the Author agrees to make payment within 60 days of the invoice date. The Author may resell such copies to individuals, but may not sell to libraries, schools, bookstores, book wholesalers, retail stores or organizations.

12. **Remainders; Out of Print.** If the Publisher at any time has unsold, returned, damaged or defective copies of the Work on hand which, in the Publisher's judgement, could not be sold on usual terms within a reasonable time, the Publisher may sell copies of the Work at the best price obtainable. If such price is at or below the Publisher's cost, no royalties shall be payable to the Author on such sales. Whenever demand for the Work, in the Publisher's judgement, shall be insufficient to render its continued publication profitable, the Publisher shall have the right to allow the Work to go out of print.

13. **Reversion of Rights.** In the event there is no edition of the Work in print (regular, reprint or other including translations), and no contract in existence for the publication of any such reprint or other such edition or for use of the Work in any manner; and there is no unearned royalty advance or other unsatisfied indebtedness of the Author to the Publisher; and no earnings have been payable to the Author hereunder during two successive accounting periods, the Author may demand the reversion of all rights hereby granted to the Publisher. In the event that the Author shall make such demand, the Publisher shall have six months during which it may arrange for reprinting or other use of the Work or submit evidence of anticipated earnings from the Work in which case this agreement shall continue in full force and effect. If at the expiration of such six-month period the Publisher shall not have made any such arrangement or submitted such evidence, all rights hereby granted to the Publisher shall revert to the Author, excepting only the representations, warranties, covenants and indemnities made to the Publisher hereunder.

14. **Notices.** All notices, statements or other documents which either party shall be required or shall desire to give to the other hereunder must be in writing and shall be given by the parties only by personal delivery, registered or certified mail.

15. **Heirs and Successors.** This Agreement shall be binding upon and enure to the benefit of the parties and their heirs, executors, administrators, successors and assigns. The Author may assign his rights (but not his obligations) hereunder upon written notice to the Publisher. The Publisher may assign any right granted to the Publisher hereunder but may not, without the written consent of the Author (which shall not be unreasonably withheld), assign this Agreement as an entirety except to a wholly-owned subsidiary or in connection with the sale or transfer of substantially all of its book publishing business or any entire department thereof.

16. **Force Majeure.** The performance by the Publisher on its part hereunder is subject to shortages of or governmental restrictions on essential materials and supplies, delays by the Author, acts of war, strikes or other conditions beyond the Publisher's control.

17. **Arbitration.** Any controversy arising out of or relating to this Agreement or any modification or extension thereof, including any claim for damages and/or rescission, shall be settled by arbitration before a panel of three (3) arbitrators in New York City, in accordance with the rules then obtaining of the American Arbitration Association.

The parties consent to the jurisdiction of the Supreme Court of the State of New York, and of the United States District Court for the Southern District of New York, for all purposes in connection with arbitration, including the entry of judgment on any awards. The parties further consent that any process, notice of motion or any paper in connection with arbitration, may be served by certified mail or by personal service, provided that a reasonable time for appearance is allowed.

The arbitrators shall have no power to alter or modify any express provision of this Agreement or to render an award which has the effect of altering or modifying any express provision hereof.

In the event the arbitrators determine that the Author has defaulted hereunder, the Publisher shall be entitled to an award of legal fees in addition to any other award or relief granted to the Publisher by the arbitrators.

4

**18. Entire Agreement.** This Agreement contains the entire understanding between the parties, supersedes all previous oral or written representations or agreements with respect to the Work, and may not be changed, modified or discharged orally. The captions in this Agreement are for convenience only and are not to be considered in construing this Agreement.

**19. Not Binding.** This Agreement shall not be binding unless it is signed by the Author and returned to the Publisher within a period of one month from the date of this Agreement.

**20. Option for Future Works.** The Author grants to the Publisher the option to publish two more books every six months upon the same terms and conditions as set forth herein. The Publisher shall notify the Author three months before July 1 or January 1 of each year that the Publisher wishes to exercise the option. As long as the Publisher continues to exercise its option of two books every six months, the Author will grant exclusive rights to the Publisher to publish all Scratch Hangman Puzzles in book form in North America.

**IN WITNESS WHEREOF**, the parties have executed this Agreement the day and year first above written.

STERLING PUBLISHING CO., INC.  AUTHOR

_____  _____
Charles G. Nurnberg              Mike Ward
President & CEO

## ADDENDUM 1 TO CONTRACT

We need the following information with the return of your contract without fail. Please type in or print the information requested.

_____  MIKE WARD _____
Your name as you want it to appear on the cover of the book.

_____
Any educational degrees or special affiliations, if appropriate, which should be included on the cover of the book.