**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MICHAEL WARD d/b/a/ BRAINTEASER
PUBLICATIONS,

                    Plaintiff,

        - against -

BARNES & NOBLE, INC., STERLING
PUBLISHING CO., INC., FRANCIS HEANEY,
and PATRICK BLINDAUER,

                 Defendants.

Civil Action No. 13-cv-7851 (JMF)

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

ARNOLD & PORTER LLP
Louis S. Ederer
Matthew T. Salzmann
Maxwell C. Preston
399 Park Avenue
New York, New York  10022
Tel:  212.715.1000
Fax:  212.715.1399

*Attorneys for Defendants*

## TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT ................................................................... 1

II.  FACTS NOT IN DISPUTE AND PRIOR PROCEEDINGS ............................................. 4

III. ARGUMENT ................................................................................. 8

    A.   The Accused Books Do Not Infringe Any Copyright Owned By Plaintiff ............ 9

        1.   Plaintiff Cannot Protect A Game Concept Via Copyright ....................... 12

        2.   Plaintiff Has No Copyright Interest In Alphabetically Ordered Letters Adjacent To Silver, Scratch-Off Device Circles ....................................... 13

        3.   Plaintiff's New Zealand Image Of A Hanging Man And Gallows Is Not Entitled to Copyright Protection ................................................ 14

        4.   Any Protectable Elements Of Plaintiff's New Zealand Book Artwork Are Not Substantially Similar to the Corresponding Elements in the Accused Books ................................................................. 15

            a.   The Cover Art Is Substantially Different ..................................... 16

            b.   The Lettering and Scratch-Off Devices Are Substantially Different ..................................................................... 16

            c.   The Hangman Figure Illustrations Are Substantially Different .... 17

            d.   The Gameboard Layouts Are Substantially Different ................. 18

            e.   The Total Concept and Feel Differs Substantially, and Any Similarity Flows Directly From the Idea of a Single-Player Hangman Game ............................................................ 19

    B.   Plaintiff Cannot Now Claim Ownership of Works He Did Not Create By Fabricating An Unpleaded Breach Of Contract Claim ............................. 20

    C.   Plaintiff Cannot Maintain A Claim For Trade Dress Infringement ................ 22

    D.   Plaintiff's Unfair Competition and Unjust Enrichment Claims Must Fail ......... 24

IV.  CONCLUSION .............................................................................. 25

## TABLE OF AUTHORITIES

**Cases**      **Page**

*Allen v. Academic Games League of Am., Inc.,*
   89 F.3d 614 (9th Cir. 1996) .................................................................................20

*Anti-Monopoly, Inc. v. General Mills Fun Group,*
   611 F.2d 296 (9th Cir. 1979) ...............................................................................12

*Belair v. MGA Entm't, Inc.,*
   503 F. App'x 65 (2d Cir. 2012) ...........................................................................10

*Bill Diodato Photography, LLC v. Kate Spade, LLC,*
   388 F. Supp. 2d 382 (S.D.N.Y. 2005)..................................................................14

*Durham Indus., Inc. v. Tomy Corp.,*
   630 F.2d 905 (2d Cir. 1980)...........................................................................*passim*

*Eyal R.D. Corp. v. Jewelex New York Ltd.,*
   784 F. Supp. 2d 441 (S.D.N.Y. 2011)............................................................24, 25

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.,*
   499 U.S. 340 (1991)..............................................................................................13

*Garza v. Marine Transp. Lines, Inc.,*
   861 F.2d 23 (2d Cir. 1988)...................................................................................22

*Heller Inc. v. Design Within Reach, Inc.,*
   2009 WL 2486054 (S.D.N.Y. Aug. 14, 2009)......................................................23

*Incredible Tech., Inc. v. Virtual Techs., Inc.,*
   400 F.3d 1007 (7th Cir. 2005) .............................................................................14

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.,*
   153 F.3d 82 (2d Cir. 1998).....................................................................................9

*Kerr v. New Yorker Magazine, Inc.,*
   63 F. Supp. 2d 320 (S.D.N.Y. 1999).....................................................................19

*Klauber Bros., Inc. v. Bon-Ton Stores, Inc.,*
   --- Fed. App'x ----, 2014 WL 657953 (2d Cir. Feb. 21, 2014)..............................19

*Kregos v. Associated Press,*
   3 F.3d 656 (2d Cir. 1993).....................................................................................11

**Page**

*Landscape Forms, Inc. v. Columbia Cascade Co.,*
   113 F.3d 373 (2d Cir. 1997)................................................................................................4, 23

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986)................................................................................................................9

*Milligan v. Worldwide Tupperware, Inc.,*
   972 F. Supp. 158 (W.D.N.Y. 1997)......................................................................11, 12, 14, 20

*Nat'l Lighting Co., Inc. v. Bridge Metal Indus., LLC,*
   601 F. Supp. 2d 556 (S.D.N.Y. 2009)....................................................................................23

*N.Y. Mercantile Exch., Inc. v. Intercontinental Exchange, Inc.,*
   497 F.3d 109 (2d Cir. 2007)..............................................................................................11, 20

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.,*
   269 F.3d 114 (2d Cir. 2001)...................................................................................................24

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,*
   602 F.3d 57 (2d Cir. 2010).........................................................................................10, 12, 16

*Reyher v. Children's Television Workshop,*
   533 F.2d 87 (2d Cir. 1976).....................................................................................................11

*SLY Magazine, LLC v. Weider Publications L.L.C.,*
   529 F. Supp. 2d 425 (S.D.N.Y. 2007)...............................................................................24, 25

*Team Play, Inc. v. Boyer,*
   391 F. Supp. 2d 695 (N.D. Ill. 2005) .....................................................................................14

*Walker v. Time Life Films, Inc.,*
   784 F.2d 44 (2d Cir. 1986)...........................................................................................10, 11, 14

*Ward v. Andrews McMeel Pub., LLC,*
   963 F. Supp. 2d 222 (S.D.N.Y. 2013).......................................................................14, 15, 18

*Warner Bros. Inc. v. Am. Broadcasting Cos.,*
   720 F.2d 231 (2d Cir. 1983).............................................................................................12, 16

*Weinstock v. Columbia Univ.,*
   224 F.3d 33 (2d Cir. 2000)......................................................................................................9

Page

*William S. Geiger Corp. v. Gigi Accessories, Inc.*,
   1997 WL 458668 (S.D.N.Y. Aug. 11, 1997)......................................................................13, 14

*Williams v. Crichton*,
   84 F.3d 581 (2d Cir. 1996)......................................................................................11, 14, 15

*Wrobel v. Cnty. of Erie*,
   692 F.3d 22 (2d Cir. 2012)..................................................................................................9

*Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC*,
   259 F.3d 25 (1st Cir. 2001)................................................................................................13

## Statutes, Rules & Secondary Authorities

17 U.S.C. § 101 ............................................................................................................11

17 U.S.C. § 102(b) .............................................................................................10, 12, 20

17 U.S.C. § 301(a) .......................................................................................................24

17 U.S.C. § 412.............................................................................................................9

37 C.F.R. § 202.1(a)......................................................................................................13

Fed. R. Civ. P. 56(a) ......................................................................................................9

4 Nimmer on Copyright § 2.18[H][3][a] ...................................................................12, 20

4 Nimmer on Copyright § 13.03[A][1]......................................................................11, 18

4 Nimmer on Copyright § 13.03[B][3]......................................................................11, 20

*I'm making a claim because Sterling basically stole my idea.*[1]

## I.   PRELIMINARY STATEMENT

In this action, Plaintiff Michael Ward is suing Defendants Barnes & Noble, Inc., its

subsidiary Sterling Publishing Co., Inc. ("Sterling"), Francis Heaney and Patrick Blindauer for

copyright and trade dress infringement, unfair competition, and unjust enrichment.  Plaintiff's

claims are based upon the interior artwork, illustrations and gameboard presentation that appear

in the five titles in Sterling's "Scratch & Solve" Hangman book series for which Plaintiff did not

contribute the puzzle text (the "Accused Books").  As with the titles in the Scratch & Solve

series for which Plaintiff contributed the text, Sterling, not Plaintiff, created and owns the

interiors of the Accused Books.

According to Plaintiff, he was the first to conceive of a one-player scratch-off Hangman

game, and Defendants should be liable to him for copyright and trade dress infringement because

they "stole his idea."  In fact, Plaintiff was not actually the first to conceive of the centuries-old

word game Hangman, the idea of how to play it with a single player, or of scratch-off puzzle

games.  But even if his version of the facts were true, they do not give rise to claims for

copyright or trade dress infringement.  Plaintiff undisputedly did not create or contribute the

interior artwork, illustrations, and gameboard presentation expressing the idea about which he

complains.  Defendants own the protectable copyright and trade dress rights in such expression.

Plaintiff, having elected not to attempt to protect his allegedly new way to play Hangman by way

of patent, has no legitimate claim to any intellectual property rights in the look and feel of the

interiors of any of the books in Sterling's Scratch & Solve series.  Accordingly, Defendants are

entitled to summary judgment dismissing Plaintiff's ill-conceived claims under FRCP 56.

---

[1] Defendants' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Def. 56.1") ¶ 51.

What Plaintiff is trying to do in this case is claim ownership of any expression of his purported version of "Hangman", a game he concededly did not invent, but which he claims to have adapted for play by one player instead of two. Plaintiff's version of "Hangman" involves a single player scratching off circles that appear directly above each letter of the alphabet, to reveal whether or not that letter is part of the word that solves the game. Although he initially applied for a patent for this game in his home country of New Zealand, Plaintiff chose not to pursue that application, and never applied for a patent in the U.S. From a copyright standpoint, Plaintiff may not exclude others from using the "idea" for a game. At best he may be able to protect, on some level, his particular expression of that idea, and nothing more. Defendants, however, did not copy any such particular expression.

Until his deposition on March 20, 2014, Defendants had assumed, from the allegations in his Complaint (Exhibit ("Ex.") 1 ¶¶ 23-34),[2] that Plaintiff was asserting an ownership interest in artwork Sterling had created for the Hangman gameboard appearing in Sterling's Scratch & Solve Hangman series, which artwork, under Sterling's Publishing Agreements with Plaintiff, Sterling owns.[3] At his deposition, though, apparently realizing that he had no shot of prevailing under U.S. copyright law (since he owns no U.S. copyright in this artwork), Plaintiff asserted, for the first time, that his claim was based on an unregistered New Zealand copyright in a single-player scratch-off Hangman book he published in New Zealand, well prior to his relationship with Sterling (the "New Zealand Book").[4] As Plaintiff essentially conceded at his deposition, however, the interior gameboard artwork that appeared in his New Zealand Book is completely

---

[2] All exhibits cited are attached to the accompanying Declaration of Louis S. Ederer, dated May 30, 2014.

[3] In fact, these Agreements provide that the only copyright Plaintiff could own in these books would be the "text" he contributed, that is, the words he provided as solutions for various Hangman games. *See infra* at 7-8, 21-22.

[4] At his deposition, Plaintiff also produced, for the first time, a handwritten summary of his new theory of copyright ownership and infringement (Ex. 30), to the apparent complete surprise of his counsel. Ex. 4 at 63:3-17.

2

different from that which Sterling created for its Scratch & Solve Hangman series, seen below:

| Plaintiff's New Zealand Book | Accused Books |
|---|---|
|  | |

Def. 56.1 ¶¶ 9, 25, 43, 63.  Indeed, when further pressed on this point, Plaintiff went on to admit that his copyright infringement claim was merely an attempt to protect his otherwise unprotected "idea" for a single-player scratch-off Hangman game, and testified that because he came up with the idea, he is entitled to protect it in any conceivable form in which it can be expressed. *Id.* ¶¶ 12, 51.  No interpretation of copyright law affords such protection.

Plaintiff's evolving theories did not end there.  Realizing as he was testifying that his latest copyright theory was untenable, Plaintiff offered up yet another new theory at his deposition, testifying that the interior gameboard artwork Sterling had designed for its Scratch & Solve Hangman series,[5] while admittedly different from that appearing in Plaintiff's New Zealand Book, was nevertheless created under "license" from Plaintiff, and therefore, somehow, he owned Sterling's unique expression of the idea of a one-player scratch-off Hangman gameboard.[6]  Essentially Plaintiff appeared to be attempting, on the fly, to convert his claim for copyright infringement into some sort of breach of contract claim.  That novel approach,

---

[5] "Scratch & Solve" is a registered trademark of Sterling. Def. 56.1 ¶ 29.

[6] Indeed, under this novel "license" theory, Plaintiff even testified that the cover artwork for one of Sterling's Accused Books infringed the cover artwork for his New Zealand Book, although they looked completely different. When asked to explain how that could possibly be the case, Plaintiff testified that Sterling was merely "extending" his New Zealand Book series, and that any artwork, cover or interior, that Sterling ever created for its Scratch & Solve Hangman series was under his license. *See* discussion at pp. 20-22 below.

however, is not only belied by the U.S. copyright registrations for the books published under Plaintiff's name, which cover only their "text", *i.e.*, the words Plaintiff contributed (and not the artwork Sterling created), but also his Publishing Agreements with Sterling, in which the word "license" nowhere appears, and which clearly state that Sterling owns the copyright in all artwork it contributed to those books. Accordingly, under no theory — copyright, contract or otherwise — can Plaintiff prevail on his claim for copyright infringement, since, at the end of the day, it remains nothing more than an assertion that Defendants "stole" his unprotected "idea" for a single-player Hangman game.

As for Plaintiff's trade dress claim, even if Plaintiff owned any rights in the artwork and designs that Sterling created for its Scratch & Solve Hangman series — which the Publishing Agreements make clear he does not — he has still never articulated any of the elements of his purported trade dress, as Second Circuit law requires. *See Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997). Indeed, when asked at his deposition to spell out the elements of his trade dress, Plaintiff could do no better than "[t]he look and feel of the whole book." Def. 56.1 ¶ 59. This is not surprising, since even before his deposition, Plaintiff verified an interrogatory response stating that his trade dress consisted of "each and every design element of the works and the combination thereof." *Id.* ¶ 57. Under any view of the law, this is not enough, and Plaintiff's trade dress claim must go the same route as his copyright claim — into the dismissal bucket.[7]

## II.     FACTS NOT IN DISPUTE AND PRIOR PROCEEDINGS

What separates this motion from most summary judgment motions is that it is based not

---

[7] For the reasons set forth below, Defendants are also entitled to summary judgment with respect to Plaintiff's ancillary claims for unfair competition under New York common law and unjust enrichment, both of which mimic, and are entirely dependent on his failed copyright and trade dress claims.

only on facts that neither side disputes, but also on facts stated by the Plaintiff which, if this case were ever to be tried, would be shown to have been cut from whole cloth. That said, for purposes of this motion, even taking these fabricated "facts" as true, Plaintiff's version fails to support his claims as a matter of law.

A brief summary of the pertinent facts, including those concocted by Plaintiff at his deposition, follows here. In 2000, years before he had any relationship with Sterling, Plaintiff published a single-player scratch-off Hangman book in his home country of New Zealand, entitled *Scratch Hangman Puzzle Book* (the "New Zealand Book"). Def. 56.1 ¶ 8. The cover artwork for the New Zealand Book, and the interior Hangman gameboard artwork, appear below:

| Plaintiff's New Zealand Book - Cover | Plaintiff's New Zealand Book - Interior |
|---|---|
|  | |

*Id.* ¶ 9.

In February 1994, Plaintiff had filed a provisional patent application in the New Zealand Patent Office for his idea for a single-player scratch-off Hangman game, but then allowed that application to lapse. *Id.* ¶¶ 6-7. In addition, Plaintiff holds no U.S. copyright registration for his New Zealand Book. *Id.* ¶ 11.

In the summer of 2004, Plaintiff contacted Sterling to see if Sterling had any interest in publishing a single-player scratch-off Hangman book in the United States. *Id.* ¶ 13. In his initial communications with Sterling, Plaintiff repeatedly touted the fact that he held "the world rights to this style of publication through patent & copyright protection." *Id.* ¶ 16. However, when

Sterling's puzzle and games editor inquired further as to the nature and geographic scope of such rights, Plaintiff quickly abandoned his claim, responding that:

> Concerning protection, as I understand it copyright - which surpasses patent protection - is applicable world wide [sic], or at least to all the countries that have signed the world Trade Organization Treaty....

*Id.* ¶ 17.  In reply, Sterling's editor, a non-lawyer, wasted no time correcting Plaintiff's misunderstanding of copyright law, stating:

> The problem with copyright is that you can't copyright an idea.  Yes, nobody can use the same set of words in your book, but the idea of using a scratch-off for solitaire hangman can be used freely by another publisher unless you have some sort of patent protection in the U.S. *Id.* ¶ 18.

Subsequently, on October 14, 2004, the parties entered into their first Publishing Agreement (the "2004 Agreement"). *Id.* ¶ 19.  The 2004 Agreement provided, among other things, for Sterling's publication of six (6) single-player scratch-off Hangman books, with text (*i.e.*, game words) to be supplied by Plaintiff, and granted Sterling a perpetual option to publish two (2) additional books every six months. *Id.* ¶¶ 20-21.  The 2004 Agreement further provided that Sterling was to register U.S. copyrights in these scratch-off Hangman books in Plaintiff's name, except to the extent Sterling "supplie[d] material for the [books] (such as illustrations)", in which case Sterling was entitled to the "copyright [in] such material in its own name" — in other words, Plaintiff's copyright in any single-player scratch-off Hangman game books published under his name would cover only the materials he supplied for those books. *Id.* ¶ 22.  The 2004 Agreement also contained a merger clause which provided, in relevant part, that:

> This Agreement contains the entire understanding between the parties, supersedes all previous oral or written representations or agreements with respect to the Work, and may not be changed, modified or discharged orally. *Id.* ¶ 23.

It is further not in dispute that the only materials Plaintiff ever supplied to Sterling for any books for which he received authorship credit were the "words and phrases" that comprised

6

the answers to the Hangman puzzles that appeared in those books. *See id.* ¶¶ 15, 24, 27-28, 31, 34. Sterling, on the other hand, created and supplied all the artwork and illustrations that appeared on the cover and interior of each and every Scratch & Solve Hangman book published under Plaintiff's name. *See id.* ¶¶ 15, 24-25, 27-28, 30-31, 33-34. In particular, Sterling created all of the interior gameboard artwork and illustrations, including the scratch-off lettering configuration and the hanging man figure and gallows, that appeared in every one of those books. *See id.* That interior artwork, developed without Plaintiff, was so strikingly dissimilar to the artwork and illustrations that appear on the gameboard pages of Plaintiff's New Zealand Book that Plaintiff, upon reviewing the proofs Sterling had created for its first Scratch & Solve Hangman book (depicted below), was moved to note the striking differences between the two:

> I have received the proofs of the "Hangman" & "Tough Hangman" titles…. I see that the whole concept of the game has been changed; now players only have 5 chances before being hung, instead of the original 10. *Id.* ¶ 25.



*Id.* ¶ 24.

Further, consistent with the fact that Sterling had created and supplied all of the interior (and exterior) artwork and illustrations that appeared in each and every Scratch & Solve Hangman book ever published under Plaintiff's name, when it came time to register Plaintiff's U.S. copyright in those books, just as the parties' Publishing Agreements provided, Sterling registered only the extent of Plaintiff's contribution — the "text", or words, that comprised the solutions to the Hangman puzzles (*i.e.*, "Author Created: text" or "entire text"). *Id.* ¶ 27; Ex. 11.

7

Several years later, starting in April 2012, Plaintiff and Sterling entered into two new forms of Publishing Agreements. Def. 56.1 ¶¶ 30, 33. Consistent with the parties' past history, these Agreements also stated that the "Works" they covered, that is, the material to be created, supplied and owned by Plaintiff, would not be the books in their entirety (illustrations and all), but simply the "new and original puzzle words" or "words and phrases" that Plaintiff was to supply. *Id.* ¶¶ 31, 34. In particular, all illustrations and artwork for these books, both interior and exterior, were to be contributed by Sterling, and were not to be owned by Plaintiff, much less registered in his name. *See id.* ¶¶ 15, 24, 31, 34.

Years earlier, starting in 2009, Sterling, since it owned the Scratch and Solve Hangman series and all the artwork and designs that appeared therein, began to publish additional books in the series using words and text provided by authors other than Plaintiff.[8] Def. 56.1 ¶¶ 36-50. Those books continued to use the same or similar interior gameboard artwork and illustrations that Sterling had created and used in books published under Plaintiff's name. *Id.* ¶¶ 24, 36, 38, 43, 47-49. It is those Accused Books (totaling five in all) that Plaintiff complains of in this case, claiming that such interior gameboard artwork and illustrations infringe his "idea" for such a game, even though they are completely dissimilar in appearance to the corresponding gameboard artwork and illustrations in Plaintiff's New Zealand Book.[9] Thus, for all of the reasons set forth below, Plaintiff's infringement claims must fail as a matter of law.

## III.   ARGUMENT

Summary judgment is appropriate where there are no genuine issues of material fact, and

---

[8] Although Plaintiff admitted at his deposition that he first learned of Sterling's publication of one of the Accused Book in 2011, for reasons that have yet to be explained, he did not complain to Sterling until April 2013, and did not commence this action until November 2013. *See* Def. 56.1 ¶¶ 39, 72.

[9] Plaintiff does not allege, nor could he, that any Accused Book copied any text from his U.S. or New Zealand titles.

the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). When a moving party has established a *prima facie* case demonstrating the absence of any genuine issues of material fact, the non-moving party bears the burden of proffering "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *Wrobel v. Cnty. of Erie*, 692 F.3d 22, 30 (2d Cir. 2012). To overcome this burden, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see Wrobel*, 692 F.3d at 30. Here, Plaintiff cannot muster even concocted facts to support his claims as a matter of law, and Defendants are therefore entitled to summary judgment.

### A.    The Accused Books Do Not Infringe Any Copyright Owned By Plaintiff

Plaintiff bases his copyright claim not on any U.S. registration for Scratch & Solve Hangman books published under his name, but on an unregistered New Zealand copyright for a scratch-off Hangman book he published outside the U.S., prior to his relationship with Sterling. Presumably, Plaintiff is claiming protection under the Berne Convention, which allows a foreign copyright owner to protect his work in the U.S. without a U.S. registration.[10] Nonetheless, before he can maintain an infringement claim under U.S. law, a Berne Convention claimant must still demonstrate that he owns a valid foreign copyright. Only if he can do that may he bring a claim in the U.S., and then only to the extent he is protected under U.S. law. *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 84, 89-92 (2d Cir. 1998). Here, Plaintiff has not shown whether his New Zealand Book, much less its interior gameboard artwork, is entitled to protection in New Zealand, and Defendants do not concede this point. But

---

[10] Notably, a Berne Convention claimant is not entitled to all of the forms of relief available to U.S. copyright registration holders, including statutory damages and attorneys' fees. *See* 17 U.S.C. § 412.

even if Plaintiff establishes a genuine issue with respect to such protection in New Zealand, the artwork upon which Plaintiff bases his claim is so strikingly different from that appearing in any of the Accused Books that no reasonable jury could find infringement under U.S. law.

A plaintiff alleging copyright infringement must demonstrate substantial similarity between the accused work and the protectable elements of the allegedly infringed work. *See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (citation omitted); *see also Belair v. MGA Entm't, Inc.*, 503 F. App'x 65, 66 (2d Cir. 2012). Generally this means that the claimant must establish that "'an ordinary observer, unless he set out to detect the disparities [between the two works], would be disposed to overlook them, and regard [the] aesthetic appeal [of the two works] as the same.'" *Gaito*, 602 F.3d at 66 (citation omitted). Where, however, as here, an allegedly infringed work incorporates protectable and unprotectable elements, the "ordinary observer" is to be replaced by the "more discerning observer," and the law requires a showing of "'substantial similarity between those elements, and only those elements, that provide copyrightability to the allegedly infringed [work].'" *Belair*, 503 F. App'x at 66 (citation omitted); *see also Gaito*, 602 F.3d at 66.

Further, "it is entirely appropriate for a district court to resolve [the] question [of substantial similarity] as a matter of law [where] ... the similarity between two works concerns only non-copyrightable elements of the plaintiff's work ...." *Gaito*, 602 F.3d at 63 (citations omitted); *see also Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48-51 (2d Cir. 1986); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 916-18 (2d Cir. 1980). Non-copyrightable elements include, for example, "any idea, ... system, [or] ... concept, ... regardless of the form in which it is ... embodied in such work." 17 U.S.C. § 102(b). Here, while Plaintiff is attempting to obtain blanket copyright protection for his idea for a single-player scratch-off Hangman game, the law

10

does not afford him that protection; rather, it protects only the original expression of that idea, leaving others free to express the idea in another way. This is known as the "idea-expression dichotomy". *See Reyher v. Children's Television Workshop*, 533 F.2d 87, 90 (2d Cir. 1976) ("It is an axiom of copyright law that the protection granted to a copyrightable work extends only to the particular expression of an idea and never the idea itself.").

Moreover, and particularly apt in this case, where there are only a limited number of ways to express an idea, the "merger doctrine" precludes protection of those expressions. *See Kregos v. Associated Press*, 3 F.3d 656, 663 (2d Cir. 1993); *see also N.Y. Mercantile Exch., Inc. v. Intercontinental Exchange, Inc.*, 497 F.3d 109, 117 n.9 (2d Cir. 2007). "The test is improper monopolization of the subject idea ...." 4 Nimmer on Copyright § 13.03[B][3]. Similarly, "scenes a faire" — *i.e.*, elements that "flow from the uncopyrightable concept" — are not protectable by copyright. *Williams v. Crichton*, 84 F.3d 581, 589 (2d Cir. 1996); *see Walker*, 784 F.2d at 50 ("scenes that necessarily result from the choice of a setting or situation"). In short, "where the protected work and the accused work express the same idea, the similarity that inevitably stems solely from the commonality of the subject matter is not proof of unlawful copying." *Durham*, 630 F.2d at 913; *see also* 4 Nimmer on Copyright § 13.03[A][1] ("if the only similarity between plaintiff's and defendant's works is that of the abstract idea, there is an absence of *substantial* similarity and hence, no infringement results.").[11]

Most importantly, it is "entirely appropriate" to resolve the issue of substantial similarity as a matter of law where, as here, "no reasonable jury, properly instructed, could find that the

---

[11] Similarly, "mechanical or utilitarian" elements that cannot be "identified separately from, [or] exist[] independently of" protectable elements are not subject to copyright protection. *See Durham*, 630 F.2d at 913-15 (citing 17 U.S.C. § 101). "Just as copyright protection extends to expression but not ideas, copyright protection extends only to the artistic aspects, *but not the mechanical or utilitarian features*, of a protected work." *Milligan v. Worldwide Tupperware, Inc.*, 972 F. Supp. 158, 164 (W.D.N.Y. 1997) (emphasis in original).

two works are substantially similar." *Gaito*, 602 F.3d at 63-64 (citations omitted); *see also Warner Bros. Inc. v. Am. Broadcasting Cos.*, 720 F.2d 231, 239-43 (2d Cir. 1983) (holding that no reasonable jury could find substantial similarity). Thus, if "the court has before it all that is necessary in order to make such an evaluation" (*Gaito*, 602 F.3d at 64), and where, as here, there is a complete absence of similarity, much less "substantial similarity" between the protectable elements of the works at issue, courts routinely grant summary judgment to the accused party.

### 1.    Plaintiff Cannot Protect A Game Concept Via Copyright

Plaintiff's copyright claim is based on a false premise — that copyright law protects ideas. Indeed, during his deposition, Plaintiff remarkably testified that he is "the only person in the world that can own rights to [a one-player scratch-off] Hangman game" (Def. 56.1 ¶ 12), so, as a consequence, he had no choice but to commence this action, "because Sterling basically stole [his] idea" (*id.* ¶ 51). A fatal flaw in Plaintiff's argument is that his "idea" for a single-player scratch-off Hangman game, even if it were uniquely his (which is not the case),[12] is not itself copyrightable. 17 U.S.C. § 102(b). Indeed, especially when it comes to ideas for a game, or the manner in which it is to be played, it is well established that "the 'idea' upon which a game is based cannot be copyrighted." *Milligan*, 972 F. Supp. at 162; *see also* 4 Nimmer on Copyright § 2.18[H][3][a] ("[N]o copyright may be obtained in the system or manner of playing a game ...."). The inapplicability of copyright law to "business ideas, such as a game concept", is deliberate, and is "designed to prevent [improper] extension of product monopolization" beyond that provided by patent law. *See Anti-Monopoly, Inc. v. General Mills Fun Group*, 611 F.2d 296, 300 n.1 (9th Cir. 1979).

---

[12] Indeed, Defendants are aware of two single-player scratch-off-type Hangman games that were published in the U.S. long before Plaintiff contacted Sterling in 2004, one of which also predates Plaintiff's 1994 New Zealand patent application. *See* Def. 56.1 ¶¶ 67-68 (*Yes & Know Invisible Ink Game & Quiz Book*, published in 1986), and *id.* ¶ 69 (*World of Puzzles*, May 1999 Edition), and discussion at pp. 19-20 below.

2.   **Plaintiff Has No Copyright Interest In Alphabetically Ordered Letters Adjacent To Silver, Scratch-Off Device Circles**

Plaintiff's essential claim in this case is that the corresponding elements that appear in the Accused Books infringe the Hangman gameboard artwork and illustrations that appear in his New Zealand Book — consisting solely of a series of scratch-off letters arranged alphabetically in rows; dashed lines that serve as placeholders for the letters that form the word that solves the game; and an illustration of a hanging man and gallows. Much of this artwork is uncopyrightable in the first place, though, and that which may be protectable is completely different in appearance from Sterling's artwork.

First and foremost, Plaintiff's gameboard artwork, consisting of a series of alphabetically ordered scratch-off letters, is *not* copyrightable. This artwork is depicted below:



Def. 56.1 ¶ 9. As the Supreme Court has made abundantly clear, alphabetical ordering "do[es] not satisfy the minimum constitutional standards for copyright protection," as it is "devoid of even the slightest trace of creativity." *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 362-63 (1991). As it is difficult to think of anything more familiar than an alphabetical listing of letters, Plaintiff's presentation of scratch-off letters in his New Zealand Book is simply not protectable under U.S. copyright law.[13]

---

[13] Indeed, Copyright Office regulations state that protection is not available for "familiar symbols or designs." 37 C.F.R. § 202.1(a). Further, Plaintiff cannot assert a copyright interest in the silver scratch-off circles that appear above each letter on his gameboard, since "[c]ommon geometric shapes" and coloring are not "sufficiently original" to justify copyright protection. *Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC*, 259 F.3d 25, 35 (1st Cir. 2001) (citing cases); *see also William S. Geiger Corp. v. Gigi Accessories, Inc.*, 1997 WL 458668, at *2 (S.D.N.Y. Aug. 11, 1997) ("Since plaintiff has no right to copyright a … common geometrical shape, defendants items do not

Footnote continued on next page

Not surprisingly, this Court, in an opinion written by the Hon. Paul Crotty, reached the very same conclusion in considering Plaintiff's copyright infringement claim against another publisher, Andrews McMeel Publishing, LLC ("McMeel"). In 2012, Plaintiff sued McMeel for copyright infringement based on his purported ownership of copyright in the gameboard artwork and illustrations that appeared in *Sterling's* Scratch & Solve Hangman series — not, as in this case, *Plaintiff's* New Zealand Book. *See Ward v. Andrews McMeel Pub., LLC*, 963 F. Supp. 2d 222 (S.D.N.Y. 2013). When McMeel moved to dismiss, Judge Crotty held, for all the foregoing reasons, that "no aspect of [Plaintiff's] lettering scheme is protected." 963 F. Supp. 2d at 232.[14]

### 3. Plaintiff's New Zealand Image Of A Hanging Man And Gallows Is Not Entitled to Copyright Protection

In the context of playing the game of Hangman, the idea of an image of a man hanging from a gallows cannot be protected by copyright. Rather, such an image is a scene a faire, as it is essential to how the game is played, and therefore "flow[s] from the uncopyrightable concept" of the game itself, which has existed for centuries. *See Williams*, 84 F.3d at 589.[15] If there were something original about Plaintiff's particular expression of the Hangman figure, that could

---

Footnote continued from previous page

infringe plaintiff's copyrights."). Moreover, the scratch-off device itself is inherently functional, and therefore also not copyrightable. *See Durham*, 630 F.2d at 913-15 (finding the games at issue to be "useful articles" and the "mechanical, utilitarian aspects" of such games to be non-copyrightable); *see also Milligan*, 972 F. Supp. at 164-65 (function of a game's "magic window" to make numbers recognizable as numbers is not protectable by copyright).

[14] Notably, Judge Crotty did not consider the question whether Plaintiff even had standing to assert this infringement claim against McMeel, since he accepted as true the assertion that Plaintiff owned the Sterling artwork.

[15] *See also Walker*, 784 F.2d at 50 (explaining scenes a faire as "scenes that necessarily result from the choice of a setting or situation"); *Bill Diodato Photography, LLC v. Kate Spade, LLC*, 388 F. Supp. 2d 382, 392 (S.D.N.Y. 2005) ("necessarily flow from [an] idea" or "flow naturally and necessarily from the choice of a given concept"); and *Incredible Tech., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1014-15 (7th Cir. 2005). In *Incredible Tech.*, the Seventh Circuit noted that scenes a faire are those elements which are "as a practical matter indispensable, or at least standard in the treatment of a given topic." *Id.* at 1014. The court found the scenes a faire doctrine particularly applicable to a golf game because, when presenting a golf game, "one would, by definition, need golf courses, clubs, a selection menu, a golfer, a wind meter, etc. Sand traps and water hazards are a fact of life for golfers, real and virtual." *Id.* at 1015. Accordingly, the court held that only a "virtually identical" copy would infringe. *Id.* at 1014-15. The Northern District of Illinois reached a similar conclusion in *Team Play, Inc. v. Boyer*, 391 F. Supp. 2d 695 (N.D. Ill. 2005), in the context of a shooting game. *Id.* at 699, 702.

conceivably be entitled to the thinnest of copyright protection. But that is not the case here.

As Defendants have come to learn, the stick figure Plaintiff seeks to protect is the most basic possible representation of a Hangman figure:



Def. 56.1 ¶ 9. Not surprisingly, the evidence shows that Plaintiff did not come up with this artwork himself — rather, it long preexisted him.[16] Accordingly, since this figure flows directly from the concept of the game of Hangman, it "do[es] not enjoy copyright protection." *Williams*, 84 F.3d at 589.[17]

### 4. Any Protectable Elements Of Plaintiff's New Zealand Book Artwork Are Not Substantially Similar to the Corresponding Elements in the Accused Books

Even if any of the artwork and illustrations that appear on the gameboard pages of

Plaintiff's New Zealand Book were copyrightable, the corresponding elements that appear in the

---

[16] Indeed, Plaintiff's illustration of a hanging man on a gallows is virtually identical to an illustration that appeared in connection with a "Solitaire Hangman" game published in the May 1999 edition of *World of Puzzles* magazine:



Def. 56.1 ¶ 69. Moreover, a Google Image search of the word "hangman game" reveals that Plaintiff's illustration is the most common way a Hangman figure has historically been depicted. *Id.* ¶ 70. The Wikipedia entry for "Hangman (game)" further confirms this, providing an example of the classic word game using the following image:



*Id.* ¶ 71.

[17] In the *McMeel* case, Judge Crotty, once again mistakenly assuming (because it was not at issue for purposes of the motion to dismiss) that Sterling's artwork was owned by Plaintiff, found that Sterling's Hangman illustration, which is much more highly stylized than the one in Plaintiff's New Zealand Book, "may be entitled only to very thin protection." *Ward*, 963 F. Supp. 2d at 233 (quotations omitted). That, however, is not the case here with respect to the New Zealand Book illustration, which is entirely unstylized, and, as it turns out, not even original to Plaintiff.

Accused Books are not even close to being substantially similar, other than in idea or theme. *See Gaito*, 602 F.3d at 63-64; *see Warner Bros.*, 720 F.2d at 239-43. Accordingly, Plaintiff's copyright claims hold no water.

### a. The Cover Art Is Substantially Different

Notwithstanding Plaintiff's deposition testimony that any Sterling cover for a single-player scratch-off Hangman book infringes the cover artwork of his New Zealand Book (*see* Ex. 4 at 23:16-23), there is obviously no similarity between the cover art on the New Zealand Book and any of the Accused Books. For example:



| Plaintiff's New Zealand Book | An Accused Book |
|---|---|

Def. 56.1 ¶¶ 9, 47. Thus, no copyright claim lies here.[18]

### b. The Lettering and Scratch-Off Devices Are Substantially Different

As previously discussed, Plaintiff has no copyright protection in the presentation of alphabetically ordered letters appearing beneath silver scratch-off devices. *See supra* at 13-14. Nevertheless, even if he did, Sterling's expression of that concept is completely different in appearance, except in idea or theme, as depicted below:

---

[18] Indeed, contrary to his present stance, in the *McMeel* case Plaintiff admitted that he does not own "the copyright in the cover [of any of the books he authored for Sterling's "Scratch & Solve" Hangman series, which] belongs to someone else." *See* Ex. 35 at 14 n.2; *see id.* at 14 ("Brainteaser does not own" the copyright in "the cover design").



Def. 56.1 ¶¶ 9, 47. The differences include:

- In Plaintiff's New Zealand Book, the letters appear on a black background, whereas in the Accused Books, they appear on a lighter background.
- Plaintiff's New Zealand Book uses silver circles, while the Accused Books use darker silver oval shapes.
- The scratch-off areas in Plaintiff's New Zealand Book are arranged in three even rows, while the Accused Books are arranged in four uneven rows.
- The letters in Plaintiff's New Zealand Book appear below the scratch-off device, while the letters in the Accused Books appear above the scratch-off device.

Thus, no copyright claim lies here.

### c.   The Hangman Figure Illustrations Are Substantially Different

As discussed above, a basic illustration of a hanging man on a gallows is not protectable when used in the context of a Hangman game. Nevertheless, even if it were protectable, under the scenes a faire doctrine only a virtually identical copy could infringe. *See supra* at 14 & n.15. Here, however, the Hangman illustrations in Plaintiff's New Zealand Book and the Accused Books are strikingly different, except in idea or theme:

| Plaintiff's New Zealand Book | Accused Books |
|---|---|
|  |  |

Def. 56.1 ¶¶ 9, 47. These differences include:

- Plaintiff's illustration uses entirely straight lines (except for the head), while all the lines in the Accused Books are curved.

- Plaintiff's illustration features a gallows made entirely of the same dotted lines as used for the figure, while the gallows in the Accused Books is solid and has two colors, gray and black (this reflects a fundamental difference in the number of attempts a player has to solve the game in the New Zealand Book (11), versus the Accused Books (6)).

- Plaintiff's gallows contains an angled dotted line in the top corner of the gallows, while the gallows in the Accused Books contains no such angled line.

- Plaintiff's illustration features a noose comprising a straight, dotted line extending from the top of the gallows to the top of the stick figure's head, while the noose in the Accused Books is a curved, solid line to the side of the head that ends in a loop that encircles the figure's neck.

In short, the only similarity between the two Hangman illustrations is that both contain a hanging man figure and a gallows. The similarity begins and ends with the unprotectable idea. In any case, it falls well short of **substantial** similarity. *See Durham*, 630 F.2d at 913; 4 Nimmer on Copyright § 13.03[A][1]. Thus, no copyright claims lies here.[19]

### d.   The Gameboard Layouts Are Substantially Different

Finally, the overall gameboard layout in Plaintiff's New Zealand Book differs strikingly from the corresponding gameboard layout in the Accused Books, except in idea or theme:



| Plaintiff's New Zealand Book | Accused Books |
| --- | --- |

Def. 56.1 ¶¶ 9, 43. Among other things, in addition to those discussed above, the gameboard layouts have the following obvious differences:

---

[19] In *McMeel*, in finding an issue of fact as to the degree of similarity of the Hangman figures there at issue, Judge Crotty, once again believing that Plaintiff owned the rights he was asserting, compared McMeel's figure with Sterling's figure (the same figure used in the Accused Books). As the images depicted in Judge Crotty's opinion show, those figures are much closer in appearance than Ward's New Zealand figure is to Sterling's. *See Ward*, 963 F. Supp. 2d at 228.

- The New Zealand Book includes two puzzles per rectangular page, while the Accused Books include only one puzzle per stylized, non-rectangular page.

- The New Zealand Book layout is arranged in a tight grid, with three identically aligned rows and the number of each puzzle appearing next to the letter "Z", while the layout in the Accused Books is arranged in a loose grid, with successive rows of letters offset from the letters immediately above and below (which facilitates scratching off a letter without inadvertently exposing other letters), and with the puzzle number appearing separately.

- The Accused Books gameboard contains text and information that does not appear in the New Zealand Book gameboard, such as the category or topic for the game (here, for example, "Movie").

Thus, no copyright claim lies here.

### e.    The Total Concept and Feel Differs Substantially, and Any Similarity Flows Directly From the Idea of a Single-Player Hangman Game

As can be seen from the above depictions, the total concept and feel of the gameboard artwork and illustrations in Plaintiff's New Zealand Book differs strikingly from the corresponding gameboard artwork and illustrations in the Accused Books. To the extent there are any similarities, they consist of thematically similar elements "placed in a similar spatial arrangement." *Klauber Bros., Inc. v. Bon-Ton Stores, Inc.*, --- Fed. App'x ----, 2014 WL 657953, at *2-3 (2d Cir. Feb. 21, 2014). But within that arrangement, each element differs so significantly that there can be no **substantial** similarity between the works. *See id.*; *see also Kerr v. New Yorker Magazine, Inc.*, 63 F. Supp. 2d 320, 325-26 (S.D.N.Y. 1999) (finding that two images contained similar elements, but had substantially different feels).

The point is best illustrated by the gameboard illustration that appears in yet another single-player scratch-off Hangman game. This game was published by a third party in 1986, well before Plaintiff published his New Zealand Book, and differs only in that an invisible ink pen, and not a scratchable area, is used to reveal the hidden letters:



Def. 56.1 ¶ 68. As can be seen from this earlier version, any similarities between the gameboard

artwork and illustrations in Plaintiff's New Zealand Book and the Accused Books flow directly

from the idea of a single-player scratch-off Hangman game, which cannot be monopolized via

copyright, and which Plaintiff apparently did not invent. 17 U.S.C. § 102(b); *Milligan*, 972 F.

Supp. at 162; 4 Nimmer on Copyright § 2.18[H][3][a]. Indeed, the merger doctrine "is

particularly applicable with respect to games 'since they consist of abstract rules and play

ideas.'" *Allen v. Academic Games League of Am., Inc.*, 89 F.3d 614, 617 (9th Cir. 1996). *See*

*also* 4 Nimmer on Copyright § 13.03[B][3] (quoting *N.Y. Mercantile Exch.*, 497 F.3d at 117 n.9).

### B. Plaintiff Cannot Now Claim Ownership of Works He Did Not Create By Fabricating An Unpleaded Breach Of Contract Claim

As noted above, although not pleaded in his Complaint, at his deposition Plaintiff

concocted a new theory of copyright liability, based on Defendants' alleged breach of a

purported license agreement between Plaintiff and Sterling. Specifically, when asked to explain

how Sterling's gameboard artwork, which looks nothing like the gameboard artwork in his New

Zealand Book, could possibly infringe his New Zealand copyright, Plaintiff repeatedly asserted

that through a purported "licensing agreement" with Sterling, he somehow owned Sterling's

artwork, and everything else Sterling had contributed to the Scratch & Solve Hangman series.[20] Although this newly minted legal theory appears to be nothing more than a last-ditch attempt to resurrect Plaintiff's unsustainable copyright claim, we nonetheless address it here.

The bottom line is that even if Plaintiff had pleaded a claim for breach of a license agreement, that claim, too, would be subject to dismissal, for the simple reason that no such agreement can exist as a matter of law. The only agreements Plaintiff and Sterling ever had were their fully integrated Publishing Agreements, none of which provided for any such "license" — rather, they expressly provide that Plaintiff's copyright interest in Sterling's Scratch & Solve Hangman books extends only to the "text", or "words and phrases", he contributed to those books. *See* Def. 56.1 ¶¶ 20, 28, 31, 34. Indeed, at his deposition, Plaintiff conceded as much, but nonetheless staked his claim on this purported "license", which is supposedly embodied in communications between the parties before they entered into their first Publishing Agreement[21], testifying that they "overwrite" the Publishing Agreements. Ex. 4 at 50:20-51:23.

The problem for Plaintiff, however, is that the merger clauses that appear in every one of his Publishing Agreements with Sterling expressly preclude any such "previous arrangement":

> This Agreement contains the entire understanding between the parties, supersedes all previous oral or written representations or agreements with respect to the Work, and may not be changed, modified or discharged orally.

---

[20] *See, e.g.*, Def. 56.1 ¶ 62 ("Sterling was to publish these books or these series of books in the U.S. under license."); *id.* (claiming that his Publishing Agreements with Sterling "provide[] for a license to Sterling to extend the series that [Plaintiff was] previously publishing in New Zealand"); Ex 30 (handwritten summary of Plaintiff's position produced during his deposition).

[21] *See* Def. 56.1 ¶ 64 ("Q. Can you show me where the word license appears in [the 2004 Agreement]? A. The word license does not appear in this document because it is in association with a previous arrangement that Sterling had with me."). When pressed to identify these alleged communications, Plaintiff could point only to the following passage from his June 2004 letter to Sterling (months prior to the parties' first Publishing Agreement):

> I left the design of the cover up to Sterling to provide their own design flair, as they would be familiar with their own markets, however assistance in this area can be provided if requested at the design stage. *Id.* ¶ 65.

*E.g.*, Def. 56.1 ¶ 23.  While Plaintiff would have the Court ignore these clauses, the Second

Circuit has explained their impact:

> When two parties have made a contract and have expressed it in a writing
> to which they have both assented as the complete and accurate integration
> of that contract, evidence, whether parol or otherwise, of antecedent
> understandings and negotiations will not be admitted for the purpose of
> varying or contradicting the writing.

*Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir. 1988).  Therefore, absent a

reference to any license agreement in his Publishing Agreements with Sterling, Plaintiff cannot

maintain that such an agreement exists, much less that Sterling breached it.

Further, to the extent Plaintiff is claiming that his fictitious license agreement with

Sterling somehow supports the notion that he owns the interior gameboard artwork Sterling

created and contributed to the Scratch & Solve Hangman series, as noted above, the Publishing

Agreements say otherwise — Sterling owns that artwork.  Moreover, consistent with the

provisions of those Agreements, the only copyrights ever registered in Plaintiff's name merely

cover the "text" Plaintiff contributed to those books, not any artwork created under "license" or

otherwise.  *See* Def. 56.1 ¶¶ 27, 73.  Thus, to the extent Plaintiff is now somehow trying to claim

that Defendants infringed his rights in artwork that Sterling created and contributed, he cannot do

this, because he never owned any such rights, much less "licensed" them to Sterling.

### C.   Plaintiff Cannot Maintain A Claim For Trade Dress Infringement

As with Plaintiff's copyright claim, to the extent any trade dress rights exist in Sterling's

Scratch & Solve Hangman series, Sterling — not Plaintiff — owns those rights.  What is more,

even if Plaintiff did own any rights to the artwork or designs that appear in these books, he has

failed to meet the most basic requirement for stating a claim for trade dress infringement, and

that claim too must be dismissed as a matter of law.

In this Circuit, the first thing a trade dress claimant must do is:

articulat[e] … the specific elements which comprise its distinct dress. Without such a precise expression of the character and scope of the claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market. Courts will also be unable to shape narrowly-tailored relief if they do not know what distinctive combination of ingredients deserves protection. Moreover, a plaintiff's inability to explain to a court exactly which aspects of its product design(s) merit protection may indicate that its claim is pitched at an improper level of generality, i.e., the claimant seeks protection for an unprotectable style, theme or idea.

*Landscape Forms*, 113 F.3d at 381; *see also Heller Inc. v. Design Within Reach, Inc.*, 2009 WL 2486054, at *6-7 (S.D.N.Y. Aug. 14, 2009).[22]  If this threshold requirement is not met, a trade dress infringement claim cannot be maintained.

Here, despite having had every opportunity, Plaintiff has failed to articulate the elements of his trade dress. Rather, in his cause of action for trade dress infringement, Plaintiff merely refers to the "consistent appearance across Plaintiff's several 'Scratch-Hangman' series of titles." Ex. 1 ¶ 37. Further, in verified interrogatory responses, Plaintiff stated that his alleged trade dress consists of "each and every design element of the works and the combination thereof." Def. 56.1 ¶ 57. Thereafter, although invited to elaborate several times during his deposition, the best Plaintiff could do was to refer to "the format … [o]f the scratch style Hangman game," *id.* ¶ 58, and "[t]he look and the feel of the whole book," *id.* ¶ 59. Accordingly, having failed to articulate the elements of his trade dress with any degree of particularity, Plaintiff's trade dress claim must be dismissed as a matter of law. *See, e.g., Nat'l Lighting*, 601 F. Supp. 2d at 563; *Heller*, 2009 WL 2486054, at *6-7.

In addition, even if Plaintiff had articulated the elements of his trade dress, his claims must still be dismissed because the purported trade dress, namely the "format" of the gameboard

---

[22]  In addition, even if he can articulate the elements of his purported trade dress with sufficient particularity, a claimant must further explain with particularity how those elements are distinctive. *See, e.g., Nat'l Lighting Co., Inc. v. Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556, 562 (S.D.N.Y. 2009).

for a single-player scratch-off Hangman game, is functional. "A plaintiff is barred from gaining trade dress protection for a product if the trade dress is functional," as such protection would "inhibit[] legitimate competition by giving monopoly control to a producer over a useful product." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 120 n.4 (2d Cir. 2001). Here, Plaintiff is not only claiming rights in every possible iteration of a single-player scratch-off Hangman gameboard, but in the very components used to play the game. Accordingly, they are functional by definition, and cannot constitute protectable trade dress.[23]

### D.   Plaintiff's Unfair Competition and Unjust Enrichment Claims Must Fail

Plaintiff's cause of action for unfair competition under New York law cannot be maintained for the same reasons his copyright and trade dress claims must be dismissed. First, "[t]o the extent that [Plaintiff's] unfair competition claim seeks protection against … copying, it is a claim based on a right equivalent to 'exclusive rights within the … scope of copyright'", and is thus preempted under 17 U.S.C. § 301(a). *See Durham*, 630 F.2d at 919; *see also Eyal R.D. Corp. v. Jewelex New York Ltd.*, 784 F. Supp. 2d 441, 447 (S.D.N.Y. 2011). Simply stated, a party "cannot achieve by an unfair competition claim what it failed to achieve under its copyright claim." *Durham*, 630 F.2d at 918. Second, this claim is nothing more than a regurgitation of Plaintiff's claim for trade dress infringement — indeed, every paragraph of the unfair competition claim mentions the words "trade dress." Ex. 1 ¶¶ 42-44. Accordingly, because Plaintiff's trade dress claim fails, this claim must also necessarily fail. *SLY Magazine, LLC v.*

---

[23] As further explained in *Nora Beverages*, 269 F.3d at 120 n.4, "[a] product's trade dress is functional where a competitor will be put at a 'significant disadvantage' because the feature sought to be protected is 'essential to the use or purpose' of the thing or 'affects [its] cost or quality[.]' Moreover, a product's functionality may encompass aesthetic features which confer benefits that cannot practically be duplicated by the use of alternative designs." Here, if Plaintiff and others are broadly barred from using the general format of the Hangman game presentation found in Plaintiff's New Zealand Book, they would literally not be able to publish books containing single-player scratch-off Hangman games, which is, of course, Plaintiff's ultimate goal, namely to protect his "idea" for such a game.

*Weider Publications L.L.C.*, 529 F. Supp. 2d 425, 443 (S.D.N.Y. 2007).

Finally, Plaintiff's cause of action for unjust enrichment must also be dismissed as a matter of law.  First, this claim, too, seeks to prevent copying, so the Copyright Act preempts it. *Eyal*, 784 F. Supp. 2d at 448.  Second, the claim appears to be based on Plaintiff's purported ownership of Sterling's artwork, and breach of a license agreement with Sterling.  *See* Ex. 1 ¶ 50. As discussed above, however, there was no license, and Plaintiff cannot allege such an agreement, which would be inconsistent with the Publishing Agreements, so Plaintiff owns no such rights (*see supra* at 20-22) — indeed, no theory of unjust enrichment extends to the exploitation of one's own property.  Third, to the extent this claim is premised on the infringement of Plaintiff's trade dress, which appears to be the case (*see* Ex. 1 ¶ 51, alleging that the claim is based on Defendants' sale of "confusingly similar works"), for the same reasons his trade dress claim fails, his unjust enrichment claim must fail as well.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for summary judgment and dismiss Plaintiff's Complaint in its entirety.

Dated: New York, New York
       May 30, 2014

ARNOLD & PORTER LLP

By:    Louis S. Ederer

Louis S. Ederer
Matthew T. Salzmann
Maxwell C. Preston

*Attorneys for Defendants*

25