**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**
_____X

MICHAEL WARD,
d/b/a BRAINTEASER PUBLICATIONS,

                            Plaintiff,                 **Civil Action No. 13-cv-7851 (JMF)**

        -against-

BARNES & NOBLE, INC.,
STERLING PUBLISHING CO., INC.,
FRANCIS HEANEY, AND
PATRICK BLINDAUER,

                         Defendants.
_____X

**PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS**
**PURSUANT TO LOCAL CIVIL RULE 56.1**

LAW OFFICE OF BARRY E. JANAY
Barry E. Janay, Esq.
90 Broad Street, 25th Floor
New York, NY 10004
Tel. 917-756-8501
Fax 855-374-2884

*Attorney for Plaintiff(s)*

1

Pursuant to Local Civil Rule 56.1, Plaintiff, MICHAEL WARD, respectfully submits, in opposition to Defendants' motion for summary judgment, the following Statement of Undisputed Material Facts as to which there is no genuine issue to be tried.

## I.      PARTIES

1.      Plaintiff, MICHAEL WARD d/b/a Brainteaser Publication (hereinafter "Ward"), is a famous, distinguished and innovative book author, based in New Zealand, who created and developed a highly successful and unique series of puzzle books colloquially known as the "Scratch-Hangman" series. Ederer Decl. ¶ 3, Ex. 1, [Complaint] ¶ 1.

2.      Defendant, BARNES & NOBLE, INC. (hereinafter "B&N"), is the largest book retailer in the United States. Ederer Decl. ¶ 3, Ex. 1[Complaint] ¶ 9.

3.      Defendant, STERLING PUBLISHING COMPANY, INC. (hereinafter "Sterling"), is a publishing company in the United States incorporated in Delaware with headquarters located at 387 Park Avenue South, New York, NY 10016. Sterling was responsible for the sale and distribution of books produced based on Ward's "Scratch-Hangman" series in the United States. B&N acquired Sterling in 2003. Ederer Decl. ¶ 3, Ex. 1 [Complaint] ¶¶ 9-10; Ederer Decl. ¶ 10, Ex. 8 [Welcome to Sterling Publishing] .

4.      Defendant, FRANCIS HEANEY (hereinafter "Heaney"), is an individual resident of the State New York and an employee of Sterling. Heaney is the author of a book published by Sterling in 2010, after Sterling's relationship with Ward was terminated, as part of its "Scratch & Solve" series, entitled *Trivia Hangman*. Ederer Decl. ¶ 3, Ex. 1 [Complaint] ¶¶ 4, 11, 14; Ederer Decl. ¶ 23, Ex. 21 [Heaney's publishing agreement with Sterling]; Janay Decl. ¶ 14, Ex. L at WARD000005; Janay Decl. ¶ 27, Ex. Y at WARD000084.

5.      Defendant, PATRICK BLINDAUER (hereinafter "Blindauer"), is an individual resident of the State of New York and an employee of Sterling. Blindauer is the author of a book published by Sterling in 2011, after Sterling's relationship with Ward was terminated, as part of its "Scratch & Solve" series, entitled *Hollywood Hangman*. Ederer Decl. ¶ 3, Ex. 1 [Complaint] ¶¶ 5, 11, 14; Ederer Decl. ¶ 25, Ex. 23 [Blindauer's publishing agreement with Sterling]; Janay Decl. ¶ 14, Ex. L at WARD000006; Janay Decl. ¶ 19, Ex. Q at WARD000084.

## II.    BACKGROUND

6.      In the early 1990's, Plaintiff Ward, a famous and distinguished book author and publisher, created and developed a highly successful series of puzzle books colloquially known as the "Scratch-Hangman" Series. Ederer Decl. ¶ 3, Ex. 1 [Complaint] ¶¶ 12.

7.      In February 1994, Plaintiff Ward filed a provisional patent application in the New Zealand Patent Office for an invention for a game entitled "Scratch Hangman," which he described as follows:



Ederer Decl. ¶ 4, Ex. 2.

7.      Plaintiff Ward only obtained provisional patent protection as opposed to registering a

complete specification of the patent because he was advised by his New Zealand patent attorney that a

provisional patent would establish a priority date and further advised that New Zealand copyright law

provided worldwide protection for his work that was above and beyond the protections provided by a

final patent. Janay Decl. ¶ 28, Ex. Z Plaintiff Deposition at 80:10-19, 84:20-23, 86:24-*, and 87:7;

Janay Decl.¶ 31, Ex. CC.

8.      In 2000, years before Sterling received any contractual rights to publish and/or

distribute Ward's "Scratch Hangman" Series, Plaintiff published a single-player scratch-off Hangman

book in New Zealand, entitled *Scratch Hangman Puzzle Book* (the "New Zealand Book").  Ex. 4 at

18:9-19:19, Ederer Decl. ¶ 5, Ex. 3 [Defendants' Deposition] at WARD000039; Ederer Decl. ¶ 6.

      9.     The cover artwork for the New Zealand Book, as well as, the interior artwork and

gameboard presentation thereof, appear below:

| Plaintiff Ward's New Zealand Book - Cover | Plaintiff Ward's New Zealand Book - Interior |
|---|---|
|  | |

Ederer Decl. ¶ 5, Ex. 3 [Defendants' Deposition] at WARD000039**.**

      10.    Ward is the sole owner of a copyright in his New Zealand Book under New Zealand

law.  Ederer Decl. ¶ 6, Ex. 4 at 80:10-19; Janay Decl. ¶ 31, Ex. CC ("New Zealand -- in New

Zealand, copyright is an automatic and registered right that comes into existence every time an original

work is created, published or performed. So basically, it does not have to be registered in New Zealand

to have copyright.").

      11.    Ward's New Zealand copyright of the New Zealand Book affords Ward worldwide

protection, including the United States, who is a party to the Berne Convention and lack of prior

registration in the U.S. does not prevent an author or inventor from availing himself to U.S. courts to

institute a claim of copyright infringement . Janay Decl. ¶ 31, Ex. CC, Janay Decl. ¶ 32, Ex. DD.

**III.**   **PLAINTIFF WARD'S INITIAL APPROACH OF STERLING FOR THE PURPOSE
       OF PUBLISHING HIS BOOK SERIES IN THE UNITED STATES.**

12.     In the summer of 2004, Ward contacted Sterling to see if Sterling had an interest in publishing Ward's single-player scratch-off Hangman series in the United States.  Ederer Decl. ¶ 11, Ex. 9 [June 11, 2004 letter from Plaintiff to Sterling]; Ederer Decl. ¶ 6, Ex. 4 at 47:24-49:8; Janay Decl. ¶ 4, Ex. B at DEFS000234 - 248; Janay Decl. ¶ 5, Ex. C.

13.     At that time, Plaintiff provided Sterling with a photocopy of the following interior artwork and gameboard presentation from his New Zealand Book as a way of providing Sterling with a general understanding of the nature, style and uniqueness of the work:



Ederer Decl. ¶ 11, Ex. 9 [Defendants' Deposition Ex. 6]. (artwork at WARD000041)

14.     At the same time, Plaintiff informed Sterling that he held intellectual property rights, including copyrights, to the style and content of the New Zealand Book. Ederer Decl. ¶ 11, Ex. 9 [June 11, 2004 letter from Plaintiff to Sterling] ("I hold the world rights to this style of publication through patent & copyright protection")

15.     After learning of the existence of intellectual property rights, Sterling's puzzles and games editor inquired as to the nature and geographic scope of Plaintiff's copyright protection. Plaintiff

in turn, based on his narrow and limited knowledge of copyright protection and to his best ability,

responded:

> Concerning protection, as I understand it copyright - which surpasses patent
> protection - is applicable world wide [sic], or at least to all the countries that
> have signed the World Trade Organization Treaty….

Ederer Decl. ¶ 12, Ex. 10 [July 7, 2004 email chain between Plaintiff and Sterling] at DEFS000237.

## IV.  WARD PROVIDED STERLING WITH PUBLISHING RIGHTS TO THE WORK WITHOUT GRANTING OWNERSHIP RIGHTS OR OR AUTHORSHIP RIGHTS TO STERLING.

16.     On October 14, 2004, Ward and Defendant Sterling entered into their first Publishing

Agreement (the "2004 Agreement").  Ederer Decl. ¶ 13, Ex. 11 at DEFS000223-227.

17.     The 2004 Agreement provided, among other things, for Sterling's publication of six (6)

single-player scratch-off Hangman books created based on Plaintiff Ward's book series.  Ederer Decl.

¶ 13, Ex. 11 at Preamble.

18.     The 2004 Agreement further granted Sterling a perpetual option to publish two (2)

additional single-player scratch-off Hangman books, with text (*i.e.*, game words) to be supplied by

Plaintiff, every six (6) months.  Ederer Decl. ¶ 13, Ex. 11 at Preamble at DEFS000223.

19.     Importantly, the 2004 Agreement, drafted by Sterling, provided:

> The publisher shall copyright the Work in the United States in the name of the
> Author.

2004 Agreement Page 1 Clause 2, line 1 (DEFS000223).

20.     The 2004 Agreement also provided that where Sterling "supplie[d] material for the

[books] (such as illustrations)", Sterling had the *option* to "copyright such material in its own name" —

accordingly, the 2004 Agreement provided that Sterling's U.S. copyright as to any feature in any

single-player scratch-off Hangman game books published under Plaintiff Ward's name could only cover

the specific materials that Sterling supplied for those books. Notably, Sterling never exercised this option.  Ederer Decl. ¶ 13, Ex. 11 ¶ 2 at DEFS000223.

21.     The 2004 Agreement also contained a merger clause which provided, in relevant part, that:

> This Agreement contains the entire understanding between the parties, supersedes all previous oral or written representations or agreements with respect to the Work, and may not be changed, modified or discharged orally.

Ederer Decl. ¶ 13, Ex. 11 ¶ 18 at DEFS000227

22.     On February 16, 2005, after the parties had entered into the 2004 Agreement, Sterling sent Plaintiff proofs of the works for review and approval, these titles became the first four (4) books in Sterling's "Scratch & Solve" Hangman series. The interior artwork and gameboard presentation for each of these books, developed by Sterling based on the game presentation, is depicted below:



23.     After reviewing the above artwork and presentation, Plaintiff Ward became concerned that there were modifications made to the game, and specifically, as to the number of chances a player would get before being hanged:

> I have received the proofs of the "Hangman" & "Tough Hangman" titles…. I see that the whole concept of the game has been changed; now players only have 5 chances before being hung, instead of the original 10.

Ederer Decl. ¶ 15, Ex. 13 at DEFS000387.

24.     In response to Plaintiff's concern with the modification, Sterling's Senior Acquisition Editor, Peter Gordon, explained that the modifications were necessary simply to conform the game to America tradition:

> Were [sic] in America, the traditional way is you get six wrong guesses (head, torso, left arm, right arm, left leg, right leg) before you are hanged….Solvers can give themselves more turns as they want, but we will stick with the traditional allotment of six wrong guesses in the book.

Ederer Decl. ¶ 13, Ex. 13 at DEFS00387.

25.     On September 1, 2005, after Plaintiff agreed to all stylistic modifications, Sterling published its first single-player scratch-off Hangman book in its "Scratch & Solve" Hangman series. This book was entitled *Scratch & Solve Hangman #1*.  Ederer Decl. ¶ 30, Ex. 28 at DEFS000076. Plaintiff's name appeared on the cover of the book.  Images of the cover artwork, and interior artwork and gameboard pages of *Scratch & Solve Hangman #1*, are depicted below:




Ederer Decl. ¶ 16, Ex. 14.

26.     The publishing agreements obligated Sterling to obtain copyright registrations for the

Works in the authors name, however Sterling could elect to register materials they supplied or contributed to the Work (such as illustrations) in their own name.. Ederer Decl. ¶ 13, Ex. 11; Ederer Decl. ¶ 22, Ex. 20.

27.     The Works are a unique tangible expression of an original idea of a one-player hangman game, they are a puzzle book with a scratch-off element, with the drawing of a hangman on one side and the answers on the other;  the series involved various difficulty levels for separate titles; the Work was first introduced to Sterling by Plaintiff, Sterling however obtained a registration for a trademark ownership over "Scratch & Solve" in its own name. Ederer Decl. ¶ 31, Ex. 29 at DEFS000210.

28.     Sterling did not obtain copyright registration under its own name covering any of the illustrations or designs used in the series.

29.     After a successful sales campaign of the first issues of Plaintiff's Hangman books, Plaintiff and Sterling entered into several extensions to the 2004 Agreement covering additional "Scratch & Solve" Hangman books to be published under Plaintiff's name. Ederer Decl. ¶  18, Ex. 16 at DEFS002685-2694.

30.     On or about April 12, 2012, Plaintiff and Sterling entered into a new contractual agreement (the "2012 Agreement") giving Sterling Publishing rights to two new books to be published under Plaintiff's name as part of the "Scratch & Solve" Hangman series — *Hangman In The Moon* and *Tough Hangman In The Moon*.  Ederer Decl. ¶ 19, Ex. 17 at DES002695-2700.

31.     In line with the uncontested ownership and authorship of the Hangman Series by Plaintiff, the preamble to the 2012 Agreement, drafted by Sterling, provides:

> This agreement...is made and entered into by and between STERLING PUBLISHING CO., INC. ("Publisher")...and MICHAEL WARD...the author of two (2) works (as further described below) tentatively entitled: "HANGMAN IN THE MOON" ("Book #1") and "TOUGH HANGMAN IN THE MOON" ("Book #2")....

Ederer Decl. ¶ 19, Ex. 17 at DEFS002695.

32.     In light of the well known fact that Plaintiff is the rightful owner and author of the

Hangman Series, the first clause of the 2012 Agreement, drafted by Sterling, provides for the

assignment and grant of Plaintiff's ownership rights to Sterling:

> Author grants and assigns to Publisher, during the full term of copyright and any
> renewal thereof, the sole and exclusive right to produce, manufacture, print,
> publish, distribute, market and sell each Work….

Ederer Decl. ¶ 19, Ex. 17 at DEFS002695 [2012 Agreement, Clause (1)(a)].

33.     Moreover, rather than specifically limiting the 2012 Agreement to the content for which

Plaintiff had a United States copyright (i.e., the text or words that comprised the solutions to the various

hangman puzzles), Sterling drafted the 2012 Agreement with only a brief description of the books to be

published in terms of words and pages, without any limitations or specification as to ownership rights:

> Book #1 shall be described as follows: 100 new and original puzzle words to fill
> 96 pages. Book #2 shall be described as follows: 100 new and original puzzle
> words to fill 96 pages.

Ederer Decl. ¶ 19, Ex. 17 ¶¶ 1 at DEFS002695 [2012 Agreement, Clause (1)(2)].

34.     The 2012 Agreement also contained a merger clause which provided, in relevant part,

that:

> This Agreement contains the entire understanding and agreement between the
> parties and supersedes all previous oral or written representations or
> agreements with respect to the subject matter hereof.  No modification of or
> change to this Agreement shall be binding unless in writing and signed by all
> parties hereto.  There are no representations, warranties, promises, covenants
> or understandings of the parties other than those expressly set forth herein.

Ederer Decl. ¶ 19, Ex. 17 ¶¶ 21 at DEFS002700.

35.     On or about January 22, 2013, Plaintiff and Sterling entered into a new Publishing

11

Agreement (the "2013 Agreement") for two new books to be authored by Plaintiff and published under

his name as part of the "Scratch & Solve" Hangman series — *Scratch & Solve Hangman Of Leisure*

and *Scratch & Solve Tough Hangman Of Leisure*.  Ederer Decl. ¶ 20, Ex. 18 at

DEFS002701-2706.

36.    Similar to the format of the 2012 Agreement, the 2013 Agreement, drafted by Sterling,

in its preamble attributes authorship in the two books to Plaintiff:

> This agreement...is made and entered into by and between STERLING
> PUBLISHING CO., INC. ("Publisher")...and MICHAEL WARD...the author
> of two (2) works (as further described below) tentatively entitled: "SCRATCH
> & SOLVE HANGMAN OF LEISURE" ("Book #1") and "SCRATCH &
> SOLVE TOUGH HANGMAN OF LEISURE" ("Book #2")....

Ederer Decl. ¶ 20, Ex. 18 [2013 Agreement preamble] at DEFS002701.

37.    In addition, the first clause of the 2013 Agreement mirrors that of the 2012 Agreement

in expressly providing for the assignment and grant of Plaintiff's ownership and authorship rights in the

books to Sterling:

> Author grants and assigns to Publisher, during the full term of copyright and any
> renewal thereof, the sole and exclusive right to produce, manufacture, print,
> publish, distribute, market and sell each Work….

Ederer Decl. ¶ 20, Ex. 18 ¶¶ 1 at DEFS002701.

38.    Furthermore, without placing any limitation on the contributions of Plaintiff Ward,

Sterling drafted the book descriptions in the 2013 Agreement as follows:

> Book #1 shall be described as follows: sufficient list of words and phrases to fill
> 96 pages. Book #2 shall be described as follows: sufficient list of words and
> phrases to fill 96 pages.

Ederer Decl. ¶ 20, Ex. 18 ¶¶ 1 at DEFS002701 [2013 Agreement, Clause (1)(b)].

39.    The 2013 Agreement contains the same merger clause as the 2012 Agreement.  Ederer

Decl. ¶ 19, Ex. 17 ¶ 21; Ederer Decl. ¶ 20, Ex. 18 ¶ 21 at DEFS002706.

## V.   WORKS PUBLISHED BY STERLING BASED ON PLAINTIFF'S SCRATCH-HANGMAN SERIES WITHOUT PLAINTIFF'S AUTHORIZATION.

40.     On or about May 28, 2009, Defendant Sterling, without notifying plaintiff, entered into a

publishing agreement with Defendant Francis Heaney for a Work tentatively entitled *Trivia Hangman*.

Ederer Decl. ¶ 23, Ex. 21 [Sterling/Heaney publishing agreement].

41.     On or about October 5, 2010, Defendant Sterling published *Trivia Hangman* as part

of the "Scratch & Solve" Hangman series, previously attributed to Plaintiff Ward, without consulting or

providing for profit sharing with Plaintiff.  Ederer Decl. ¶ 30, Ex. 28 at DEFS000150-51.

42.     Images of the cover artwork, and the interior artwork and gameboard pages of *Trivia*

*Hangman*, are depicted below:



Ederer Decl. ¶ 24, Ex. 22; Ward Decl ¶ 13, Ex. L at WARD000005.

43.     Plaintiff first learned of Sterling's publication of *Trivia Hangman* in or around "late

2011".  Ederer Decl. ¶ 7, Ex. 5 [Supplemental Response to [Defendants'] Request for the Production

of Documents] at Response to Request No. 51.

44. The cover artwork, interior artwork, and game presentation, as well as, the concepts, depictions and content, reproduced in *Trivia Hangman* contain identical elements and are substantially similar to Plaintiff's Scratch-Hangman series and infringe on Plaintiff's copyright.  Ederer Decl. ¶ 6, Ex. 4 at 19:21-25, 20:14-18, 23:16-23.

45. On or about November 1, 2011, Sterling published *Hollywood Hangman* as part of the "Scratch & Solve" Hangman series without consulting with Plaintiff Ward or providing for a profit sharing structure.  Ederer Decl. ¶ 30, Ex. 28 at DEFS000145-46; Janay Decl. ¶ 14, Ex. L at WARD000006.

46. Images of the cover artwork, and the interior artwork and gameboard pages of *Hollywood Hangman*, are depicted below:



Ederer Decl. ¶ 26, Ex. 24 [Defendants' Deposition Ex. 167].

47. Plaintiff first learned of Sterling's publication of *Hollywood Hangman* in or around "early 2012".  Ederer Decl. ¶ 7, Ex. 5 [Supplemental Response to [Defendants'] Request for the Production of Documents] at Response to Request No. 51.

48.     The cover artwork, interior artwork, and game presentation, as well as, the concepts, depictions and content, reproduced in *Hollywood Hangman* contain identical elements and are substantially similar to Plaintiff's Scratch-Hangman series and the New Zealand Book, and as a result they infringe on Plaintiff's copyrights. Ederer Decl. ¶ 30, Ex. 28 at DEFS000145-46; Janay Decl. ¶ 14, Ex. L at WARD000006.

49.     On or about February 5, 2013, Sterling published three (3) additional books in the "Scratch & Solve" Hangman series under the pseudonym "Jack Ketch" — *Science Hangman*, *Geography Hangman*, and *Spelling Bee Hangman*, again, Sterling did not consult with or provide for profit sharing with Plaintiff Ward.  Ederer Decl. ¶ 30, Ex. 28 at DEFS000153-58; Ederer Decl. ¶ 27, Ex. 25; Ederer Decl. ¶ 28, Ex. 26; Ederer Decl. ¶ 29, Ex. 27, Janay Decl. ¶ 13, Ex. K at WARD000007-11.

50.     Images of the cover artwork, and the interior artwork and gameboard pages of *Science Hangman*, are depicted below:



Ederer Decl. ¶ 27, Ex. 25, Janay Decl. ¶ 14, Ex. L at WARD000008.

51.     Images of the cover artwork, and the interior artwork and gameboard pages of *Geography Hangman*, are depicted below:



Ederer Decl. ¶ 28, Ex. 26, Janay Decl. ¶ 13, Ex. K at WARD000007.

52.     Images of the cover artwork, and the interior artwork and gameboard pages of

*Spelling Bee Hangman*, are depicted below:



Ederer Decl. ¶ 29, Ex. 27, Janay Decl. ¶ 14, Ex. L at WARD000009.

53.     The cover artwork, interior artwork, and game presentation, as well as, the concepts,

depictions and content, reproduced in *Science Hangman*, *Geography Hangman*, and *Spelling Bee*

*Hangman,* contain identical elements and are substantially similar to Plaintiff's Scratch-Hangman series

and the New Zealand Book, and, therefore infringe on Plaintiff's copyrights.  Ederer Decl. ¶ 5, Ex. 3

[Defendants' Deposition] at WARD000039; Janay Decl. ¶ 13, Ex. K at WARD000005-13.

16

**VI.    PLAINTIFF'S REACTION TO THE UNAUTHORIZED PUBLISHING OF THE
BOOKS DESCRIBED ABOVE AND THE SUBSEQUENT RESPONSE BY
STERLING.**

54.    After discovering the publication of the five books described above, Plaintiff complained

to Sterling about publishing plaintiff's book series without plaintiff's agreement and without sharing

profits with plaintiff. **(**WARD000060-65)

55.    In or around August 2013, Defendant Sterling offered Plaintiff to resume publishing

Plaintiff's "Scratch & Solve" Hangman series (with Plaintiff as the author) with a new book, tentatively

entitled *Scratch & Solve Underwater Hangman* (Also Scratch & Solve Prime Time). Janay Decl. ¶

17**,** Ex. O at WARD000066-67.

56.    The draft 2013 Agreement, drafted by Sterling, for the publishing of *Underwater*

*Hangman* (hereinafter "Draft 2013 Agreement"), for the first time in the parties' long contractual

relationship, provided for any sort of limitation to Ward's expected contribution:

> The Work shall be described as follows: sufficient list of words and phrases to
> fill 96 pages. It is understood and agreed that Publisher shall provide materials
> and content for the Work.

Complaint: Exhibit A (clause 1) (DEFS002783-87)

57.    In addition to the Draft 2013 Agreement — and for the first time in the parties'

extensive contractual relationship — Sterling also drafted and requested Planitiff to sign a RELEASE as

a condition to entering into the Draft 2013 Agreement. Janay Decl. ¶ 11, Ex. I at DEFS002782-2787.

58.    The RELEASE, among other things, contained the following language:

> **MICHAEL WARD** ("Releasor")....does hereby RELEASE and
> DISCHARGE, Sterling and its current and former officers, directors….from or
> in connection with, and hereby waives and/or settles, any and all actions,
> causes, suits debts, sums of money, accounts...in connection with the allegedly
> unauthorized publication and sale of *SCRATCH HANGMAN* and *SCRATCH*
> *& SOLVE HANGMAN* books by authors other than the Releasor, including
> without limitation claims for copyright infringement, trademark or trade dress

infringement, unfair competition, damages and/or attorneys' fees. For Clarity, it
is agreed and understood that Sterling may continue to sell all *SCRATCH
HANGMAN* and *SCRATCH & SOLVE HANGMAN* books by authors other
than Releasor that Sterling published prior to the execution of this Release.

Janay Decl. ¶ 11, Ex. I at DEFS002782.

59.     Plaintiff refused to enter into the Draft 2013 Agreement, as well as the RELEASE,

because he believed that the new format of the contractual agreement was an attempt by Sterling to

foreclose Plaintiff's apparent legal claims against Sterling. Janay Decl.  ¶ 11, 12, 18.

Secondly, your revised contracts had amendments made to them which were
unacceptable, compared to previous contracts that you have drawn up.

Janay Decl. ¶ 18, Ex. P (DEFS002766-2769).

## VII.    COPYRIGHT INFRINGEMENT OFFENSES

60.     Plaintiff Ward does not allege a cause of action for patent infringement with respect to

his "idea" for a single-player scratch-off Hangman game.  Ederer Decl. ¶ 3, Ex. 1.

61.     Plaintiff's copyright infringement claims in this action are in part based on his New

Zealand copyright in his New Zealand work, which is enforceable in the United States pursuant to

international treaty. Ederer Decl. ¶ 6, Ex. 4 at 11:3-25; 17:17-20; 78:20-25, Janay Decl. ¶ 31, Ex. CC.

62.     Additionally Plaintiff's copyright infringement claims may be based based on Plaintiff's

United States copyrights obtained for Plaintiff by Sterling for the books published under the "Scratch &

Solve" series. Janay Decl. ¶ 28.

63.     Defendant Sterling used plaintiff's unique way of publishing the idea of one player

hangman games (i.e., using a book completely devoted to hangman game puzzles, using silver

scratch-off ink to conceal answers, akin to an instant lottery; using varying levels of difficulty; ) when

publishing the five Infringing Books described above, thereby infringing on both Plaintiff's New Zealand

and United States copyrights.

## VIII.   TRADE DRESS INFRINGEMENT

64.     Plaintiff asserts a violation of the unique trade dress used by Plaintiff in the New Zealand Book, in violation of 15 U.S.C. § 1125(a).

65.     Specifically, the non-functional, distinctive, unique and highly successful presentation of the New Zealand Book — namely (a) The one-player format; (b) The scratch-off concept akin to instant lottery tickets; (c) the depiction of the hangman logo on the front; (d) the overall feel of the book as a "challenge", and (e) the placing of the hangman image to the right or the left of the scratch-off guesses — was used by Defendant Sterling in publishing five (5) books in the Scratch & Solve series, described above, without Plaintiff's authorization of such use, and in violation of 15 U.S.C. § 1125(a). (Janay Declaration, Ward's Declaration)

66.     In addition, Plaintiff asserts a violation of the unique trade dress used in the Scratch & Solve series, created jointly with Sterling based on Plaintiff's New Zealand Book and marketed successfully under Plaintiff's authorship, in violation of 15 U.S.C. § 1125(a).

67.     Specifically, the non-functional, distinctive, unique and highly successful presentation of the Scratch & Solve series — namely (a) The one-player format; (b) The scratch-off concept akin to instant lottery tickets; (c) the depiction of the hangman logo on the front; (d) the overall feel of the book as a "challenge"; (e) the placing of the hangman image to the right or the left of the scratch-off guesses; (f) the almost identical format of the inside pages; and, (g) the overall design of the Scratch & Solve series which became a market known product as a direct result of Plaintiff's authorship — has acquired substantial value and recognition in the United States and abroad, and was used by Defendant Sterling in publishing five (5) books in the Scratch & Solve series, described above, without Plaintiff's

authorization of such use, and in violation of 15 U.S.C. § 1125(a). (Janay Decl., Ward's Declaration)

68.     Such non-functional, distinctive and unique trade dress, first developed by Plaintiff, is well known to the consuming public and the trade as identifying and distinguishing Plaintiff as the exclusive and unique source of the Scratch & Solve series, used in connection with such trade dress.

69. The use of almost identical trade dress by Sterling in publishing the five (5) books described above led consumers to confuse these books with the highly successful Scratch & Solve series authored and made successful by Plaintiff.

69.     Defendant Sterling published *Trivia Hangman* with Defendant Heaney as the author. Janay Decl. ¶ 14, Ex. L at WARD000005.

70.     Defendant Sterling published *Hollywood Hangman* with Defendant Blindauer as the author.  Janay Decl. ¶ 14, Ex. L at WARD000006.

71.     Defendant Sterling published *Science Hangman*, *Geography Hangman*, and *Spelling Bee Hangman*, on its own under the "Jack Ketch" Pseudonym as the author.  Janay Decl. ¶ 14, Ex. L at WARD000007-11.

72.     Defendant B&N acquiesced in the publishing of the five (5) books described above (heretofore and hereinafter "Infringing Books")..

73.     Defendant Sterling first discovered Plaintiff's unique trade dress when Plaintiff approached him to publish Scratch Hangman books in the United States:

> Another big success is our "Scratch & Solve" line of hangman books that work like instant lottery tickets. A guy in New Zealand had done it there, and he wanted to expand to the U.S., so he contacted me. Less than a minute after I opened the envelope, I knew it was going to be huge. We've sold a million of those.

Janay Decl. ¶ 8, Ex. F at WARD000026.

74.    In an attempt to describe the trade dress infringement in his own words, Plaintiff

provided the following testimony during his March 20, 2014 deposition:

> Q.  Anything more significant than that in terms of the significant elements of
> your trade dress or does [your response to Interrogatory No. 5] say it all?
>
> A.  In so much as if anybody buys a product, they generally buy it because they
> know their product.  The Hangman game has been around hundreds of
> years, it has even preceded crosswords, so once a person sees the name
> Hangman on the book, it would pique their interest, they would open the
> book, it would pique their interest, they would open the book, see it was a
> sole playing game that incorporated scratch-off ink and that would entice
> them to purchase the book.
>
> Q.  So those, what you just said, are the elements of the trade dress that you
> claim my clients have infringed; correct?
>
> A.  That and the fact that I supplied your client with illustrations that were
> copyrighted and [Sterling] produced books based on illustrations that I
> supplied.
>
> Q.  Right.  But I'm trying to focus on what are the elements of your trade dress
> and is this an accurate statement in your mind of the elements of your trade
> dress?
>
> A.  Yes, it is.  The look and the feel of the whole book.
>
> Q.  Anything more specific than that?
>
> A.  Well, if you compare both books, you can see the trade dress is obvious.

Ederer Decl. ¶ 6, Ex. 4 at 165:15-166:20.

## IX.    DEFENDANTS' UNFAIR COMPETITION UNDER NEW YORK COMMON LAW.

75.    From the July 9, 2004 email (Janay Decl. ¶ 5, Ex. C at WARD00042) onward Plaintiff

and Defendant cooperated and produced approximately forty (40) titles in the U.S. under the "Scratch

and Solve" moniker with Mike Ward as the Author and continued to sell over 1.5 million copies.  Janay

Decl. ¶ 9, Ex. G at WARD000090.

76.    In May of 2009, without notifying Ward and without Ward's permission or consent,

Sterling began entered into a Publishing Agreement with it's own employee Francis Heaney for a title in the "Scratch and Solve" series that incorporated the identical scratch-off single player hangman game that Ward introduced to Sterling and that they had been publishing in Ward's name since "Scratch & Solve Hangman #1" published in 2005.  Janay Decl. ¶ 14, Ex. L at WARD000005.

77.     Sterling then published four (4) additional titles once using another employee Patrick Blindauer for a title in 2011 and the three other times using a pseudonym "Jack Ketch" in 2013. Janay Decl. ¶ 14, Ex. L at WARD000007-11.

78.     While Sterling began ramping up the creation of "Scratch & Solve" titles under their employees names or pseudonym's they began scaling down the number of titles they requested from Plaintiff.

## X.     DEFENDANTS' UNJUST ENRICHMENT AT THE EXPENSE OF PLAINTIFF

79.     Defendant have profited on the sale of Infringing Books.  Janay Decl. ¶ 6, Ex. D at WARD0000088.

80.     Plaintiff testified that Defendant's livelihood was stripped away from him.

Q.What actual monetary loss have

you suffered?

A. They took away my livelihood.

Q. The livelihood being the sale of

this series of books?

A. My livelihood was derived from

the income from royalties from Sterling from

the Scratch Hangman title.

Q. So you lost your royalties. In

other words, they sold these books, they

paid royalties to other people and you

didn't get them; right?

A. Yes.

Janay Decl. ¶ 28, Ex. Z [Plaintiff Deposition at 170: 2-14].

81.     Plaintiff and Sterling had a longstanding relationship and knew the profitability and value

of the Plaintiff's works and had paid him royalties on the aforementioned approximately forty (40)

previous titles.

Dated:  New York, New York          THE LAW OFFICE OF BARRY E. JANAY, P.C.

June 23, 2014

By:      /Barry E. Janay /_____

          Barry E. Janay, Esq. (BJ9311)
          90 Broad St., 25th Flr.
          New York, New York  10022
          Phone 917-756-8501
          Fax 855-374-2884
          bjanay@lobej.com
          *Attorneys for Plaintiff(s)*