**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MICHAEL WARD d/b/a/ BRAINTEASER PUBLICATIONS, | ) ) ) |
| Plaintiff, | ) ) |
| - against - | ) Civil Action No. 13-cv-7851 (JMF) ) ) |
| BARNES & NOBLE, INC., STERLING PUBLISHING CO., INC., FRANCIS HEANEY, and PATRICK BLINDAUER, | ) ) ) ) ) |
| Defendants. | ) ) |

## COUNTERSTATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1(b) IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Civil Rule 56.1, Plaintiff Mike Ward ("Ward") respectfully submits the following additional material facts and response to the Statement of Material Facts submitted by Defendants Barnes & Noble, Inc. ("B&N"), Sterling Publishing Co. Inc. ("Sterling"), Francis Heaney ("Heaney"), and Patrick Blindauer ("Blindauer") in support of their Motion for Summary Judgment.

**THE PARTIES**

1.      Defendant B&N is the largest book retailer in the United States.  Ederer Decl. ¶ 3, Ex. 1[Complaint] ¶ 9.

**Response:**  Admitted.

2.      Defendant Sterling is an innovative and forward-thinking publishing company, in business for over sixty (60) years, with over 5,000 titles in print.  Sterling has reputation for publishing quality books in various categories, including puzzles and games.  B&N acquired Sterling in 2003.  Ederer Decl. ¶ 3, Ex. 1 [Complaint] ¶¶ 9-10; Ederer Decl. ¶ 10, Ex. 8 [Welcome to Sterling Publishing].

1

**Response:** Admitted to the extent that Sterling has been in business for 60 years with over 5,000 titles in print in various categories including puzzles and games and that they were acquired by B&N in 2003, but denies the remainder concerning the subjective characterization of the company.

3.  Defendant Francis Heaney is an employee of Sterling, and the author of a book published by Sterling in 2010 as part of its "Scratch & Solve" series, entitled *Trivia Hangman*. Ederer Decl. ¶ 3, Ex. 1 [Complaint] ¶¶ 4, 11, 14; Ederer Decl. ¶ 23, Ex. 21 [Heaney's publishing agreement with Sterling].

**Response:** Admitted to the extent Francis Heaney is an employee of Sterling and the Author of *Trivia Hangman*, disputed to the extent that Defendants state that "Scratch & Solve" is Defendant Sterling's series.

4.  Defendant Patrick Blindauer is an employee of Sterling, and the author of a book published by Sterling in 2011 as part of its "Scratch & Solve" series, entitled *Hollywood Hangman*. Ederer Decl. ¶ 3, Ex. 1 [Complaint] ¶¶ 5, 11, 14; Ederer Decl. ¶ 25, Ex. 21 [Blindauer's publishing agreement with Sterling].

**Response:** Admitted to the extent Patrick Blindauer is an employee of Sterling and the Author of *Hollywood Hangman*, disputed to the extent that Defendants state that "Scratch & Solve" is Defendant Sterling's series.

5.  Plaintiff Michael Ward d/b/a Brainteaser Publications is a citizen of New Zealand. Ederer Decl. ¶ 3, Ex. 1 [Complaint] ¶ 1.

**Response:** Admitted.

## I.  BACKGROUND

6.  In February 1994, Plaintiff filed a provisional patent application in the New Zealand Patent Office for an invention for a game entitled "Scratch Hangman," which he

described as follows:



(c) Here begin description of the invention. The continuation of the specification should be upon paper of the same size as this form from on one side only, with the lines well spaced and with a margin of 2.5 cm on the left-hand side of the paper.

**The specification and the duplicate thereof must be signed at the end.**

(c) This invention relates to a novel system that produces a book entitled "SCRATCH HANGMAN".

With reference to the drawing shown on page 2, is a description of the game, as well as the surface treatment applied to the paper.

(CONT.)

(1)

DESCRIPTION OF THE GAME

Within the circles are either a number, or a cross.

When a number appears, the letter is transferred to the corresponding number below, until a complete word (or phrase) is spelt.

When a cross appears, the player will start drawing up the hangman grid.

The object of the game is to correctly spell the answer before the hangman grid is completed.

The answer to the puzzle shown above is:- "BALL POINT PEN".

SURFACE TREATMENT TO THE PAPER.

The circles above the letters of the alphabet will have a screenprinted removable opaque ink treatment applied to them, which is able to be removed by a mechanical method of scratching, such as the edge of a coin.

_M. D. Ward._

Ederer Decl. ¶ 4, Ex. 2.

**Response:** Admitted.

7.    The New Zealand Patent Office never issued a patent to Plaintiff his "Scratch Hangman" invention because, as Plaintiff testified at his March 20, 2014 deposition:

After 12 months, my patent attorney told me that I did not need to go

ahead with the application for a full patent because New Zealand copyright under worldwide copyright and overrode a patent.

Ederer Decl. ¶ 6, Ex. 4 at 80:10-19; 84:20-23; 86:24-87:7.

**Response:**  Admitted, however to clarify the Plaintiff is not a lawyer and therefore his testimony at a deposition concerning his beliefs as to intellectual property law is irrelevant and inadmissible under Fed.R.Civ.P. 56(c)(2).

8.      In 2000, years before he had any relationship with Sterling, Plaintiff published a single-player scratch-off Hangman book in New Zealand, entitled *Scratch Hangman Puzzle Book* (the "New Zealand Book").  Ederer Decl. ¶ 5, Ex. 3; Ederer Decl. ¶ 6, Ex. 4 at 18:9-19:19.

**Response:**  Admitted.

9.      The cover artwork for the New Zealand Book, and the interior artwork and gameboard presentation therefor, appear below:

| Plaintiff's New Zealand Book - Cover | Plaintiff's New Zealand Book - Interior |
|---|---|
|  | |

Ederer Decl. ¶ 5, Ex. 3.

**Response:**  Admitted.

10.     At his deposition, Plaintiff testified that he owns an unregistered copyright in his New Zealand Book under New Zealand law.  Ederer Decl. ¶ 6, Ex. 4 at 80:10-19 ("New Zealand -- in New Zealand, copyright is an automatic and registered right that comes into existence every time an original work is created, published or performed.  So basically, it doesn't have to be

registered in New Zealand to have copyright.").

> **Response:** Admitted, but immaterial and adds, to clarify, that as mentioned above, New
>
> Zealand copyright law does not require registration to obtain copyright protection;
>
> furthermore the holder of a foreign copyright in a jurisdiction where registration is not a
>
> requirement such as New Zealand does not need to register the work prior to availing
>
> himself to the U.S. Courts pursuant to the Berne Convention Implementation Act.

11.     Plaintiff holds no U.S. copyright registration for his New Zealand Book, and does not know if his New Zealand Book has ever been offered for sale or sold in the United States. Ederer Decl. ¶ 6, Ex. 4 at 19:10-19; 77:12-78:5.

> **Response:** Admitted, but clarification is necessary here insofar as pursuant to the Berne
>
> Convention Implementation Act no registration is necessary for the protection of
>
> Plaintiff's New Zealand work, this act allows owners of unregistered foreign copyrights
>
> to bring claims of infringement in United States Courts.

12.     Plaintiff testified at his deposition that he believes he is "the only person in the world that can own rights to [a one-player scratch-off] Hangman game." Ederer Decl. ¶ 6, Ex. 4 at 75:3-6.

> **Response:** Admitted that this was Plaintiff's testimony, but clarification is necessary to
>
> the extent that this statement attempts to portray that Plaintiff holds himself out as a legal
>
> expert capable of definitively reaching a legal conclusion, the testimony is not relevant to
>
> any of the claims and is inadmissible under Fed.R.Civ.P. 56(c)(2).

## II.     PLAINTIFF'S INITIAL CONTACTS WITH STERLING

13.     In the summer of 2004, Plaintiff contacted Sterling to see if Sterling had any interest in publishing a single-player scratch-off Hangman book in the United States. Ederer

Decl. ¶ 11, Ex. 9 [June 11, 2004 letter from Plaintiff to Sterling]; Ederer Decl. ¶ 6, Ex. 4 at 47:24-49:8.

**Response:** Admitted, however clarification is necessary as the letter goes much further than simply gauging the interest of Sterling. It advises Sterling of critical points concerning Ward's willingness to either sell or license the work.

14.     At that time, Plaintiff provided Sterling with a photocopy of the following interior artwork and gameboard presentation from his New Zealand Book:



Ederer Decl. ¶ 11, Ex. 9.

**Response:** Admitted.

15.     The foregoing interior artwork and gameboard presentation from Plaintiff's New Zealand Book is the only interior artwork and/or gameboard presentation that Plaintiff ever provided to Sterling.  Ederer Decl. ¶ 7, Ex. 5 [Supplemental Response to Plaintiff's [sic] Request For The Production Of Documents] at Responses to Request Nos. 15-17 (identifying the foregoing as the only hangman illustration and gameboard presentation that Plaintiff ever supplied to Sterling); Ederer Decl. ¶ 6, Ex. 4 at 167:22-168:2.

**Response:** Admitted.

6

16.     In his initial communications with Sterling, Plaintiff stated that he held "the world rights to this style of publication through patent & copyright protection." Ederer Decl. ¶ 11, Ex. 9 [June 11, 2004 letter from Plaintiff to Sterling] ("[I] obtained patent & copyright protection" for a single-player scratch-off Hangman game).

**Response:**   Admitted to the extent that Plaintiff does not dispute that this was his testimony, however, to clarify, this paragraph is nothing more than an attempt to mischaracterize Plaintiff's, a non-lawyer, testimony as that of a legal expert. Any legal conclusions contained in this testimony are irrelevant and therefore inadmissible under Fed.R.Civ.P. 56(c)(2).

17.     However, when Sterling's puzzles and games editor inquired as to the nature and geographic scope of Plaintiff's purported protection, Plaintiff responded:

> Concerning protection, as I understand it copyright - which surpasses patent protection - is applicable world wide [sic], or at least to all the countries that have signed the world Trade Organization Treaty….

Ederer Decl. ¶ 12, Ex. 10 [July 7, 2004 email chain between Plaintiff and Sterling] at DEFS000237.

**Response:** Admitted, however again to the extent that this testimony attempts to portray Plaintiff as a legal expert it is irrelevant and therefore inadmissible under Fed.R.Civ.P. 56(c)(2).

18.     In reply, Sterling's editor, a non-lawyer, stated:

> The problem with copyright is that you can't copyright an idea. Yes, nobody can use the same set of words in your book, but the idea of using a scratch-off for solitaire hangman can be used freely by another publisher unless you have some sort of patent protection in the U.S.

Ederer Decl. ¶ 12, Ex. 10 [July 7, 2004 email chain between Plaintiff and Sterling] at DEFS000237.

**Response:** Admitted, however to the extent it contains legal conclusions no response is required.

### III.    PLAINTIFF'S PUBLISHING RELATIONSHIP WITH STERLING

19.     On October 14, 2004, Plaintiff and Sterling entered into their first Publishing Agreement (the "2004 Agreement").  Ederer Decl. ¶ 13, Ex. 11.

**Response:** Admitted.

20.     The 2004 Agreement provided, among other things, provided for Sterling's publication of six (6) single-player scratch-off Hangman books, with text (*i.e.*, game words) to be supplied by Plaintiff.  Ederer Decl. ¶ 13, Ex. 11 at Preamble.

**Response:** Admitted with respect to Sterling's publication of six (6) single-player scratch-off Hangman books, denied, however, with respect to the assertion that the Agreement provided that Plaintiff's role was limited to supplying text (i.e. game words). No such limit exists, the 2004 Agreement provides that Ward is the proprietor and author of the Works. (*See* Ederer Decl. ¶ 13, Ex. 11 at Preamble) and squarely places the obligation on Sterling to obtain copyright protection in the work (not simply the text) in Ward's name.

21.     The 2004 Agreement further granted Sterling a perpetual option to publish two (2) additional single-player scratch-off Hangman books, with text (*i.e.*, game words) to be supplied by Plaintiff, every six (6) months.  Ederer Decl. ¶ 13, Ex. 11 at Preamble.

**Response:** Admitted with respect to the 2004 Agreement granting Sterling a perpetual option to publish two (2) additional single-player scratch-off Hangman books. Denied, however, with respect to "text (*i.e.*, game words) to be supplied by Plaintiff, every six (6) months." As shown above in the response to 21, is no provision in the 2004 Agreement that limits the scope of Plaintiff's contribution to the Works to text or game words only.

*See* Ederer Decl. ¶ 13, Ex. 11.

22.     The 2004 Agreement also provided that Sterling was to register U.S. copyrights in single-player scratch-off Hangman books published under Plaintiff's name, except to the extent Sterling "supplie[d] material for the [books] (such as illustrations)", in which case Sterling was entitled to "copyright such material in its own name" — accordingly, the 2004 Agreement provided that Plaintiff's U.S. copyright in any single-player scratch-off Hangman game books published under his name would cover only the materials he supplied for those books.  Ederer Decl. ¶ 13, Ex. 11 ¶ 2.

**Response**: Denied, this statement is blatant attempt to mislead the court, the actual clause referred to in this statement does not have any exception as the Defendants assert. It does provide that defendants *may* copyright - which they never chose to do - any material it supplied for the book, the actual provision reads as follows:

> 2. Copyright. The publisher *shall* copyright the Work in the United States in the name of the Author. If the Publisher supplies material for the Work (such as illustrations), the Publisher *may* copyright such material in its own name or in the name of its owner, as the Publisher may elect.

Ederer Decl. ¶ 13, Ex. 11 ¶ 2.

23.     The 2004 Agreement also contained a merger clause which provided, in relevant part, that:

> This Agreement contains the entire understanding between the parties, supersedes all previous oral or written representations or agreements with respect to the Work, and may not be changed, modified or discharged orally.

Ederer Decl. ¶ 13, Ex. 11 ¶ 18.

**Response:** Admitted.

24.     On February 16, 2005, Sterling sent Plaintiff proofs of what were to become the first four (4) books in Sterling's "Scratch & Solve" Hangman series published with "words and

phrases" contributed by Plaintiff. The interior artwork and gameboard presentation for each of these books, which was developed entirely by Sterling, is depicted below:



Ederer Decl. ¶ 14, Ex. 12 at DEFS002305, DEFS002357.

**Response:** Admitted to the extent that these are accurate depictions of the proofs sent to Plaintiff and that they were to become the first four (4) books in the "Scratch & Solve" series. However, denied as to the rest of the statement as clarified below.

First, Sterling does not own universal rights to the "Scratch & Solve" series, as Plaintiff contributed all of the text, as well as made significant contributions to the exterior and interior design by at first instance providing Sterling with proofs of the oruir art New Zealand Book, advised Sterling on formatting, Ward reviewed the proofs submitted and provided feedback (Janay Decl.¶33, Exh. EE). Second, Plaintiff has U.S. registered copyright protection in numerous Scratch & Solve works - see paragraph 27 and response thereto below. Moreover, Sterling consulted extensively with Plaintiff when finalizing the designs depicted above. See (Janay Decl. Exh. EE).

25. Upon reviewing the proofs Sterling provided to him for these books, Plaintiff was moved to note the striking differences between the interior artwork and gameboard presentation

in his New Zealand Book, and the interior artwork and presentation created by Sterling for its

"Scratch & Solve" Hangman series of books:

> I have received the proofs of the "Hangman" & "Tough Hangman"
> titles…. I see that the whole concept of the game has been changed; now
> players only have 5 chances before being hung, instead of the original 10.

Ederer Decl. ¶ 15, Ex. 13 at DEFS000390.

**Response:** Admitted, however its implicit that Ward, the author and proprietor (*See*

Ederer Decl. ¶ 13, Ex. 11 at Preamble), extensively took part in the review and approval process

of the works (Janay Decl.¶33, Exh. EE)..

26.     Sterling published its first single-player scratch-off Hangman book in its "Scratch

& Solve" Hangman series, creating Plaintiff as author, on September 1, 2005.  This book was

entitled *Scratch & Solve Hangman #1*.  Ederer Decl. ¶ 30, Ex. 28 at DEFS000076.  Images of the

cover artwork, and interior artwork and game-board pages of *Scratch & Solve Hangman #1*, are

depicted below:



Ederer Decl. ¶ 16, Ex. 14.

**Response:** Admitted that Sterling was the publisher, but denies any attempt by Defendant to imply that Sterling own any copyrights associated with the Works.

27.     Pursuant to the terms of the 2004 Agreement, Sterling obtained, in Plaintiff's name, a U.S. copyright registration covering Plaintiff's contribution to *Scratch & Solve Hangman #1* — namely, the "text", or words, that comprised the solutions to the various Hangman puzzles.  Ederer Decl. ¶ 13, Ex. 11; Ederer Decl. ¶ 22, Ex. 20 at 8.

**Response**: Admitted to the extent Sterling did obtain a copyright registration in Plaintiff's name to *Scratch & Solve Hangman #1*, denies as to the rest of the statement as clarified below.

First, the 2004 Agreement - the relevant language is reproduced in the response to paragraph 22 above - does not define the scope of Defendant's recording of the copyright, but rather leaves the recording of the copyright registration to Sterling's discretion. *See* Ederer Decl. ¶ 13, Ex. 11 ¶ 2. Second, the registering of the copyright registration with Plaintiff's authorship as "Entire Text" is consistent with federal registration procedures of registering a work under a category that is most relevant, even if it does not encompass all of the elements that required protection. *See* 37 U.S.C. § 202.3(2)(ii)(C).

28.     Thereafter, Plaintiff and Sterling entered into several extensions to the 2004 Agreement covering additional "Scratch & Solve" Hangman books to be published under Plaintiff's name, with words contributed by Plaintiff.  Ederer Decl. ¶ 18, Ex. 16.

**Response**: Admitted to the extent Plaintiff and Sterling entered into several extensions to the 2004 Agreement covering additional "Scratch & Solve" Hangman books to be published under Plaintiff's name, denies as to the rest of the statement as clarified below.

None of the subsequently entered into publishing agreements between 2005 and 2012 provide for a limitation of Plaintiff's contribution to words, only after Ward complained to Sterling regarding the Heaney, Blindauer, and Ketch infringing works did Sterling attempt to include this inclusion and also sought to have Ward execute a release in favor of Sterling.. *See, e.g.,* Ederer Decl. ¶ 19, Ex. 17; Ederer Decl. ¶ 20, Ex. 18.

29.     "Scratch & Solve" is a registered trademark of Sterling.  Ederer Decl. ¶ 31, Ex. 29.

**Response**: Admitted.

30.     On or about April 12, 2012, Plaintiff and Sterling entered into a new form of Publishing Agreement (the "2012 Agreement") for two new books to be published under Plaintiff's name as part of Sterling's "Scratch & Solve" Hangman series — *Hangman In The Moon* and *Tough Hangman In The Moon*.  Ederer Decl. ¶ 19, Ex. 17.

**Response**: Denies to the extent the Defendants contend that the "Scratch & Solve" Hangman series belongs, in its entirety, to Sterling, and otherwise, admitted.

31.     Under the 2012 Agreement, the "Works" to be covered by that Agreement, and Plaintiff's contribution to each such book, was limited to "100 new and original puzzle words to fill 96 pages."  Ederer Decl. ¶ 19, Ex. 17 ¶ 1(b).

**Response**: Denies the presence of such a limitation in the 2012 Agreement, Defendants are misleading the court, the actual clause referred to by Defendants contains a mere description of the Works to be published, and it reads in its entirety as follows:

> Book #1 shall be described as follows: 100 new and original puzzle words to fill 96 pages. Book #2 shall be described as follows: 100 new and original puzzle words to fill 96 pages.

Ederer Decl. ¶ 19, Ex. 17 ¶ 1(b).

32. The 2012 Agreement also contained a merger clause which provided, in relevant part, that:

> This Agreement contains the entire understanding and agreement between the parties and supersedes all previous oral or written representations or agreements with respect to the subject matter hereof. No modification of or change to this Agreement shall be binding unless in writing and signed by all parties hereto. There are no representations, warranties, promises, covenants or understandings of the parties other than those expressly set forth herein…. No contrary or inconsistent terms or conditions in delivery memos, invoices, letters or other documents will be binding on Publisher unless expressly agreed to in writing by Publisher.

Ederer Decl. ¶ 19, Ex. 17 ¶ 21.

**Response**: Admitted.

33. On or about January 22, 2013, Plaintiff and Sterling entered into a new Publishing Agreement (the "2013 Agreement") for two new books to be published under Plaintiff's name as part of Sterling's "Scratch & Solve" Hangman series — *Scratch & Solve Hangman Of Leisure* and *Scratch & Solve Tough Hangman Of Leisure*. Ederer Decl. ¶ 20, Ex. 18.

**Response**: Denies to the extent the Defendants contend that the "Scratch & Solve" Hangman series belongs, in its entirety, to Sterling, and otherwise, admitted. To clarify, Ward is named in the preamble as the Author and proprietor of the Works. In the 2004 publishing agreement as well as those that followed Ward granted the rights to print, publish, and sell the Works to Sterling during the full term of the copyrights of the Works which were to be registered in Ward's name. (*See* Ederer Decl. ¶ 13, Ex. 11 at Preamble)

34. Pursuant to the 2013 Agreement, the "Works" to be covered by that Agreement, and Plaintiff's contribution to each such book, was limited to a "sufficient list of words and phrases to fill 96 pages." Ederer Decl. ¶ 20, Ex. 18 ¶ 1(b).

**Response**: Denies the presence of a limitation clause, again the Defendants are attempting to mislead the court, the actual clause referred to by Defendants, in a similar

manner to the 2012 Agreement, serves as merely a description of the Works to be published, and reads in its entirety as follows:

> Book #1 shall be described as follows: sufficient list of words and phrases to fill 96 pages. Book #2 shall be described as follows: sufficient list of words and phrases to fill 96 pages.

Plaintiff reiterates and realleges the response contained in paragraph 33 above.

Ederer Decl. ¶ 20, Ex. 18 ¶ 1(b).

35.     The 2013 Agreement contains the same merger clause as the 2012 Agreement. Ederer Decl. ¶ 19, Ex. 17 ¶ 21; Ederer Decl. ¶ 20, Ex. 18 ¶ 21.

**Response**: Admitted.

### IV.     THE ACCUSED BOOKS

36.     On or about May 28, 2009, Sterling entered into a publishing agreement with Defendant Francis Heaney for a Work (defined as "sufficient puzzles to comprise a 160-page book") tentatively entitled *Trivia Hangman*.  Ederer Decl. ¶ 23, Ex. 21 [Sterling/Heaney publishing agreement].

**Response**: Admitted.

37.     On or about October 5, 2010, Sterling published *Trivia Hangman* as part of its "Scratch & Solve" Hangman series.  Ederer Decl. ¶ 30, Ex. 28 at DEFS000150-51.

**Response**: Denies to the extent the "Scratch & Solve" Hangman series belongs, in its entirety, to Sterling, and otherwise, admitted.

38.     Images of the cover artwork, and the interior artwork and gameboard pages of *Trivia Hangman*, are depicted below:



Ederer Decl. ¶ 24, Ex. 22.

**Response**: Admitted.

39.     Plaintiff first learned of Sterling's publication of *Trivia Hangman* in or around "late 2011". Ederer Decl. ¶ 7, Ex. 5 [Supplemental Response to [Defendants'] Request for the Production of Documents] at Response to Request No. 51.

**Response**: Admitted, but immmaterial.

40.     Plaintiff claims that the cover artwork and the interior artwork and game presentation in *Trivia Hangman*, which interior artwork and game presentation was created by Sterling, infringes his New Zealand Book. Ederer Decl. ¶ 6, Ex. 4 at 19:21-25, 20:14-18, 23:16-23.

**Response**: Denies to the extent the interior artwork and game presentation was created by Sterling - discussed in detail in Response to paragraph 24 - and otherwise admitted.

41.     On or about August 24, 2010, Sterling entered into a publishing agreement with Defendant Patrick Blindauer for a Work (defined as "92 puzzles and answers to comprise a 96-page book") tentatively entitled *Hollywood Hangman*. Ederer Decl. ¶ 25, Ex. 23 [Sterling/Blindauer publishing agreement].

**Response**: Admitted.

42.     On or about November 1, 2011, Sterling published *Hollywood Hangman* as part of its "Scratch & Solve" Hangman series.  Ederer Decl. ¶ 30, Ex. 28 at DEFS000145-46.

**Response**: Admitted.

43.     Images of the cover artwork, and the interior artwork and gameboard pages of *Hollywood Hangman*, are depicted below:



Ederer Decl. ¶ 26, Ex. 24.

**Response**: Admitted.

44.     Plaintiff first learned of Sterling's publication of *Hollywood Hangman* in or around "early 2012".  Ederer Decl. ¶ 7, Ex. 5 [Supplemental Response to [Defendants'] Request for the Production of Documents] at Response to Request No. 51.

**Response**: Admitted, but immaterial.

45.     Plaintiff claims that the cover artwork and the interior artwork and game presentation in *Hollywood Hangman*, which interior artwork and game presentation was created by Sterling, infringes his New Zealand Book.  Ederer Decl. ¶ 6, Ex. 4 at 19:21-25, 20:14-18, 23:16-23.

**Response**: Denies to the extent the interior artwork and game presentation was created by Sterling - as discussed in detail in Response to paragraph 24 - and otherwise admitted.

46.     On or about February 5, 2013, Sterling published three (3) additional books in its "Scratch & Solve" Hangman series under the pseudonym "Jack Ketch" — *Science Hangman*, *Geography Hangman*, and *Spelling Bee Hangman*.  Ederer Decl. ¶ 30, Ex. 28 at DEFS000153-58; Ederer Decl. ¶ 27, Ex. 25; Ederer Decl. ¶ 28, Ex. 26; Ederer Decl. ¶ 29, Ex. 27.

**Response**: Denies to the extent the "Scratch & Solve" Hangman series belongs, in its entirety, to Sterling, and otherwise, admitted.

47.     Images of the cover artwork, and the interior artwork and gameboard pages of *Science Hangman*, are depicted below:



Ederer Decl. ¶ 27, Ex. 25.

**Response**: Admitted.

48.     Images of the cover artwork, and the interior artwork and gameboard pages of *Geography Hangman*, are depicted below:



Ederer Decl. ¶ 28, Ex. 26.

**Response**: Admitted.

49.     Images of the cover artwork, and the interior artwork and gameboard pages of

*Spelling Bee Hangman*, are depicted below:



Ederer Decl. ¶ 29, Ex. 27.

**Response**: Admitted.

50.     Plaintiff claims that the cover artwork and the interior artwork and game

presentation in *Science Hangman*, *Geography Hangman*, and *Spelling Bee Hangman*, which

interior artwork and game presentation was created by Sterling, each infringes his New Zealand

Book (*Trivia Hangman*, *Hollywood Hangman*, *Science Hangman*, *Geography Hangman*, and

*Spelling Bee Hangman* are hereinafter referred to as the "Accused Books"). Ederer Decl. ¶ 6, Ex. 4 at 19:21-25, 20:14-18, 23:16-23.

> **Response**: Denies to the extent the interior artwork and game presentation was created by
>
> Sterling - as discussed in detail in Response to paragraph 24 - and otherwise admitted.

## V. PLAINTIFF'S CLAIMS IN THIS ACTION

51. Plaintiff testified during his deposition: "I'm making a claim because Sterling basically stole my idea" for a single-player scratch-off hangman game. Ederer Decl. ¶ 6, Ex. 4 at 168:15-16.

> **Response**: Admitted that this was Plaintiff's testimony, but clarification is necessary to
>
> the extent that this statement portrays the Plaintiff as a legal expert capable of definitively
>
> reaching a legal conclusion, he is not, it is however undisputed that Defendants stole from
>
> Plainitff, but not just the idea, they stole all of his intellectual property including the
>
> copyright, trade dress, and goodwill associated with the works.

52. Plaintiff's Complaint does not allege a cause of action for patent infringement with respect to his "idea" for a single-player scratch-off Hangman game. Ederer Decl. ¶ 3, Ex. 1.

> **Response**: Admitted, immaterial. For clarification, again Plaintiff is not a lawyer or an
>
> intellectual property law expert at that, he used the word "idea" in the lay sense of the word and
>
> it should not be construed that an "idea" is all that was taken or infringed upon of his.

53. Plaintiff's copyright infringement claims are based exclusively on his purported unregistered New Zealand copyright in his New Zealand Book, which he seeks to enforce in the United States pursuant to international treaty. Ederer Decl. ¶ 6, Ex. 4 at 11:3-25; 17:17-20; 78:20-25.

> **Response**: Denied in its entirety. Plaintiff's copyright infringement claims are based on
>
> both the New Zealand copyright in the New Zealand work- enforceable in the U.S. under

the Berne Convention - and the U.S. registered copyrights in Plaintiff's U.S. "Scratch & Solve" series works.

54.     Although Plaintiff's Complaint asserts a cause of action for trade dress infringement in violation of 15 U.S.C. § 1125(a), Plaintiff's pleading does not articulate the elements of his purported trade dress.   Ederer Decl. ¶ 3, Ex. 1 [Complaint].

**Response**: admitted to the extent the Complaint asserts a cause of action for trade dress infringement in violation of 15 U.S.C. § 1125(a), denied however, as to the rest of the statement. The complaint specifically identifies the trade trades claim as the overall look and feel of the works that are associated by consumers with Plaintiff's authorship. Ederer Decl. ¶ 3, Ex. 1 [Complaint].

55.     Plaintiff's trade dress claim is premised on an undefined trade dress that purportedly appears in his New Zealand Book.  Ederer Decl. ¶ 6, Ex. 4 at 166:21-168:2.

**Response**: Denies, Plaintiff's trade dress claim is based on the interior layout and overall feel of his New Zealand Book, which was adopted with slight modifications by the Scratch & Solve series books, and that consumers specifically identify as authored by Plaintiff. *See* Janay Decl. ¶ 15, Ex. M at WARD000012 ("In his clever Scratch & Solve Hangman, Mike Ward offers a neat twist on an old favorite.")  Plaintiff's claims are based on all of the elements that identify him as the source of the Scratch & Solve Hangman series including but not limited to the appearance that the books of his authorship had on both the cover and the interior, the instructions and gameplay experience, as well as a myriad of other characteristics that made these books so unique and created their mass appeal.

56.     On or about January 6, 2014, Defendants served Plaintiff with Defendants' First

Set of Interrogatories Directed to Plaintiff Michael Ward d/b/a Brainteaser Publications, which,

among other things, called upon Plaintiff to:

> Identify all Persons with knowledge of any purported trade dress which,
> You contend, Defendants have infringed, including, without limitation, the
> specific elements thereof.

Ederer Decl. ¶ 8, Ex. 6 at Interrogatory No. 5.

   **Response**: Admitted.

57.     On or about February 25, 2014, Plaintiff served its Response[s] to Defendants

First Set of Interrogatories, which, among other things, provided the following verified response

to Defendants' Interrogatory No. 5:

> Answer:  Defendant [sic] objects to this interrogatory, the trade dress
> encompasses the characteristics of the visual appearance of the works,
> including but not limited to the design, shape, packaging, and product
> configuration.  As a result, any consumer who views the works could be
> said to have "knowledge of [the] trade dress" at issue in this case.  The
> elements consist of each and every design element of the works and the
> combination thereof that serves as a source identifier of the works for
> which Plaintiff has alleged Defendant has infringed.

 Ederer Decl. ¶ 9, Ex. 7 at Response to Interrogatory No. 5.

   **Response**: Admitted.

58.     Plaintiff provided the following testimony concerning his purported trade dress

during his March 20, 2014 deposition:

> Q.  What are the elements of your trade dress?

> A.  The elements of the trade dress is the format.

> Q.  The format of what?

> A.  Of the scratch style Hangman game.

Ederer Decl. ¶ 6, Ex. 4 at 158:5-11.

**Response**: Admitted that this was Plaintiff's testimony, but clarification is necessary to the extent that this statement portrays the Plaintiff as a legal expert capable of definitively reaching a legal conclusion or some expert in intellectual property, he is not.

59.     After being shown his verified response to Interrogatory No. 5 (*see* ¶ 57 above), Plaintiff provided the following additional testimony concerning his purported trade dress:

> Q. Anything more significant than that in terms of the significant elements of your trade dress or does [your response to Interrogatory No. 5] say it all?
>
> A. In so much as if anybody buys a product, they generally buy it because they know their product. The Hangman game has been around hundreds of years, it has even preceded crosswords, so once a person sees the name Hangman on the book, it would pique their interest, they would open the book, it would pique their interest, they would open the book, see it was a sole playing game that incorporated scratch-off ink and that would entice them to purchase the book.
>
> Q. So those, what you just said, are the elements of the trade dress that you claim my clients have infringed; correct?
>
> A. That and the fact that I supplied your client with illustrations that were copyrighted and [Sterling] produced books based on illustrations that I supplied.
>
> Q. Right. But I'm trying to focus on what are the elements of your trade dress and is this an accurate statement in your mind of the elements of your trade dress?
>
> A. Yes, it is. The look and the feel of the whole book.
>
> Q. Anything more specific than that?
>
> A. Well, if you compare both books, you can see the trade dress is obvious.

Ederer Decl. ¶ 6, Ex. 4 at 165:15-166:20.

**Response**: Admitted that this was Plaintiff's testimony, but clarification is necessary to the extent that this statement portrays the Plaintiff as a legal expert capable of definitively reaching a legal conclusion or that he is an expert in intellectual property law, he is not.

60.     According to Plaintiff, Plaintiff's New Zealand book may not have ever been offered for sale and/or sold in the United States. Ederer Decl. ¶ 6, Ex. 4 at 19:10-19.

**Response**: Admitted.

61.     Plaintiff has no evidence of any actual consumer confusion between his purported New Zealand Book trade dress and any of the Accused Books.  Ederer Decl. ¶ 6, Ex. 4 at 194:6-16.

>  **Response**: Admitted, but to clarify, there may not be direct evidence of actual consumer
>
>  confusion between his purported New Zealand Book trade dress and any of the Accused
>
>  Books, as it is difficult to obtain, there is evidence of customers identifying the Scratch &
>
>  Solve series puzzle books with Plaintiff's authorship. *See* Janay Decl. ¶ 15, Ex. M at
>
>  WARD000012 ("In his clever Scratch & Solve Hangman, Mike Ward offers a neat twist
>
>  on an old favorite.").  The above notwithstanding, Ward not only owns the trade dress to
>
>  the New Zealand works, but he has acquired ownership over the trade dress of the
>
>  Scratch & Solve works published by Sterling.[1] by virtue of the consumer association of
>
>  the works with him and his .

## VI.     PLAINTIFF'S LICENSING THEORY

62.     Plaintiff claims that the interior artwork and gameboard presentation that Sterling designed for its "Scratch & Solve" Hangman series was created under "license" from Plaintiff. Ederer Decl. ¶ 6, Ex. 4 at 23:2-4 ("Sterling was to publish these books or these series of books in

---

[1]  It is undisputed that Plaintiff notified the Sterling of his intention to pursue an alleged infringer Andrews McMeel Publishing for their publishing of an allegedly  infringing work (Janay Decl. ¶ 10 Ex. H); Indeed, Plaintiff requested Defendant Sterling to participate in the enjoining efforts (Id.) which included a lawsuit in which plaintiff alleged *inter alia* that Andrews McMeel Publishing  "willful(ly) and blatant(ly) (engaged in) acts of unfair competition and infringement of (Ward's) highly successful series of "Scratch & Solve Hangman" books published by Sterling Publishing Co., Inc. [internal quotations omitted] a subsidiary of Barnes & Noble  [internal quotations omitted], for which Brainteaser owns several federally registered copyrights and widely recognized trade dress in the books' unique design." (*quoting* Ward v. Andrews McMeel Pub., LLC, 963 F. Supp. 2d 222, 233-34 (S.D.N.Y. 2013) quoting at ¶ 1. of the Complaint in that action.  Resultantly Sterling abandoned or assigned right title and interest in the trade dress to Ward.

the U.S. under license."); *id.* at 37:24-38:5 (claiming that his Publishing Agreements with Sterling "provide[] for a license to Sterling to extend the series that [Plaintiff was] previously publishing in New Zealand").

    **Response**: Admitted that this was Plaintiff's testimony, and otherwise denies in its entirety as clarified below.

    First, Ward denies that the interior artwork and game presentation was created soley by Sterling, as discussed in detail in Response to paragraph 24. Second, clarification is necessary to the extent that this statement portrays the Plaintiff as a legal expert capable of definitively reaching a legal conclusion. Plaintiff's allegation is that the 2004 Agreement and its progeny are in fact license agreements, whereby plaintiff permitted Sterling to create a derivative work that would remain under his proprietary ownership, have him as Author, and for which he would receive royalty payments when the works were published and sold. *See* Ederer Decl. ¶ 13, Ex. 11 at Preamble.

63.    Plaintiff admits that the interior artwork and game-board presentation that Sterling created for its "Scratch & Solve" Hangman series is different in appearance from that which appears in Plaintiff's New Zealand Book. Ederer Decl. ¶ 6, Ex. 4 at 23:16-23, 67:4-68:2, 70:19-71:4.

    **Response**: Denied, Defendants attorney grossly mischaracterizes Plaintiff's statements during his deposition as admissions, a simple reading the portions of the transcript cited shows that Plaintiff granted to Sterling the right to produce a derivative work to meet the consumer demands of the U.S. market, however owned that derivative work and never relinquished title to it.

64.    When asked at his deposition to indicate where the word "license" appeared in the

2004 Agreement, Plaintiff testified as follows:

> Q. Can you show me where the word license appears in [the 2004 Agreement]?
>
> A. The word license does not appear in this document because it is in association with a previous arrangement that Sterling had with me.

Ederer Decl. ¶ 6, Ex. 4 at 68:23-69:4.

**Response**: Admitted, but clarification is necessary to the extent that this statement portrays the Plaintiff as a legal expert capable of definitively reaching a legal conclusion. Further, the fact that the word "license" does not appear in the 2004 Agreement and its progeny does not mean that the agreements are not in fact licenses. As stated in Response 20 above, the preamble to these agreements lists Ward as the proprietor and author in the Works (see above at ¶ 20), which are defined as "Scratch Hangman, a series from which six books are to be published initially under the terms of this Agreement with an option for two additional books every six months, ('the Work')" (*See* Ederer Decl. ¶ 13 , Ex. 11). As a result, in Ward who permitted Sterling to create a derivative work in his New Zealand work under the moniker "Scratch Hangman".

65.     When further pressed to identify any communications relating to this purported "previous arrangement" with Sterling, Plaintiff could only point to the following passage from his June 2004 letter to Sterling (months prior to the parties' first Publishing Agreement):

> I left the design of the cover up to Sterling to provide their own design flair, as they would be familiar with their own markets, however assistance in this area can be provided if requested at the design stage.

Ederer Decl. ¶ 11, Ex. 9.

**Response**:  Admitted, but to clarify, the June 2004 letter was all Plaintiff was able to locate under the time constraints and pressure of a deposition, Plaintiff was in fact

looking for the terms of the offer contained in the June 9, 2004 email from Peter Gordon contained in the record at Janay Decl. ¶5, Ex. C.

66.     During his deposition, Plaintiff produced a two-page handwritten document entitled "'Scratch-Hangman' Copyright in a Nutshell", which outlined Plaintiff's new theory of copyright ownership and infringement, and included the following statement:

> …Sterling was offered to continue the existing 'Scratch-Hangman' series under license in the U.S.

Ederer Decl. ¶ 32, Ex. 30; Ederer Decl. ¶ 6, Ex. 4 at 63:3-9.

**Response**: Admitted, but to clarify, the above described "new theory" was a part of Plaintiff's legal theory throughout the full duration of this action.  To further clarify, Ward is not a lawyer nor is he an expert in intellectual property law, to the extent that Defendants seek to introduce this as evidence of a legal standard it is inadmissible.

## VII.     THIRD PARTY SINGLE-PLAYER HANGMAN GAMES

67.     In 1986, nearly twenty (20) years before Plaintiff first contacted Sterling, Lee Publications published a book entitled *Yes & Know Invisible Ink Game & Quiz Book*, which included a single-player Hangman game that used an invisible ink pen, as opposed to scratch-off letters, to reveal hidden letters.   Ederer Decl. ¶ 33, Ex. 31.

**Response**: Admitted, but immaterial.

68.     An image of the Hangman artwork and gameboard presentation appearing in the *Yes & Know Invisible Ink Game & Quiz Book* publication appears below:



Ederer Decl. ¶ 33, Ex. 31 at DEFS000176.

**Response**: Admitted, but immaterial.

69.     Thirteen years later, *World of Puzzles* magazine published a single-player Hangman game ("Solitaire Hangman") in its May 1999 edition (five years before Plaintiff first contacted Sterling in 2004 regarding his "idea" for a single-player Hangman game), which featured a hanging man on a gallows, as depicted below:

## Solitaire Hangman ★☆

As in the two-player version of Hangman, the object of this solitaire challenge is to guess the identity of a word before being "hanged."

To begin, choose any letter of the alphabet that you think might be in word I below. Suppose you pick E. Go to the Letter Chart on the facing page and find the number listed in row E of Column I (because you are working on word I). The number is 23; you now look in box number 23 in the Position Chart (to the right of the Letter Chart) and find the number 6. This means the letter E occurs in the sixth position (and nowhere else) in word I. If a letter occurs more than once in a word, the Position Chart will show all its locations.

If you find from the Position Chart that a letter appears in position 0, then that letter does not appear in the word. As a penalty for an incorrect guess, you must draw part of a stick figure below the scaffold beside the word blanks. On your first incorrect guess, draw the head; on the second, the body; and on the next four, the arms and legs. If you complete the figure (that is, make six incorrect guesses) before identifying the word, you are "hanged."

If you can identify 8 of the 12 words before being hanged, either you're psychic or you have a remarkable gift for words.

ANSWERS, PAGE 59

### Words To Be Guessed

I.   1 2 3 4 5 6 7 8
II.  1 2 3 4 5 6 7
III. 1 2 3 4 5 6 7 8 9
IV.  1 2 3 4 5 6 7 8
V.   1 2 3 4 5 6 7 8 9
VI.  1 2 3 4 5 6 7
VII. 1 2 3 4 5 6 7
VIII.1 2 3 4 5 6 7 8
IX.  1 2 3 4 5 6 7 8
X.   1 2 3 4 5 6 7 8
XI.  1 2 3 4 5 6 7 8 9
XII. 1 2 3 4 5 6 7 8

### Letters Missed

Ederer Decl. ¶ 34, Ex. 32 at DEFS002795.

**Response**: Admitted, but immaterial.

70.    A Google Image search of the phrase "hangman game" returned the following Hangman figures, among others:



Ederer Decl. ¶ 35, Ex. 33.

    **Response**: Admitted, but immaterial.

71.    The Wikipedia entry for "Hangman (game)" provides an example of the classic word game using the following image:



Ederer Decl. ¶ 36, Ex. 34.

    **Response**: Admitted, but immaterial.

72.    Plaintiff did not complain to Sterling about the alleged infringement by the Accused Books until April 2013. Ederer Decl. ¶ 6, Ex. 4 at 116:7-117:24.

    **Response**: Admitted, but immaterial.

73.    The only copyrights ever registered in Plaintiff's name merely cover the "text" Plaintiff contributed to those books. Ederer Decl. ¶ 13, Ex. 11; Ederer Decl. ¶ 22, Ex. 20.

    **Response**: Denied. It is undisputed that all Publishing Agreements entered into by Plaintiff and Sterling provide that "The publisher shall copyright the Work in the United States in the name of the Author." *See* Ederer Decl. ¶ 13, Ex. 11 ¶ 2; Ederer Decl. ¶ 20, Ex. 18 ¶ 2; Ederer Decl. ¶ 19, Ex. 17 ¶ 2. Next, as discussed above herein [CITE] there was no limitation on the ownership rights contained in the publishing agreements to "text" or "gamewords" only. Second, copyright office guidelines provides that copyright applications should be made in the class most appropriate and if the work contains more than one class (i.e. literary or pictorial) it should be applied for in the class that predominates. Obviously in this instance text is the predominant characteristic of the

work. Ergo the recording of the copyrights as "Entire Text" in no way limits the

protection afforded to Ward to "text only," *See* 37 U.S.C. § 202.3(2)(ii)(C).

## PLAINTIFF'S COUNTERSTATEMENT OF MATERIAL FACTS
## PURSUANT TO LOCAL RULE 56.1(b)
## IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**I.     PARTIES**

1.      Plaintiff, MICHAEL WARD d/b/a Brainteaser Publication (hereinafter "Ward"),

is a famous, distinguished and innovative book author, based in New Zealand, who created and

developed a highly successful and unique series of puzzle books colloquially known as the

"Scratch-Hangman" series. Ederer Decl. ¶ 3, Ex. 1, [Complaint] ¶ 1.

2.      Defendant, BARNES & NOBLE, INC. (hereinafter "B&N"), is the largest book

retailer in the United States. *See* Defendants' L.R. 56.1 Statement of Undisputed Facts ("SUF"),

¶ 1; Ederer Decl. ¶ 3, Ex. 1[Complaint] ¶ 9.

3.      Defendant, STERLING PUBLISHING COMPANY, INC. (hereinafter

"Sterling"), is a publishing company in the United States incorporated in Delaware with

headquarters located at 387 Park Avenue South, New York, NY 10016. Sterling was responsible

for the sale and distribution of books produced based on Ward's "Scratch-Hangman" series in

the United States. B&N acquired Sterling in 2003. *See* SUF ¶ 2; Ederer Decl. ¶ 3, Ex. 1

[Complaint] ¶¶ 9-10; Ederer Decl. ¶ 10, Ex. 8 [Welcome to Sterling Publishing] .

4.      Defendant, FRANCIS HEANEY (hereinafter "Heaney"), is an individual resident

of the State New York and an employee of Sterling. Heaney is the author of a book published by

Sterling in 2010, after Sterling's relationship with Ward was terminated, as part of its "Scratch &

Solve" series, entitled *Trivia Hangman*. *See* SUF ¶ 3; Ederer Decl. ¶ 3, Ex. 1 [Complaint] ¶¶ 4,

11, 14; Ederer Decl. ¶ 23, Ex. 21 [Heaney's publishing agreement with Sterling]; Janay Decl. ¶ 14, Ex. L at WARD000005; Janay Decl. ¶ 27, Ex. Y at WARD000084.

5.     Defendant, PATRICK BLINDAUER (hereinafter "Blindauer"), is an individual resident of the State of New York and an employee of Sterling. Blindauer is the author of a book published by Sterling in 2011, after Sterling's relationship with Ward was terminated, as part of its "Scratch & Solve" series, entitled *Hollywood Hangman*. *See* SUF ¶ 4; Ederer Decl. ¶ 3, Ex. 1 [Complaint] ¶¶ 5, 11, 14; Ederer Decl. ¶ 25, Ex. 23 [Blindauer's publishing agreement with Sterling]; Janay Decl. ¶ 14, Ex. L at WARD000006; Janay Decl. ¶ 19, Ex. Q at WARD000084.

## II.     BACKGROUND

6.     In the early 1990's, Plaintiff Ward, a famous and distinguished book author and publisher, created and developed a highly successful series of puzzle books colloquially known as the "Scratch-Hangman" Series. Ederer Decl. ¶ 3, Ex. 1 [Complaint] ¶¶ 12.

7.     In February 1994, Plaintiff Ward filed a provisional patent application in the New Zealand Patent Office for an invention for a game entitled "Scratch Hangman," which he described as follows:



DESCRIPTION OF THE GAME

Within the circles are either a number, or a cross.
When a number appears, the letter is transferred
to the corresponding number below, until a complete
word (or phrase) is spelt.
When a cross appears, the player will start drawing
up the hangman grid.
The object of the game is to correctly spell the
answer before the hangman grid is completed.
The answer to the puzzle shown above is :- "BALL
POINT PEN".

SURFACE TREATMENT TO THE PAPER

The circles above the letters of the alphabet will
have a screenprinted removable opaque ink treat-
ment applied to them, which is able to be removed by
a mechanical method of scratching, such as the
edge of a coin.
                                        M.D.Ward.

Ederer Decl. ¶ 4, Ex. 2; SUF ¶ 6.

8.      Plaintiff Ward only obtained provisional patent protection as opposed to

registering a complete specification of the patent because he was advised by his New Zealand

patent attorney that a provisional patent would establish a priority date and further advised that

New Zealand copyright law provided worldwide protection for his work that was above and

beyond the protections provided by a final patent. Janay Decl. ¶ 28, Ex. Z Plaintiff Deposition at

80:10-19, 84:20-23, 86:24-*, and 87:7; Janay Decl.¶ 31, Ex. CC.

9.      In 2000, years before Sterling received any contractual rights to publish and/or

distribute Ward's "Scratch Hangman" Series, Plaintiff published a single-player scratch-off

Hangman book in New Zealand, entitled *Scratch Hangman Puzzle Book* (the "New Zealand

Book").  Ex. 4 at 18:9-19:19, Ederer Decl. ¶ 5, Ex. 3 [Defendants' Deposition] at WARD000039; Ederer Decl. ¶ 6; SUF ¶ 9 (Images of the cover artwork for the New Zealand Book, as well as, the interior artwork and gameboard presentation thereof.).

10.     Ward is the sole owner of a copyright in his New Zealand Book under New Zealand law.  Ederer Decl. ¶ 6, Ex. 4 at 80:10-19; Janay Decl. ¶ 31, Ex. CC ("New Zealand -- in New Zealand, copyright is an automatic and registered right that comes into existence every time an original work is created, published or performed. So basically, it does not have to be registered in New Zealand to have copyright.").

11.     Ward's New Zealand copyright of the New Zealand Book affords Ward worldwide protection, including the United States, who is a party to the Berne Convention and lack of prior  registration in the U.S. does not prevent an author or inventor from availing himself to U.S. courts to institute a claim of copyright infringement . Janay Decl. ¶ 31, Ex. CC, Janay Decl. ¶ 32, Ex. DD.

**III.     PLAINTIFF WARD'S INITIAL APPROACH OF STERLING FOR THE PURPOSE OF PUBLISHING HIS BOOK SERIES IN THE UNITED STATES.**

12.     In the summer of 2004, Ward contacted Sterling to see if Sterling had an interest in publishing Ward's single-player scratch-off Hangman series in the United States. SUF ¶ 13; Ederer Decl. ¶ 11, Ex. 9 [June 11, 2004 letter from Plaintiff to Sterling]; Ederer Decl. ¶ 6, Ex. 4 at 47:24-49:8; Janay Decl. ¶ 4, Ex. B at DEFS000234 - 248; Janay Decl. ¶ 5, Ex. C.

13.     At that time, Plaintiff provided Sterling with a photocopy of the following interior artwork and gameboard presentation from his New Zealand Book as a way of providing Sterling with a general understanding of the nature, style and uniqueness of the work:



SUF ¶ 14; Ederer Decl. ¶ 11, Ex. 9 [Defendants' Deposition Ex. 6]. (artwork at WARD000041).

14.     At the same time, Plaintiff informed Sterling that he held intellectual property rights, including copyrights, to the style and content of the New Zealand Book. Ederer Decl. ¶ 11, Ex. 9 [June 11, 2004 letter from Plaintiff to Sterling] ("I hold the world rights to this style of publication through patent & copyright protection").

15.     After learning of the existence of intellectual property rights, Sterling's puzzles and games editor inquired as to the nature and geographic scope of Plaintiff's copyright protection. Plaintiff in turn, based on his narrow and limited knowledge of copyright protection and to his best ability, responded:

> Concerning protection, as I understand it copyright - which surpasses patent protection - is applicable world wide [sic], or at least to all the countries that have signed the World Trade Organization Treaty….

Ederer Decl. ¶ 12, Ex. 10 [July 7, 2004 email chain between Plaintiff and Sterling] at DEFS000237.

**IV.     WARD PROVIDED STERLING WITH PUBLISHING RIGHTS TO THE WORK WITHOUT GRANTING OWNERSHIP RIGHTS OR OR AUTHORSHIP RIGHTS TO STERLING.**

16.     On October 14, 2004, Ward and Defendant Sterling entered into their first Publishing Agreement (the "2004 Agreement"). SUF ¶ 19; Ederer Decl. ¶ 13, Ex. 11 at DEFS000223-227.

17.     The 2004 Agreement provided, among other things, for Sterling's publication of six (6) single-player scratch-off Hangman books created based on Plaintiff Ward's book series. Ederer Decl. ¶ 13, Ex. 11 at Preamble.

18.     The 2004 Agreement further granted Sterling a perpetual option to publish two (2) additional single-player scratch-off Hangman books every six (6) months. SUF ¶ 21; Ederer Decl. ¶ 13, Ex. 11 at Preamble at DEFS000223.

19.     Importantly, the 2004 Agreement, drafted by Sterling, provided:

> The publisher shall copyright the Work in the United States in the name of the Author.

Ederer Decl. ¶ 13, Ex. 11 ¶ 2 (DEFS000223).

20.     The 2004 Agreement also provided that where Sterling "supplie[d] material for the [books] (such as illustrations)", Sterling had the *option* to "copyright such material in its own name" Ederer Decl. ¶ 13, Ex. 11 ¶ 2 (DEFS000223) notably, Sterling never exercised this option nor did they ever pursue a claim of infringement when they were notified by Ward regarding the AMP matter. (See above at Response to 61, Footnote 1)

21.     The 2004 Agreement also contained a merger clause. SUF ¶ 23; Ederer Decl. ¶ 13, Ex. 11 ¶ 18 at DEFS000227.

22.     On February 16, 2005, after the parties had entered into the 2004 Agreement, Sterling sent Plaintiff proofs of the works for review and approval, these titles became the first four (4) books in Sterling's "Scratch & Solve" Hangman series. The interior artwork and gameboard presentation for each of these books, developed by Sterling based on the game

36

presentation, is depicted above at SUF ¶ 24. *See* SUF ¶ 24; Ederer Decl. ¶ 14, Ex. 12 at

DEFS002305, DEFS002357.

23.     After reviewing the above artwork and presentation, Plaintiff Ward became

concerned that there were modifications made to the game, and specifically, as to the number of

chances a player would get before being hanged:

> I have received the proofs of the "Hangman" & "Tough Hangman"
> titles…. I see that the whole concept of the game has been changed; now
> players only have 5 chances before being hung, instead of the original 10.

SUF ¶ 25; Ederer Decl. ¶ 15, Ex. 13 at DEFS000387.

24.     In response to Plaintiff's concern with the modification, Sterling's Senior

Acquisition Editor, Peter Gordon, explained that the  modifications were necessary simply to

conform the game to American tradition:

> Were [sic] in America, the traditional way is you get six wrong guesses
> (head, torso, left arm, right arm, left leg, right leg) before you are
> hanged….Solvers can give themselves more turns as they want, but we
> will stick with the traditional allotment of six wrong guesses in the
> book.

Ederer Decl. ¶ 13, Ex. 13 at DEFS00387.

25.     On September 1, 2005, after Plaintiff agreed to all stylistic modifications, Sterling

published its first single-player scratch-off Hangman book in its "Scratch & Solve" Hangman

series.  This book was entitled *Scratch & Solve Hangman #1*.  Ederer Decl. ¶ 30, Ex. 28 at

DEFS000076.  Plaintiff's name appeared on the cover of the book.  SUF ¶ 26 (Images of the

cover artwork, and interior artwork and gameboard pages of *Scratch & Solve Hangman #1*);

Ederer Decl. ¶ 16, Ex. 14.

26.     The publishing agreements obligated Sterling to obtain copyright registrations for

the Works in the authors name, however Sterling could elect to register materials they supplied

or contributed to the Work (such as illustrations) in their own name. Ederer Decl. ¶ 13, Ex. 11; Ederer Decl. ¶ 22, Ex. 20.

27. The Works are a unique tangible expression of an original idea of a one-player hangman game, they are a puzzle book with a scratch-off element, with the drawing of a hangman on one side and the answers on the other; the series involved various difficulty levels for separate titles; the Work was first introduced to Sterling by Plaintiff, Sterling however obtained a registration for a trademark ownership over "Scratch & Solve" in its own name. Ederer Decl. ¶ 31, Ex. 29 at DEFS000210.

28. Although the publishing agreements provided the option for Sterling to register copyrights in their own name for materials they supplied however they did not do so and they did not pursue potential infringers.

29. After a successful sales campaign of the first issues of Plaintiff's Hangman books, Plaintiff and Sterling entered into several extensions to the 2004 Agreement covering additional "Scratch & Solve" Hangman books to be published under Plaintiff's name. Ederer Decl. ¶ 18, Ex. 16 at DEFS002685-2694.

30. On or about April 12, 2012, Plaintiff and Sterling entered into a new contractual agreement (the "2012 Agreement") giving Sterling Publishing rights to two new books to be published under Plaintiff's name as part of the "Scratch & Solve" Hangman series — *Hangman In The Moon* and *Tough Hangman In The Moon*. Ederer Decl. ¶ 19, Ex. 17 at DES002695-2700.

31. In line with the uncontested ownership and authorship of the Hangman Series by Plaintiff, the preamble to the 2012 Agreement, drafted by Sterling, provides:

> This agreement...is made and entered into by and between STERLING PUBLISHING CO., INC. ("Publisher")...and MICHAEL WARD...the author of two (2) works (as further described below) tentatively entitled: "HANGMAN IN THE MOON" ("Book #1") and "TOUGH HANGMAN

IN THE MOON" ("Book #2")....

Ederer Decl. ¶ 19, Ex. 17 at DEFS002695.

32.     In light of the well-known fact that Plaintiff is the rightful owner and author of the

Hangman Series, the first clause of the 2012 Agreement, drafted by Sterling, provides for the

assignment and grant of Plaintiff's ownership rights to Sterling:

> Author grants and assigns to Publisher, during the full term of copyright
> and any renewal thereof, the sole and exclusive right to produce,
> manufacture, print, publish, distribute, market and sell each Work….

Ederer Decl. ¶ 19, Ex. 17 at DEFS002695 [2012 Agreement, Clause (1)(a)].

33.     Sterling drafted the 2012 Agreement with only a brief description of the books to

be published in terms of words and pages, without any limitations or specification as to

ownership rights:

> Book #1 shall be described as follows: 100 new and original puzzle words
> to fill 96 pages. Book #2 shall be described as follows: 100 new and
> original puzzle words to fill 96 pages.

Ederer Decl. ¶ 19, Ex. 17 ¶¶ 1 at DEFS002695 [2012 Agreement, Clause (1)(2)].

34.     On or about January 22, 2013, Plaintiff and Sterling entered into a new Publishing

Agreement (the "2013 Agreement") for two new books to be authored by Plaintiff and published

under his name as part of the "Scratch & Solve" Hangman series — *Scratch & Solve Hangman

Of Leisure* and *Scratch & Solve Tough Hangman Of Leisure*.  Ederer Decl. ¶ 20, Ex. 18 at

DEFS002701-2706.

35.     Similar to the format of the 2012 Agreement, the 2013 Agreement, drafted by

Sterling, in its preamble attributes authorship in the two books to Plaintiff:

> This agreement...is made and entered into by and between STERLING
> PUBLISHING CO., INC. ("Publisher")...and MICHAEL WARD...the
> author of two (2) works (as further described below) tentatively entitled:
> "SCRATCH & SOLVE HANGMAN OF LEISURE" ("Book #1") and

> "SCRATCH & SOLVE TOUGH HANGMAN OF LEISURE" ("Book #2")....

Ederer Decl. ¶ 20, Ex. 18 [2013 Agreement preamble] at DEFS002701.

36. In addition, the first clause of the 2013 Agreement mirrors that of the 2012 Agreement in expressly providing for the assignment and grant of Plaintiff's ownership and authorship rights in the books to Sterling:

> Author grants and assigns to Publisher, during the full term of copyright and any renewal thereof, the sole and exclusive right to produce, manufacture, print, publish, distribute, market and sell each Work....

Ederer Decl. ¶ 20, Ex. 18 ¶¶ 1 at DEFS002701.

37. Furthermore, without placing any limitation on the contributions of Plaintiff Ward, Sterling drafted the book descriptions in the 2013 Agreement as follows:

> Book #1 shall be described as follows: sufficient list of words and phrases to fill 96 pages. Book #2 shall be described as follows: sufficient list of words and phrases to fill 96 pages.
>
> Ederer Decl. ¶ 20, Ex. 18 ¶¶ 1 at DEFS002701 [2013 Agreement, Clause (1)(b)].

## V. WORKS PUBLISHED BY STERLING BASED ON PLAINTIFF'S SCRATCH-HANGMAN SERIES WITHOUT PLAINTIFF'S AUTHORIZATION.

38. On or about May 28, 2009, Defendant Sterling, without notifying plaintiff, entered into a publishing agreement with Defendant Francis Heaney for a Work tentatively entitled *Trivia Hangman*. Ederer Decl. ¶ 23, Ex. 21 [Sterling/Heaney publishing agreement].

39. On or about October 5, 2010, Defendant Sterling published *Trivia Hangman* as part of the "Scratch & Solve" Hangman series, with an identical gameplay, interior elements, use of the scratch-off feature to play the hangman game, and countless other similarities to the works Authored by Plaintiff Ward all done without his knowledge or consent. ¶ 30, Ex. 28 at

DEFS000150-51; SUF ¶ 38 (Images of the cover artwork and the interior artwork of *Trivia Hangman*).

40.    Plaintiff first learned of Sterling's publication of *Trivia Hangman* in or around "late 2011". Ederer Decl. ¶ 7, Ex. 5 [Supplemental Response to [Defendants'] Request for the Production of Documents] at Response to Request No. 51.

41.    The cover artwork, interior artwork, and game presentation, as well as, the concepts, depictions and content, reproduced in *Trivia Hangman* contain identical elements and are substantially similar to both Plaintiff's New Zealand work and the U.S. series that he is the author and proprietor of. Ederer Decl. ¶ 6, Ex. 4 at 19:21-25, 20:14-18, 23:16-23.

42.    On or about November 1, 2011, Sterling published *Hollywood Hangman* as part of the "Scratch & Solve" Hangman series without consulting with Plaintiff Ward or providing for a profit sharing structure. Ederer Decl. ¶ 30, Ex. 28 at DEFS000145-46; Janay Decl. ¶ 14, Ex. L at WARD000006; SUF ¶ 43 ( Images of the cover artwork, and the interior artwork and gameboard pages of *Hollywood Hangman*).

43.    Plaintiff first learned of Sterling's publication of *Hollywood Hangman* in or around "early 2012". Ederer Decl. ¶ 7, Ex. 5 [Supplemental Response to [Defendants'] Request for the Production of Documents] at Response to Request No. 51.

44.    The cover artwork, interior artwork, and game presentation, as well as, the concepts, depictions and content, reproduced in *Hollywood Hangman* contain identical elements and are substantially similar to Plaintiff's Scratch-Hangman series and the New Zealand Book, and as a result they infringe on Plaintiff's copyrights. Ederer Decl. ¶ 30, Ex. 28 at DEFS000145-146; Janay Decl. ¶ 14, Ex. L at WARD000006.

45.     On or about February 5, 2013, Sterling published three (3) additional books in the "Scratch & Solve" Hangman series under the pseudonym "Jack Ketch" — *Science Hangman*, *Geography Hangman*, and *Spelling Bee Hangman*, again, Sterling did not consult with or provide for profit sharing with Plaintiff Ward.  Ederer Decl. ¶ 30, Ex. 28 at DEFS000153-158; Ederer Decl. ¶ 27, Ex. 25; Ederer Decl. ¶ 28, Ex. 26; Ederer Decl. ¶ 29, Ex. 27, Janay Decl. ¶ 13, Ex. K at WARD000007-011; SUF ¶ 47 (Images of the cover artwork, and the interior artwork and gameboard pages of *Science Hangman*); SUF ¶ 48 (Images of the cover artwork, and the interior artwork and gameboard pages of *Geography Hangman*); SUF ¶ 49 (Images of the cover artwork, and the interior artwork and gameboard pages of *Spelling Bee Hangman*).

46.     The instructional text of at least one of the Works is identical to that of the instructional text of Plaintiff's Scratch & Solve Works:

| Playing instructions found in Plaintiff Mike Ward's *Tough Hangman* | Playing instructions found in Sterling's pseudonym author "Jack Ketch's" *Science Hangman* |
|---|---|
| **How To Play Hangman**<br>It's simple, easy, and fun. Your goal is to fill in the missing letters at the bottom of each puzzle before the body in the gallows is completed. Scratch the silver oval below one of the letters of the alphabet. (Note: it's best not to leave the book in the sun, which may cause the ovals to become dry and harder to scratch off.) If the letter you guessed is correct, a number--or more than one number--will tell you where to enter this letter in the word or words below. If you are wrong, you'll see a bold **X** to indicate that your guess is incorrect (you'll just have to imagine the game-show-style buzzer sound effect), in which case you must fill in one of the dotted lines on the body in the gallows. | **How To Play Hangman**<br>It's simple, easy, and fun. Your goal is to fill in the missing letters at the bottom of each puzzle before the body in the gallows is completed. Scratch the silver oval below one of the letters of the alphabet. (Note: it's best not to leave the book in the sun, which may cause the ovals to become dry and harder to scratch off.) If the letter you guessed is correct, a number--or more than one number--will tell you where to enter this letter in the word or words below. If you are wrong, you'll see a bold **X** to indicate that your guess is incorrect (you'll just have to imagine the game-show-style buzzer sound effect), in which case you must fill in one of the dotted lines on the body in the gallows. |

| There are six parts to the body--two arms, two legs, the torso, and the head. If you find all the letters in the complete word or phrase before you have to fill in six body parts, you win! If not …. <br><br> Good luck! | There are six parts to the body--two arms, two legs, the torso, and the head. If you find all the letters in the complete word or phrase before you have to fill in six body parts, you win! If not …. <br><br> Good luck! |
|---|---|

Janay Decl. ¶ 34, Ex. FF.

47.     The cover artwork, interior artwork, instructional text, and game presentation, as well as, the concepts, depictions and content, reproduced in *Science Hangman*, *Geography Hangman*, and *Spelling Bee Hangman,* contain identical elements and are substantially similar to Plaintiff's Scratch-Hangman series and the New Zealand Book, and, therefore infringe on Plaintiff's copyrights.  Ederer Decl. ¶ 5, Ex. 3 [Defendants' Deposition] at WARD000039; Janay Decl. ¶ 13, Ex. K at WARD000005-13.

**VI.     PLAINTIFF'S REACTION TO THE UNAUTHORIZED PUBLISHING OF THE BOOKS DESCRIBED ABOVE AND THE SUBSEQUENT RESPONSE BY STERLING.**

48.     After discovering the publication of the five books described above, Plaintiff complained to Sterling about publishing plaintiff's book series without plaintiff's agreement and without sharing profits with plaintiff. Janay Decl. ¶ 17 at WARD000060-065.

49.     In or around August 2013, Defendant Sterling offered Plaintiff to resume publishing Plaintiff's "Scratch & Solve" Hangman series (with Plaintiff as the author) with a new book, tentatively entitled *Scratch & Solve Underwater Hangman* (Also Scratch & Solve Prime Time). Janay Decl. ¶ 17**,** Ex. O at WARD000066-067.

50.     The draft 2013 Agreement, drafted by Sterling, for the publishing of *Underwater*

*Hangman* (hereinafter "Draft 2013 Agreement"), for the first time in the parties' long contractual

relationship, provided for any sort of limitation to Ward's expected contribution:

> The Work shall be described as follows: sufficient list of words and
> phrases to fill 96 pages. It is understood and agreed that Publisher shall
> provide materials and content for the Work.

Janay Decl. ¶ 11, Ex. I at DEFS002782-787 [Complaint, Ex. A].

51.     In addition to the Draft 2013 Agreement — and for the first time in the parties'

extensive contractual relationship — Sterling also drafted and requested Planitiff to sign a

RELEASE as a condition to entering into the Draft 2013 Agreement. Janay Decl. ¶ 11, Ex. I at

DEFS002782-2787.

52.     The RELEASE, among other things, contained the following language:

> **MICHAEL WARD** ("Releasor")....does hereby RELEASE and
> DISCHARGE, Sterling and its current and former officers,
> directors….from or in connection with, and hereby waives and/or settles,
> any and all actions, causes, suits debts, sums of money, accounts...in
> connection with the allegedly unauthorized publication and sale of
> *SCRATCH HANGMAN* and *SCRATCH & SOLVE HANGMAN* books by
> authors other than the Releasor, including without limitation claims for
> copyright infringement, trademark or trade dress infringement, unfair
> competition, damages and/or attorneys' fees. For Clarity, it is agreed and
> understood that Sterling may continue to sell all *SCRATCH HANGMAN*
> and *SCRATCH & SOLVE HANGMAN* books by authors other than
> Releasor that Sterling published prior to the execution of this Release.

Janay Decl. ¶ 11, Ex. I at DEFS002782.

53.     Plaintiff refused to enter into the Draft 2013 Agreement, as well as the

RELEASE, because he believed that the new format of the contractual agreement was an attempt

by Sterling to take advantage of him. Janay Decl.  ¶ 11, 12, 18.

> Secondly, your revised contracts had amendments made to them which
> were unacceptable, compared to previous contracts that you have drawn
> up.

Janay Decl. ¶ 18, Ex. P (DEFS002766-2769).

## VII. COPYRIGHT INFRINGEMENT

54. Plaintiff Ward does not allege a cause of action for patent infringement with respect to his "idea" for a single-player scratch-off Hangman game. Ederer Decl. ¶ 3, Ex. 1.

55. Plaintiff's copyright infringement claims in this action are in part based on his New Zealand copyright in his New Zealand work, which is enforceable in the United States pursuant to international treaty. Ederer Decl. ¶ 6, Ex. 4 at 11:3-25; 17:17-20; 78:20-25, Janay Decl. ¶ 31, Ex. CC.

56. Additionally Plaintiff's copyright infringement claims is based on Plaintiff's United States copyrights obtained for Plaintiff by Sterling for the Works published under the "Scratch & Solve" series which Ward is the proprietor of. Janay Decl. ¶ 28, Ex. Z.

57. Defendant Sterling used plaintiff's unique concept, layout, gameplay, and similar graphical elements involved in his one player hangman games, the similar combination of elements which include but are not limited to: a book completely devoted to hangman game puzzles, using silver scratch-off ink to conceal answers (akin to an instant lottery ticket), using varying levels of difficulty, different themes. Ederer Decl. ¶ 3, Ex. 1 [Complaint].

## VIII. TRADE DRESS INFRINGEMENT

58. Plaintiff asserts a violation of the unique trade dress used by Plaintiff in the New Zealand Book, in violation of 15 U.S.C. § 1125(a). Ederer Decl. ¶ 3, Ex. 1 [Complaint].

59. Specifically, the non-functional, distinctive, unique and highly successful presentation of the New Zealand Book — namely (a) The one-player format; (b) The scratch-off concept akin to instant lottery tickets; (c) the depiction of the hangman logo on the front; (d) the overall feel of the book as a "challenge", and (e) the placing of the hangman image to the right or

the left of the scratch-off guesses — was used by Defendant Sterling in publishing five (5) books in the Scratch & Solve series, described above, without Plaintiff's authorization of such use, and in violation of 15 U.S.C. § 1125(a). Ederer Decl. ¶ 3, Ex. 1 [Complaint].

60.    In addition, Plaintiff asserts a violation of the unique trade dress used in the Scratch & Solve series, created jointly with Sterling based on Plaintiff's New Zealand Book and marketed successfully with Plaintiff as Author, in violation of 15 U.S.C. § 1125(a). Ederer Decl. ¶ 3, Ex. 1 [Complaint].

61.    Specifically, the non-functional, distinctive, unique and highly successful presentation of the Scratch & Solve series — namely (a) The one-player format; (b) The scratch-off concept akin to instant lottery tickets; (c) the depiction of the hangman logo on the front; (d) the overall feel of the book as a "challenge"; (e) the placing of the hangman image to the right or the left of the scratch-off guesses; (f) the almost identical format of the inside pages; and, (g) the overall design of the Scratch & Solve series which became a market known product as a direct result of Plaintiff's authorship — has acquired substantial value and recognition in the United States and abroad, and was used by Defendant Sterling in publishing five (5) books in the Scratch & Solve series, described above, without Plaintiff's authorization of such use, and in violation of 15 U.S.C. § 1125(a). Ederer Decl. ¶ 3, Ex. 1 [Complaint].

62.    Such non-functional, distinctive and unique trade dress, first developed by Plaintiff, is well known to the consuming public and the trade as identifying and distinguishing Plaintiff as the exclusive and unique source of the Scratch & Solve series, used in connection with such trade dress. *See* Janay Decl. ¶ 15, Ex. M at WARD000012 ("In his clever Scratch & Solve Hangman, Mike Ward offers a neat twist on an old favorite.").

63.    The use of almost identical trade dress by Sterling in publishing the five (5) books

described above led consumers to confuse these books with the highly successful Scratch & Solve series authored and made successful by Plaintiff. Ederer Decl. ¶ 3, Ex. 1 [Complaint].

64.     Defendant Sterling published *Trivia Hangman* with Defendant Heaney as the author. Janay Decl. ¶ 14, Ex. L at WARD000005.

65.     Defendant Sterling published *Hollywood Hangman* with Defendant Blindauer as the author. Janay Decl. ¶ 14, Ex. L at WARD000006.

66.     Defendant Sterling published *Science Hangman*, *Geography Hangman*, and *Spelling Bee Hangman*, on its own under the "Jack Ketch" Pseudonym as the author. Janay Decl. ¶ 14, Ex. L at WARD000007-11.

67.     Defendant B&N acquiesced in the publishing of the five (5) books described above (heretofore and hereinafter "Infringing Books"). Ederer Decl. ¶ 3, Ex. 1 [Complaint].

68.     Defendant Sterling first discovered Plaintiff's unique trade dress when Plaintiff approached him to publish Scratch Hangman books in the United States:

> Another big success is our "Scratch & Solve" line of hangman books that work like instant lottery tickets. A guy in New Zealand had done it there, and he wanted to expand to the U.S., so he contacted me. Less than a minute after I opened the envelope, I knew it was going to be huge. We've sold a million of those.

Janay Decl. ¶ 8, Ex. F at WARD000026.

69.     In an attempt to describe the trade dress infringement in his own words, Plaintiff provided the following testimony during his March 20, 2014 deposition:

> Q. Anything more significant than that in terms of the significant elements of your trade dress or does [your response to Interrogatory No. 5] say it all?
>
> A. In so much as if anybody buys a product, they generally buy it because they know their product. The Hangman game has been around hundreds of years, it has even preceded crosswords, so once a person sees the name Hangman on the book, it would pique their interest, they would open the book, it would pique their interest, they would open

the book, see it was a sole playing game that incorporated scratch-off
ink and that would entice them to purchase the book.

Q. So those, what you just said, are the elements of the trade dress that
you claim my clients have infringed; correct?

A. That and the fact that I supplied your client with illustrations that were
copyrighted and [Sterling] produced books based on illustrations that I
supplied.

Q. Right. But I'm trying to focus on what are the elements of your trade
dress and is this an accurate statement in your mind of the elements of
your trade dress?

A. Yes, it is. The look and the feel of the whole book.

Q. Anything more specific than that?

A. Well, if you compare both books, you can see the trade dress is
obvious.

Ederer Decl. ¶ 6, Ex. 4 at 165:15-166:20.

## IX. DEFENDANTS' UNFAIR COMPETITION UNDER NEW YORK COMMON LAW.

70. From the July 9, 2004 email (Janay Decl. ¶ 5, Ex. C at WARD00042) onward

Plaintiff and Defendant cooperated and produced approximately forty (40) titles in the U.S.

under the "Scratch and Solve" moniker with Mike Ward as the Author and continued to sell over

1.5 million copies. Janay Decl. ¶ 9, Ex. G at WARD000090.

71. In May of 2009, without notifying Ward and without Ward's permission or

consent, Sterling began entered into a Publishing Agreement with it's own employee Francis

Heaney for a title in the "Scratch and Solve" series that incorporated the identical scratch-off

single player hangman game that Ward introduced to Sterling and that they had been publishing

in Ward's name since "Scratch & Solve Hangman #1" published in 2005. Janay Decl. ¶ 14, Ex.

L at WARD000005.

72. Sterling then published four (4) additional titles once using another employee

Patrick Blindauer for a title in 2011 and then three other times using a pseudonym "Jack Ketch"

in 2013. Janay Decl. ¶ 14, Ex. L at WARD000007-11.

**X.      DEFENDANTS' UNJUST ENRICHMENT AT THE EXPENSE OF PLAINTIFF.**

73.      Defendant have profited on the sale of Infringing Books.  Janay Decl. ¶ 6, Ex. D at WARD0000088.

74.      Plaintiff testified that Defendant's livelihood was stripped away from him.

> Q.What actual monetary loss have
>
> you suffered?
>
> A. They took away my livelihood.
>
> Q. The livelihood being the sale of
>
> this series of books?
>
> A. My livelihood was derived from
>
> the income from royalties from Sterling from
>
> the Scratch Hangman title.
>
> Q. So you lost your royalties. In
>
> other words, they sold these books, they
>
> paid royalties to other people and you
>
> didn't get them; right?
>
> A. Yes.

Janay Decl. ¶ 28, Ex. Z [Plaintiff Deposition at 170: 2-14].

Dated: New York, New York
        June 26, 2014

                                        By:      /Barry E. Janay /

Barry E. Janay, Esq. (BJ9311)
90 Broad St., 25th Flr.
New York, New York, 10022
Phone 917-756-8501
Fax 855-374-2884
bjanay@lobej.com

*Attorneys for Plaintiff(s)*