UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL WARD d/b/a/ BRAINTEASER
PUBLICATIONS,

     Plaintiff,

  - against -

BARNES & NOBLE, INC., STERLING
PUBLISHING CO., INC., FRANCIS HEANEY,
and PATRICK BLINDAUER,

     Defendants.

Civil Action No. 13-cv-7851 (JMF)

# DEFENDANTS' REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT

ARNOLD & PORTER LLP
Louis S. Ederer
Matthew T. Salzmann
Maxwell C. Preston
399 Park Avenue
New York, New York 10022
Tel: 212.715.1000
Fax: 212.715.1399

*Attorneys for Defendants*

# **TABLE OF CONTENTS**

|  | Page |
|---|---|
| INTRODUCTION | 1 |
| I. PLAINTIFF SHOULD NOT BE ALLOWED TO RENDER THE SUMMARY JUDGMENT PROCESS A SHAM BY REASSERTING DISAVOWED CLAIMS | 2 |
| II. DEFENDANTS HAVE NOT INFRINGED PLAINTIFF'S U.S. COPYRIGHT REGISTRATIONS AS A MATTER OF LAW | 4 |
| III. DEFENDANTS HAVE NOT INFRINGED PLAINTIFF'S PURPORTED NEW ZEALAND COPYRIGHT AS A MATTER OF LAW | 7 |
| IV. PLAINTIFF IS NOT ENTITLED TO FIX HIS DEFICIENT CLAIM FOR TRADE DRESS INFRINGEMENT | 9 |
| CONCLUSION | 10 |

## TABLE OF AUTHORITIES

*Cases*                                                                                                   Page

*Affiliated Hosp. Products, Inc. v. Merdel Game Mfg. Co.*,
   513 F.2d 1183 (2d Cir. 1975)......................................................................................6

*Autotech Techs. Ltd. P'ship v. AutomationDirect.com, Inc.*,
   2007 WL 2746654 (N.D. Ill. Sept. 18, 2007) ..............................................................4

*Belair v. MGA Entm't, Inc.*,
   503 F. App'x 65 (2d Cir. 2012) ...................................................................................8

*Big Island Candies, Inc. v. Cookie Corner*,
   269 F. Supp. 2d 1236 (D. Haw. 2003)..........................................................................9

*Brandon v. City of N.Y.*,
   705 F. Supp. 2d 261 (S.D.N.Y. 2010)..........................................................................3

*Buti v. Perosa, S.R.L.*,
   139 F.3d 98 (2d Cir. 1998).........................................................................................10

*Carter v. Ford Motor Co.*,
   561 F.3d 562 (6th Cir. 2009) ....................................................................................3, 4

*Celotex Corp v. Catrett*,
   477 U.S. 317 (1986).....................................................................................................10

*Hammerton, Inc. v. Heisterman*,
   2008 WL 2004327 (D. Utah May 9, 2008)..................................................................9

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
   113 F.3d 373 (2d Cir. 1997).........................................................................................9

*Mallery v. NBC Universal, Inc.*,
   331 F. App'x 821 (2d Cir. 2009) .................................................................................8

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,
   269 F.3d 114 (2d Cir. 2001).......................................................................................10

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
   602 F.3d 57 (2d Cir. 2010)...........................................................................................8

*SG Servs. Inc. v. God's Girls Inc.*,
   2007 WL 2315437 (C.D. Cal. May 9, 2007) ...............................................................9

**_Cases_**                    **Page**

*Vedder Software Grp. Ltd. v. Ins. Servs. Office, Inc.*,
   545 F. App'x 30 (2d Cir. 2013) ..................................................................................10

*Wilson v. City of N.Y.*,
   480 Fed. App'x 592 (2d Cir. 2012)...............................................................................3


**_Statutes, Rules & Secondary Authorities_**      **Page**

17 U.S.C. § 411(a) ..............................................................................................................6

37 C.F.R. § 202.3(b)(1)........................................................................................................6

37 C.F.R. § 202.3(b)(2)(ii)...................................................................................................6

37 C.F.R. § 202.3(b)(2)(ii)(C) .............................................................................................5

Fed. R. Civ. P. 32(a)(3).......................................................................................................3

Fed. R. Civ. P. 56(c)(2).......................................................................................................3

Fed. R. Civ. P. 56(e) ...........................................................................................................3

Committee Notes, Local Civil Rule 56.1 ............................................................................3

Compendium of Copyright Office Practices, Compendium II § 619 (1988) .....................6

*Registration of Claims to Copyright*, Copyright Office Statement of Policy,
   65 C.F.R. 41508-01, 41508 (Jul. 5, 2000) ....................................................................6

United States Copyright Office, *Form TX for a Nondramatic Literary Work* (2012),
   *available at* http://www.copyright.gov/forms/formtx.pdf.........................................6

> *Q. [T]he copyright registration on which you're basing your claim against my clients in this case is your New Zealand copyright?*
> *A. Yes.*
> *Q. Are you asserting any other copyright registrations against my client?*
> *A. No.*[1]

At his deposition in this action, Plaintiff repeatedly and unequivocally testified that his infringement claims are based exclusively on his purported rights in a Hangman-themed book published in New Zealand before he ever had a relationship with Sterling, and not on any rights in Sterling's "Scratch & Solve" Hangman series. Realizing now that this testimony is fatal to his client's claims, Plaintiff's counsel attempts to assert his client's purported U.S. rights in material Plaintiff did not contribute to the Sterling books, and to explain away Plaintiff's damaging testimony as "inadmissable" folly of a non-lawyer. But in light of his testimony, Plaintiff is limited to asserting rights in his New Zealand Book as a matter of law. Further, as a matter of indisputable fact, Plaintiff owns no U.S. rights — copyright or otherwise — in any material that appears in Sterling's "Scratch & Solve" books, other than the "text" he contributed to them (*i.e.*, the words he provided as solutions to the Hangman puzzles). As Plaintiff does not own the rights he now belatedly asserts, his claims must fail.

As for Plaintiff's new argument that he somehow owns U.S. rights in the exterior artwork, gameboard presentation, and other content Sterling contributed to the "Scratch & Solve" Hangman series, two undeniable facts eviscerate that position. *First*, the parties' Publishing Agreements make clear that any material Sterling contributed to the "Scratch & Solve" Hangman books is owned by Sterling, so there is no plausible theory under which Plaintiff can be considered the owner of this material. *Second*, when all the rhetoric is stripped away, Plaintiff and his counsel remain unable to articulate any theory of infringement other than

---

[1] Ederer Decl. ¶ 6, Ex. 4 at 11:15-25.

1

...

that Sterling "stole" his unpatented "idea" for a single-player Hangman game. For these and the reasons set forth in Defendants' moving papers, summary judgment of no liability is warranted.

## I. PLAINTIFF SHOULD NOT BE ALLOWED TO RENDER THE SUMMARY JUDGMENT PROCESS A SHAM BY REASSERTING DISAVOWED CLAIMS

At his deposition, Plaintiff testified over and over again that his copyright (and other) claims are exclusively based on his purported rights in his New Zealand Book. *See* Def. 56.1 ¶¶ 53, 55. This testimony is fatal to Plaintiff's claims, since, as Plaintiff conceded at his deposition, the exterior artwork and interior gameboard presentation in Sterling's "Scratch & Solve" Hangman books are so markedly different from that which appears in Plaintiff's New Zealand Book that they cannot constitute copyright (or other intellectual property) infringement as a matter of law. *See* Mot. at 15-20.

Apparently realizing that if Plaintiff is held to his testimony, his infringement claims must fail, Plaintiff's counsel now attempts to defeat summary judgment by renouncing Plaintiff's testimony.[2] In Plaintiff's Rule 56.1 Counterstatement, counsel repeatedly "disputes" his own client's testimony — including, for example, that Plaintiff's copyright claims are solely premised on alleged non-U.S. rights in his New Zealand Book, and that his trade dress claim is based on design elements that appear in a book that was never sold in the U.S. *See* 56.1 Counter. ¶¶ 53, 60. Remarkably, counsel claims this testimony is "irrelevant and inadmissible under Fed. R. Civ. P. 56(c)(2)" because Plaintiff is not a legal expert (*id.* at ¶¶ 7, 12, 16, 17, 66), and, therefore, despite Plaintiff's clear statements to the contrary (and without citation to any evidence), his

---

[2] First, counsel asked the Court to "suppress" his client's deposition testimony in its entirety or allow his client to belatedly read and sign his deposition transcript, thereby giving him the opportunity to "correct" his damning testimony. *See* Dkt. No. 23. The Court quickly denied this baseless request. *See* Dkt. No. 25. Next, rather than responding to Defendants' Rule 56.1 Statement, as required under applicable rules, counsel filed his own set of "Undisputed Facts" that attempted to override his client's testimony and assert a U.S. ownership interest in Sterling's "Scratch & Solve" Hangman books. *See* Dkt. No. 30. This time, upon Defendants' application, the Court ordered Plaintiff's counsel to provide a proper response to Defendants' Rule 56.1 Statement, at the risk of having the undisputed facts in Defendants' Statement deemed admitted. *See* Dkt. No. 31.

2

copyright claims are also based on U.S. copyrights. *See id.* at ¶ 53.[3] Even more remarkably, counsel backtracks from Plaintiff's prior "articulation" of his trade dress, now arguing that Plaintiff owns trade dress rights that encompass both his New Zealand Book and Sterling's "Scratch & Solve" Hangman books.[4]

As a matter of law, however, this final ploy must fail. Aside from the fact that Fed. R. Civ. P. 56(c)(2) does not address the admissibility of a party's own deposition testimony,[5] it is well established that following the close of discovery, a party cannot change the facts or legal theories on which it relies to avoid summary judgment, as otherwise the process becomes a sham.[6] Indeed, the Sixth Circuit saw through an identical gambit in *Carter v. Ford Motor Co.*, 561 F.3d 562, 567-69 (6th Cir. 2009). There, plaintiff's complaint asserted an unspecified Family Medical Leave Act claim, and the defendant "attempted to use the discovery process to clarify the contours of [the plaintiff's] ambiguous and broadly worded complaint." *Id.* at 568-69. Despite testifying in deposition that her claim was based on a 2006 termination, plaintiff opposed summary judgment by arguing that her claim was really based on a different termination in 2005. *See id.* at 567-68. The Sixth Circuit correctly rejected this tactic, explaining that "it would be unfair to allow [the plaintiff] to pursue a claim that she expressly disavowed", and that her "attempt to revive or resurrect her 2005 claim at summary judgment was too little too late." *Id.*

---

[3] As Plaintiff's Rule 56.1 Counterstatement still fails to comply with the applicable rules despite two opportunities to submit a compliant Counterstatement, under Fed. R. Civ. P. 56(e) this Court should deem all facts in Defendants' Rule 56.1 Statement that have been facially "disputed", but which "are not supported by citations to specific evidence" (Committee Notes, Local Civil Rule 56.1), as "undisputed for purposes of [this] motion," including, for example, 56.1 Counter. ¶¶ 2-4, 7, 10-13, 16-17, 26, 30, 37, 46, 51-53, 58, 59, 61, 63, 66 (no evidentiary citations), and *id.* at ¶¶ 20-21, 22, 27-28, 31, 33-34, 40, 45, 50, 54-55, 62, 64-65, 73 (citations do not support statements).

[4] Thus, according to Plaintiff's counsel, "Ward not only owns the trade dress to the New Zealand works, but he has acquired ownership over the trade dress of the Scratch & Solve works published by Sterling by virtue of the consumer association of the works with him and his [sic]." 56.1 Counter. ¶ 61.

[5] To the contrary, "[a]n adverse party may use for any purpose the deposition of a party". Fed. R. Civ. P. 32(a)(3).

[6] *See Wilson v. City of N.Y.*, 480 Fed. App'x 592, 594 (2d Cir. 2012) ("it is 'inappropriate to raise new claims for the first time in submissions in opposition to summary judgment'"); *Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 278 (S.D.N.Y. 2010) ("[A] party may not raise new claims for the first time in opposition to summary judgment.").

3

Here, even if Plaintiff's Complaint, which makes no reference to any specific copyrights, could be construed to encompass claims based on U.S. registrations, Plaintiff testified that his claims were based exclusively on his purported unregistered copyright in his New Zealand Book. Def. 56.1 ¶ 53. Moreover, although counsel cross-examined his client extensively at Plaintiff's deposition, he did not even attempt to address this particular testimony. *See* Janay Decl. Ex. Z at 195:3-207:7, 230:11-233:2. Rather, counsel waited until discovery was over and then — after Defendants relied on Plaintiff's testimony in preparing their motion — attempted to revive Plaintiff's disavowed theory of infringement to avoid summary judgment. This belated shift is simply "too little too late." *Carter*, 561 F.3d at 569. Instead, Defendants are "entitled to take [Plaintiff] at [his] word as to the scope of the [asserted copyright] claim." *Autotech Techs. Ltd. P'ship v. AutomationDirect.com, Inc.*, 2007 WL 2746654, at *3 (N.D. Ill. Sept. 18, 2007).

## II.   DEFENDANTS HAVE NOT INFRINGED PLAINTIFF'S U.S. COPYRIGHT REGISTRATIONS AS A MATTER OF LAW

The reason Plaintiff's counsel is so desperate to avoid his client's deposition testimony is obvious — only if Plaintiff can somehow claim rights in the interior gameboard presentation used in Sterling's "Scratch & Solve" Hangman series (assuming this material is even protectable, *see* Mot. at 9-15) does his copyright claim even become colorable. However, counsel's attempt to resurrect this claim still fails, even if the Court indulges the attempt.

First, as a matter of undisputed law, copyright protection extends only to what is "original to the author" and "created by the author". *See* Opp. at 4-5. Here, therefore, as a matter of indisputable fact, Plaintiff cannot own any materials that Sterling contributed to its books, such as the exterior artwork and gameboard presentation. As noted in Defendants' opening brief, the parties' Publishing Agreements state that Sterling was to obtain registrations in Plaintiff's name for books to which he contributed, *but only to the extent of his contribution. See* Mot. at 6, 8, 22.

4

On the other hand, the Agreements make clear that Sterling owns (and was entitled to "copyright … in its own name") any material it "supplie[d] … for the [books] (such as illustrations)." *See id.* at 6 (quoting Def. 56.1 ¶ 22).[7] There is no evidence that Plaintiff supplied Sterling with anything beyond the "words and phrases" that comprised the solutions to the Hangman puzzles. *See* Mot. at 6-7. Indeed, Plaintiff has now conceded that the only gameboard presentation he ever provided to Sterling was from his New Zealand Book — a presentation that lacks any similarity to that developed by Sterling for its "Scratch & Solve" series. *See* 56.1 Counter. ¶ 15.

Second, consistent with the provisions of the Publishing Agreements, Plaintiff's U.S. copyright registrations are expressly limited to the "text" he contributed to those books, that is, the words that comprised the solutions to the Hangman games. *See* Mot. at 7 (citing Def. 56.1 ¶ 27). In fact, Paragraph 33 of Plaintiff's original (improperly filed) "Statement of Undisputed Material Facts" admits as much, stating that "the content for which Plaintiff ha[s] a United States copyright" is comprised of "the text or words that comprised the solutions to the various hangman puzzles." *See* Dkt. No. 28 at ¶ 33. Nonetheless, counsel now argues that despite the limitation of the registrations' "Nature of Authorship" sections to "text" or "entire text," those words do not mean what they say — rather, he claims, the "Nature of Authorship" limitation can still encompass matter other than "text", including the "artwork" contributed by Sterling (as well as, apparently, everything else in these books), because applications to register works containing both text and artwork need only "be submitted in the class most appropriate." Opp. at 13.[8] But here counsel is conflating apples and oranges, since an application's "Nature of Authorship"

---

[7] Indeed, several of the Publishing Agreements expressly state that the "Works" created by Plaintiff only comprised "new and original puzzle words" or "words and phrases" contributed by Plaintiff. *See* Mot. at 8 (citing Def. 56.1 ¶¶ 31, 34)). *See also* Ederer Decl. Ex. 17 at Preamble and § 1 (preamble defines "Works" as "Book #1" and "Book #2"; Section 1 defines "Book #1" and "Book #2" as "new and original puzzle words").

[8] Plaintiff's brief cites to 37 U.S.C. § 202.3(2)(ii)(C), but no such statute exists. Rather, the quoted language appears at 37 C.F.R. § 202.3(b)(2)(ii)(C).

5

section "defines the scope of the registration,"[9] while the "class" instructions counsel refers to have nothing to do with the scope of a registration, but rather provide guidance as to the form to be used when filing an application (*e.g.*, Form VA ("Visual Arts") versus Form TX ("Text")).[10] Here, the "Nature of Authorship" sections clearly limit the scope of Plaintiff's registrations to "text" or "entire text," *see* Mot. at 7 (citing Def. 56.1 ¶ 27), and Plaintiff is stuck with that limitation.[11] He neither owns a U.S. copyright nor has a registration for anything more.[12]

Nor does Sterling's failure to register the materials it contributed to its "Scratch & Solve" series (*i.e.*, the exterior artwork, gameboard presentation, etc.) somehow result in the transfer of those rights back to Plaintiff. *See* Opp. at 10-11. Not surprisingly, counsel cites no support for this baseless proposition; rather, under the Publishing Agreements, Sterling owns the copyrights in these materials, and can register them at any time.[13]

Finally, counsel argues that "the extensive course of dealing between Sterling and Plaintiff," and the "extensive advice" Plaintiff purportedly gave regarding how the interior of the "Scratch & Solve" books should appear, somehow demonstrates that Plaintiff owns more than

---

[9] Compendium of Copyright Office Practices, Compendium II § 619 (1988); *see also Registration of Claims to Copyright*, Copyright Office Statement of Policy, 65 C.F.R. 41508-01, 41508 (Jul. 5, 2000). Indeed, the Copyright Office's own instruction form makes clear that the "Nature of Authorship" field is used to limit the registration to "the nature of this particular author's contribution." United States Copyright Office, *Form TX for a Nondramatic Literary Work* (2012), *available at* http://www.copyright.gov/forms/formtx.pdf.

[10] *See* 37 C.F.R. §§ 202.3(b)(1) & (b)(2)(ii).

[11] As for Plaintiff's argument that the reference in the registrations to "text" or "entire text" also encompasses the instructions appearing in Sterling's "Scratch & Solve" series, there is no evidence that Plaintiff authored these instructions (which differ noticeably from those appearing in Plaintiff's New Zealand Book), or that he had anything to do with them. Moreover, instructions are entitled to only the thinnest to copyright protection, if any, since the idea of the game cannot be protected by copyright, and there are a limited number of ways to explain how to play. *Affiliated Hosp. Products, Inc. v. Merdel Game Mfg. Co.*, 513 F.2d 1183, 1188 (2d Cir. 1975).

[12] Further, since Plaintiff has no registration for the material he now claims to own, he cannot sue for infringement of that material. Section 411(a) of the Copyright Act states that "no civil action for infringement of the copyright in any United States work shall be instituted until [] registration [] has been made in accordance with this title." 17 U.S.C. § 411(a).

[13] Moreover, Plaintiff's counsel makes no attempt to reconcile this newfangled argument with Plaintiff's prior concession that he does not own "the copyright in the cover [of any of the books he authored for Sterling's 'Scratch & Solve' Hangman series, which] belongs to someone else." *See* Ederer Decl. Ex. 35 at 14 n.2; *see id.* at 14.

6

just the words he contributed. *See* Opp. at 10-11, 13. However, the only evidence to which counsel points is a single email in which, rather than giving advice, Plaintiff objects to Sterling's gameboard presentation and the "whole concept" of its "Scratch & Solve" Hangman books as being markedly different from his New Zealand Book. *See* Opp. at 10; Janay Decl. Ex. EE. Beyond that, Plaintiff has adduced no evidence that he ever advised on, commented on, suggested any changes to, or approved or disapproved of the exterior artwork, gameboard presentation, or anything else contributed by Sterling to its books. Moreover, Plaintiff's counsel does not and cannot explain — even if this extensive "course of dealing" ever occurred — how it trumps the merger clauses in each of the operative Publishing Agreements.[14] *See* Mot at 20-22.[15]

## III. DEFENDANTS HAVE NOT INFRINGED PLAINTIFF'S PURPORTED NEW ZEALAND COPYRIGHT AS A MATTER OF LAW

As Plaintiff does not own the U.S. copyright interests he now seeks to assert, his counsel is left to argue that the Second Circuit does not favor deciding copyright fact issues (such as substantial similarity) on motions for summary judgment, even though Plaintiff himself testified

---

[14] Counsel's argument that Sterling's failure to intercede in Plaintiff's earlier dispute with McMeel Publishing somehow constitutes an "abandon[ment] or assign[ment]" of its ownership rights in its "Scratch & Solve" Hangman series is frivolous. 56.1 Counter. ¶ 61 n.1. According to the evidence, Sterling did not participate in that case because it did not believe McMeel had infringed its artwork, but did not stand in Plaintiff's way because Plaintiff had advised Sterling that McMeel had copied his "text" (*i.e.*, puzzle solutions). Janay Decl. Ex. H.

[15] In a last-ditch attempt to claim ownership of the exterior artwork and gameboard presentation that Sterling contributed to its "Scratch & Solve" Hangman books (and avoid Plaintiff's testimony that these materials are markedly different in appearance from the corresponding materials in his New Zealand Book, Def. 56.1 ¶ 63), counsel recycles the argument that the Publishing Agreements merely "extended" Plaintiff's New Zealand Book to the U.S., and that Sterling is somehow operating under Plaintiff's "license." 56.1 Counter. ¶¶ 62-64. Counsel even argues that although the word "license" appears nowhere in the Agreements, the Agreements are "structured very much like a licensing agreement." Opp. at 22. There is nothing, however, in the Publishing Agreements that affords Plaintiff ownership of any material contributed by Sterling (*e.g.*, exterior artwork, gameboard presentation, etc.), much less comes close to any license of such materials to Sterling. Rather, it is clear from the Agreements that Sterling owns the materials it contributed, and the associated copyright interests. *See supra* at 4-5.

Left with nothing else, counsel is reduced to arguing that Defendants are "bad guys" who, in 2013, tried to impel Plaintiff into signing a release and granting Sterling rights they never previously owned, at which point Plaintiff had no other choice but to file suit. But, aside from the fact that Plaintiff is referring to inadmissible settlement communications, in truth it was Plaintiff who initially suggested this business resolution, and then when he backtracked, Sterling invited him to propose something different for its consideration. Janay Decl. Exs. O, P. Plaintiff's response was to file this suit without warning.

7

that Sterling's interior artwork and gameboard presentation is markedly different from that which appears in his New Zealand Book. Def. 56.1 ¶ 63. As stated in Defendants' opening brief, the Second Circuit has held that summary judgment is "entirely appropriate" where the differences in protectable elements are so stark that no reasonable jury could find substantial similarity. *See* Mot. at 15-20; *see also Mallery v. NBC Universal, Inc.*, 331 F. App'x 821, 823 (2d Cir. 2009) (affirming holding of no substantial similarity on summary judgment where the works stood in "stark contrast" to one another). Thus, even if the two works contain thematically similar elements placed in a similar arrangement, the expression of these elements is so strikingly different that no reasonable jury could find that any similarity — much less ***substantial similarity*** — between their protectable portions, and/or the total concept and feel of the works. *See* Mot. at 19-20.[16] These differences jump out even on a cursory comparison of the works at issue (not the comparison Plaintiff's counsel would have the Court make, *see* Opp. at 14):



Accordingly, as a matter of law, even if Plaintiff owned any New Zealand copyright, which he

---

[16] Plaintiff's opposition brief also fails to respond substantively to Defendants' arguments that the purported similarities between the works at issue concern elements that are unprotectable under the merger doctrine, the scenes a faire doctrine, and the requirement that copyrightable elements be non-functional. *See* Mot. at 12-15. Counsel's only response is that Defendants are improperly asking the Court to dissect the works down to their protectable elements, when it should only be considering the total concept and overall feel of a work. *See* Opp. at 5. Once again, counsel is misguided. While it is true that total concept and overall feel is an important part of the test, a claimant must still demonstrate substantial similarity with respect to the ***protectable*** elements. *See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2d Cir. 2010); *Belair v. MGA Entm't, Inc.*, 503 F. App'x 65, 66 (2d Cir. 2012) (requiring "'substantial similarity between those elements, and only those elements, that provide copyrightability to the allegedly infringed [work].'"). Here, any similarities arise from unprotectable elements. *See* Mot. at 12-15.

has done nothing to demonstrate,[17] there can be no infringement here, and Defendants are entitled to summary judgment on Plaintiff's copyright claim.

### IV. PLAINTIFF IS NOT ENTITLED TO FIX HIS DEFICIENT CLAIM FOR TRADE DRESS INFRINGEMENT

As discussed in Defendants' opening brief, Plaintiff's failure to articulate his purported trade dress with particularity (despite having had multiple opportunities to do so) is fatal to his claim. *See* Mot. at 23-24. Accordingly, counsel's attempt to backtrack on his client's testimony and articulate Plaintiff's trade dress now for the first time (*see* Opp. at 17) must likewise fail, and Defendants should have summary judgment on Plaintiff's trade dress claim. *See Hammerton, Inc. v. Heisterman*, 2008 WL 2004327, at *4 (D. Utah May 9, 2008) ("Plaintiff cannot wait until after the close of discovery, indeed until filing its opposition to summary judgment, to disclose the combination of design elements that comprise its trade dress claims.").[18]

Further, even if Plaintiff were entitled to articulate the elements of his trade dress at this late juncture, his attempt fails. Counsel's description of the alleged trade dress of the New Zealand Book as consisting of elements such as "the overall presentation of the work as a puzzle book and a challenge [and] the presentation of the book as an educational source" (Opp. at 17) does not come close to the required "precise expression" of the "specific elements" (*Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997)); indeed, counsel is

---

[17] As indicated in Defendants' opening brief (Mot. at 9), a Berne Convention plaintiff must demonstrate that he owns a valid foreign copyright. Plaintiff, however, has done nothing to carry his burden of showing that he owns any rights whatsoever in New Zealand, offering no precedent or opinion as to the scope of any New Zealand protection. Further, given the extremely limited (if any) protection the material in question may enjoy under U.S. copyright law (Mot. at 12-15), by no means do Defendants concede that the result would be any different in New Zealand.

[18] *See also SG Servs. Inc. v. God's Girls Inc.*, 2007 WL 2315437, at *8 n.10 (C.D. Cal. May 9, 2007) ("Plaintiff cannot seek protection for these [trade dress] elements because they were not alleged in the SAC, and were not disclosed during discovery as being support for what was alleged."); *Big Island Candies, Inc. v. Cookie Corner*, 269 F. Supp. 2d 1236, 1246 (D. Haw. 2003) ("[A]llowing [plaintiff] to add elements to its listing of trade dress elements at this late stage would prejudice [defendant].").

9

describing the function of the book, despite the fact that functional trade dress cannot be protected (*see Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 120 n.4 (2d Cir. 2001)). And, Plaintiff offers no proof that the New Zealand Book was ever sold in the U.S., which explains why there is no evidence of secondary meaning. *See Buti v. Perosa, S.R.L.*, 139 F.3d 98, 102 (2d Cir. 1998).[19] Thus, summary judgment is required in light of Plaintiff's failure to meet his evidentiary obligations. *See Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986).[20]

## CONCLUSION

This case is really about Plaintiff's misguided belief that "Sterling basically stole [his] idea" for a single-player hangman game. *See* Def. 56.1 ¶ 51. Plaintiff's counsel would have the Court dismiss this testimony as an attempt to "portray[] the Plaintiff as a legal expert capable of definitively reaching a legal conclusion" (56.1 Counter. ¶ 51), but in essence, counsel's opposition papers do nothing more, describing what Defendants purportedly appropriated as a "unique concept", "gameplay", "format", "presentation", and a "unique idea". *See* Opp. at 1, 17; 56.1 Counter. ¶¶ 41, 44, 47, 57. The similarity of ideas is simply not actionable here — not under Plaintiff's theories of copyright, trade dress, "license," unfair competition or unjust enrichment, nor under patent, since Plaintiff initially sought such protection in New Zealand but never obtained it. As Defendants cannot be liable as a matter of law for exploiting their own contributions to their "Scratch & Solve" series, they respectfully request summary judgment.

---

[19] Plaintiff also now asserts that he somehow owns trade dress rights in Sterling's "Scratch & Solve" Hangman books. *See* Opp. at 17, 19-20. Plaintiff, however, offers no legal support for this bizarre argument, since even if there were any protectable trade dress in these books, no theory would allow him to claim such rights given that Sterling designed the books and owns all the design elements and other content. Moreover, Plaintiff's "evidence" of secondary meaning — a single review of a "Scratch & Solve" Hangman book that mentions Plaintiff's name (*see* Opp. at 19 n.5) — comes nowhere close to demonstrating that "in the minds of the public, the primary significance of [the trade dress] is to identify the source of the product rather than the product itself." *Vedder Software Grp. Ltd. v. Ins. Servs. Office, Inc.*, 545 F. App'x 30, 33 (2d Cir. 2013).

[20] Finally, since Plaintiff admits that his unfair competition and unjust enrichment claims are premised on the same allegation as his trade dress claim (*see* Opp. at 20-21), for the reasons discussed herein and in Sterling's opening brief (*see* Mot. at 24-25), these claims fail as well.

10

Dated: New York, New York  
July 11, 2014

ARNOLD & PORTER LLP

By: _____  
Louis S. Ederer  
Matthew T. Salzmann  
Maxwell C. Preston

*Attorneys for Defendants*

11