**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MICHAEL WARD d/b/a/ BRAINTEASER PUBLICATIONS, | ) ) ) ) |
| Plaintiff, | ) ) Civil Action No. 13-cv-7851 (JMF) |
| - against - | ) ) |
| BARNES & NOBLE, INC., STERLING PUBLISHING CO., INC., FRANCIS HEANEY, and PATRICK BLINDAUER, | ) ) ) ) |
| Defendants. | ) ) |

### DEFENDANTS' RESPONSE TO PLAINTIFF'S COUNTERSTATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1(b) IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ARNOLD & PORTER LLP
Louis S. Ederer
Matthew T. Salzmann
Maxwell C. Preston
399 Park Avenue
New York, New York 10022
Tel: 212.715.1000
Fax: 212.715.1399

*Attorneys for Defendants*

**I. Request to Strike Noncompliant Portion of Counterstatement.** Defendants Barnes & Noble, Inc., Sterling Publishing Co., Inc., Francis Heaney, and Patrick Blindauer (collectively, "Sterling") respectfully submit this Response to Plaintiff's Counterstatement of Material Facts Pursuant to Local Rule 56.1(b) in Opposition to Defendants' Motion for Summary Judgment ("Counterstatement") (Dkt. No. 33). Sterling notes that Plaintiff's submission not only violates Local Civil Rule 56.1(b), but also reflects a fundamental misunderstanding of Federal Rule of Civil Procedure 56, and the procedure set forth in Local Civil Rule 56.1. As the Court is aware, Local Civil Rule 56.1(b) permits the non-moving party, "if necessary", to include in its opposing papers (*i.e.*, counterstatement) "additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Here, however, Plaintiff has not done that; rather, he has merely taken his original, noncompliant "Statement of Undisputed Material Facts Pursuant to Local Rule 56.1" (Dkt. No. 28) — which, upon Sterling's application, the Court quashed and ordered Plaintiff to file a new counterstatement "in compliance with the Federal Rules of Civil Procedure, the Local Rules, and this Court's Individual Rules" — and included essentially the same noncompliant statement of "undisputed facts" in his re-filed Counterstatement (Dkt. No. 33). Thus, in the second section of Plaintiff's Counterstatement, rather than providing a "short and concise statement" of supplemental material facts *as to which Plaintiff contends there exists a genuine issue to be tried*, Plaintiff has once again provided a set of purported *"undisputed facts"*, many of which were copied in their entirety from Plaintiff's previous noncompliant Counterstatement (Dkt. No. 28), and none of which are authorized under the Federal, Local or this Court's Individual Rules.

Accordingly, Sterling respectfully requests that since Plaintiff's counsel has already had fair warning, this time the Court strike this improper, noncompliant portion of Plaintiff's Counterstatement (pp. 31-49) *in its entirety*.

**II.** **Response to Noncompliant Portion of Counterstatement.** Without prejudice to Sterling's foregoing request to strike the noncompliant portion of Plaintiff's Counterstatement, and without waiving any objections to the propriety of Plaintiff's Counterstatement, Sterling provides the following Responses to Plaintiff's noncompliant Counterstatement.

Sterling will use the following abbreviations in this Response:

| | |
|---|---|
| Sterling | Defendants Barnes & Noble, Inc., Sterling Publishing Co., Inc., Francis Heaney, and Patrick Blindauer |
| Plaintiff | Plaintiff Michael Ward d/b/a Brainteaser Publications |
| Def. 56.1 ¶ __ | Paragraph __ in Defendants' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1, filed on May 30, 2014. |
| Ederer Decl. Ex. __ | Exhibit __ to the Declaration of Louis S. Ederer in Support of Defendants' Motion for Summary Judgment filed on May 30, 2014. |
| Janay Decl. Ex __ | Exhibit __ to the Declaration of Barry Janay in Opposition to Defendants' Motion for Summary Judgment, filed on June 27, 2014. |

It is Sterling's position, as stated in Sterling's accompanying summary judgment motion papers, that there are no material facts genuinely in dispute that would prevent the Court from awarding summary judgment in Sterling's favor with respect to all of Plaintiff's claims. Accordingly, to the extent that Sterling "disputes" any purported fact statement made by Plaintiff — whether such statement is construed as a statement of "undisputed fact", or of facts as to which Plaintiff believes there is a genuine issue to be tried — Sterling is only disputing the accuracy or completeness of Plaintiff's characterization thereof, or disputing statements for which Plaintiff cites no evidentiary support, as required by Federal Rule of Civil Procedure

56(c). Further, to the extent Sterling is clarifying, as opposed to disputing, any "undisputed fact" herein, in certain instances it also refers to the proper characterization of such facts, as previously stated in specific paragraphs found in Defendants' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 (Dkt. No. 22). In any event, any "disputes" raised by Sterling with respect to the statements contained in Plaintiff's noncompliant, supplemental Counterstatement are without prejudice to Sterling's position that it is entitled to summary judgment on all claims.

For reference, Sterling includes the headings utilized by Plaintiff in his supplemental counterstatement. To the extent any of these headings could be construed as a statement of fact, however, Plaintiff fails to cite admissible evidence that supports such headings and, therefore, Sterling disputes them.[1]

## I.      PARTIES

1.      Plaintiff, MICHAEL WARD d/b/a Brainteaser Publication (hereinafter "Ward"), is a famous, distinguished and innovative book author, based in New Zealand, who created and developed a highly successful and unique series of puzzle books colloquially known as the "Scratch-Hangman" series. Ederer Decl. ¶ 3, Ex. 1, [Complaint] ¶ 1.

*Sterling's Response*:

(1)      Sterling admits that Plaintiff published a single-player scratch-off Hangman book in New Zealand. *See* Def. 56.1 ¶ 8. Plaintiff fails to cite any admissible evidence in support of the remainder of this statement — namely, that Plaintiff "is a famous, distinguished and innovative book author" — and, therefore, disputes it and requests that it be stricken.[2]

---

[1] All typographical errors that appear in Defendants' restatement of Plaintiff's Counterstatement, as required by this Court's Individual Rules, appeared in Plaintiff's original filing.

[2] Pursuant to Local Civil Rule 56.1(d), "[e]ach statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence

2.      Defendant, BARNES & NOBLE, INC. (hereinafter "B&N"), is the largest book retailer in the United States. See Defendants' L.R. 56.1 Statement of Undisputed Facts ("SUF"), ¶ 1; Ederer Decl. ¶ 3, Ex. 1[Complaint] ¶ 9.

*Sterling's Response*:

**(2)**     Undisputed.

3.      Defendant, STERLING PUBLISHING COMPANY, INC. (hereinafter "Sterling"), is a publishing company in the United States incorporated in Delaware with headquarters located at 387 Park Avenue South, New York, NY 10016.  Sterling was responsible for the sale and distribution of books produced based on Ward's "Scratch-Hangman" series in the United States. B&N acquired Sterling in 2003. See SUF ¶ 2; Ederer Decl. ¶ 3, Ex. 1 [Complaint] ¶¶ 9-10; Ederer Decl. ¶ 10, Ex. 8 [Welcome to Sterling Publishing] .

*Sterling's Response*:

**(3)**     Sterling admits that Sterling Publishing Company, Inc. is a publishing company in the United States incorporated in Delaware with headquarters located at 387 Park Avenue South, New York, NY 10016.  Sterling further admits that it published Sterling's "Scratch & Solve" Hangman books in the United States.  Sterling also admits that Barnes & Noble, Inc. acquired Sterling Publishing Company, Inc. in 2003.  Plaintiff fails to cite any admissible evidence in support of the remainder of this statement and, therefore, Sterling disputes it and requests that it be stricken.

4.      Defendant, FRANCIS HEANEY (hereinafter "Heaney"), is an individual resident of the State New York and an employee of Sterling.  Heaney is the author of a book published by

---

which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  The allegations contained in Plaintiff's Complaint do not constitute admissible evidence.  Pursuant to Federal Rule of Civil Procedure 56(e)(4), "[i]f a party fails to properly support an assertion of fact ... as required by Rule 56(c), the court may: ... (4) issue any other appropriate order."  Defendants submit that an "appropriate order" in such situations would be the striking of any unsupported assertion of fact.

Sterling in 2010, after Sterling's relationship with Ward was terminated, as part of its "Scratch & Solve" series, entitled *Trivia Hangman*. *See* SUF ¶ 3; Ederer Decl. ¶ 3, Ex. 1 [Complaint] ¶¶ 4, 11, 14; Ederer Decl. ¶ 23, Ex. 21 [Heaney's publishing agreement with Sterling]; Janay Decl. ¶ 14, Ex. L at WARD000005; Janay Decl. ¶ 27, Ex. Y at WARD000084.

### Sterling's Response: ·

(4)      Sterling admits that Heaney is an employee of Sterling, and the author of the text contained in a book published by Sterling in 2010 as part of its "Scratch & Solve" series, entitled *Trivia Hangman*. *See* Def. 56.1 ¶¶ 36-37. Sterling also admits that Heaney is an individual resident of the State of New York. Plaintiff fails to cite any admissible evidence in support of the remainder of this statement — in particular, that Sterling's relationship with Plaintiff terminated prior to Sterling's publication of *Trivia Hangman* (*see* Def. 56.1 ¶¶ 28, 30, 33) — and, therefore, Sterling disputes it and requests that it be stricken.

5.      Defendant, PATRICK BLINDAUER (hereinafter "Blindauer"), is an individual resident of the State of New York and an employee of Sterling. Blindauer is the author of a book published by Sterling in 2011, after Sterling's relationship with Ward was terminated, as part of its "Scratch & Solve" series, entitled *Hollywood Hangman. See* SUF ¶ 4; Ederer Decl. ¶ 3, Ex. 1 [Complaint] ¶¶ 5, 11, 14; Ederer Decl. ¶ 25, Ex. 23 [Blindauer's publishing agreement with Sterling]; Janay Decl. ¶ 14, Ex. L at WARD000006; Janay Decl. ¶ 19, Ex. Q at WARD000084.

### Sterling's Response:

(5)      Sterling admits that Blindauer is an employee of Sterling, and the author of the text contained in a book published by Sterling in 2011 as part of its "Scratch & Solve" series, entitled *Hollywood Hangman. See* Def. 56.1 ¶¶ 41-42. Plaintiff fails to cite any admissible evidence in support of the remainder of this statement — in particular, that (a) Blindauer is a resident of the State of New York (*see* Janay Decl. Ex. S, at ¶ 5); and (b) Sterling's relationship

with Plaintiff terminated prior to Sterling's publication of *Hollywood Hangman* (*see* Def. 56.1 ¶¶ 28, 30, 33) — and, therefore, Sterling disputes it and requests that it be stricken.

## II.       BACKGROUND

6.       In the early 1990's, Plaintiff Ward, a famous and distinguished book author and publisher, created and developed a highly successful series of puzzle books colloquially known as the "Scratch-Hangman" Series. Ederer Decl. ¶ 3, Ex. 1 [Complaint] ¶¶ 12.

*Sterling's Response*:

(6)       Sterling admits that, in 2000, years before he had any relationship with Sterling, Plaintiff published a single-player scratch-off Hangman book in New Zealand, entitled *Scratch Hangman Puzzle Book. See* Def. 56.1 ¶ 8.  Plaintiff fails to cite any admissible evidence in support of the remainder of this statement, and, therefore, Sterling disputes it and requests that it be stricken.

7.       In February 1994, Plaintiff Ward filed a provisional patent application in the New Zealand Patent Office for an invention for a game entitled "Scratch Hangman," which he described as follows:



(c) Here begin description of the invention. The continuation of the specification should be upon paper of the same size as this form on one side only, with the lines well spaced and with a margin of 2.5 cm on the left-hand side of the paper. The specification and the duplicate thereof must be signed at the end.

(c)  This invention relates to a novel system that produces a book entitled "Scratch Hangman". With reference to the drawing shown on page 2, is a description of the game, as well as the surface treatment applied to the paper.
(CONT.)

(1)



Ederer Decl. ¶ 4, Ex. 2; SUF ¶ 6.

*Sterling's Response*:

(7)    *Undisputed. See* Def. 56.1 ¶ 6.

8.    Plaintiff Ward only obtained provisional patent protection as opposed to registering a complete specification of the patent because he was advised by his New Zealand patent attorney that a provisional patent would establish a priority date and further advised that New Zealand copyright law provided worldwide protection for his work that was above and beyond the protections provided by a final patent.  Janay Decl. ¶ 28, Ex. Z Plaintiff Deposition at 80:10-19, 84:20-23, 86:24-*, and 87:7; Janay Decl. ¶ 31, Ex. CC.

*Sterling's Response*:

(8)    Sterling admits that, when asked during his deposition whether he elected to continue with his patent application after filing a provisional patent application, Plaintiff testified: "After 12 months, my patent attorney told me that I did not need to go ahead with the

application for a full patent because New Zealand copyright under [*sic*] worldwide copyright and overrode a patent." Ederer Decl. ¶ 6, Ex. 4 at 87:3-7.  Plaintiff fails to cite any admissible evidence in support of the remainder of this statement, and, therefore, Sterling disputes it and requests that it be stricken.

9.      In 2000, years before Sterling received any contractual rights to publish and/or distribute Ward's "Scratch Hangman" Series, Plaintiff published a single-player scratch-off Hangman book in New Zealand, entitled *Scratch Hangman Puzzle Book* (the "New Zealand Book"). Ex. 4 at 18:9-19:19, Ederer Decl. ¶ 5, Ex. 3 [Defendants' Deposition] at WARD000039; Ederer Decl. ¶ 6; SUF ¶ 9 (Images of the cover artwork for the New Zealand Book, as well as, the interior artwork and gameboard presentation thereof.).

### Sterling's Response:

(9)      Sterling admits that, in 2000, years before Plaintiff had any relationship with Sterling, Plaintiff published a single-player scratch-off Hangman book in New Zealand, entitled *Scratch Hangman Puzzle Book. See* Def. 56.1 ¶ 8.  Plaintiff fails to cite any admissible evidence in support of the remainder of this statement, and, therefore, Sterling disputes it and requests that it be stricken.

10.      Ward is the sole owner of a copyright in his New Zealand Book under New Zealand law. Ederer Decl. ¶ 6, Ex. 4 at 80:10-19; Janay Decl. ¶ 31, Ex. CC ("New Zealand -- in New Zealand, copyright is an automatic and registered right that comes into existence every time an original work is created, published or performed. So basically, it does not have to be registered in New Zealand to have copyright.").

### Sterling's Response:

(10)      Sterling admits that Plaintiff testified at his deposition that he owns an unregistered copyright in his New Zealand Book under New Zealand law.  *See* Def. 56.1 ¶ 10.

Plaintiff's statement, however, is not a statement of fact, but rather an unsupported legal conclusion. In addition, Plaintiff fails to cite any admissible evidence in support of the remainder of this statement, and, therefore, Sterling disputes it and requests that it be stricken.

11.     Ward's New Zealand copyright of the New Zealand Book affords Ward worldwide protection, including the United States, who is a party to the Berne Convention and lack of prior registration in the U.S. does not prevent an author or inventor from availing himself to U.S. courts to institute a claim of copyright infringement . Janay Decl. ¶ 31, Ex. CC, Janay Decl. ¶ 32, Ex. DD.

**Sterling's Response:**

**(11)**     Plaintiff's statement is not a statement of fact, but rather an unsupported legal conclusion. Moreover, Plaintiff fails to cite any admissible evidence in support of this statement, and, therefore, Sterling disputes it and requests that it be stricken.

### III.     PLAINTIFF WARD'S INITIAL APPROACH OF STERLING FOR THE PURPOSE OF PUBLISHING HIS BOOK SERIES IN THE UNITED STATES.

12.     In the summer of 2004, Ward contacted Sterling to see if Sterling had an interest in publishing Ward's single-player scratch-off Hangman series in the United States. SUF ¶ 13; Ederer Decl. ¶ 11, Ex. 9 [June 11, 2004 letter from Plaintiff to Sterling]; Ederer Decl. ¶ 6, Ex. 4 at 47:24-49:8; Janay Decl. ¶ 4, Ex. B at DEFS000234 - 248; Janay Decl. ¶ 5, Ex. C.

**Sterling's Response:**

**(12)**     Sterling admits that, on June 11, 2004, Plaintiff sent a letter to Sterling, which letter speaks for itself. *See* Def. 56.1 ¶ 13. Plaintiff fails to cite any admissible evidence in support of the remainder of this statement, and, therefore, Sterling disputes it and requests that it be stricken.

13.     At that time, Plaintiff provided Sterling with a photocopy of the following interior artwork and gameboard presentation from his New Zealand Book as a way of providing Sterling with a general understanding of the nature, style and uniqueness of the work:



SUF ¶ 14; Ederer Decl. ¶ 11, Ex. 9 [Defendants' Deposition Ex. 6]. (artwork at WARD000041).

***Sterling's Response*:**

(13)     Sterling admits that, in the summer of 2004, Plaintiff provided Sterling with a photocopy of the interior artwork and gameboard presentation from his New Zealand Book, as appears above. *See* Def. 56.1 ¶ 14. Plaintiff fails to cite any admissible evidence in support of the remainder of this statement, and, therefore, Sterling disputes it and requests that it be stricken.

14.     At the same time, Plaintiff informed Sterling that he held intellectual property rights, including copyrights, to the style and content of the New Zealand Book. Ederer Decl. ¶ 11, Ex. 9 [June 11, 2004 letter from Plaintiff to Sterling] ("I hold the world rights to this style of publication through patent & copyright protection").

*Sterling's Response*:

(14)    Sterling admits that, on June 11, 2004, Plaintiff sent a letter to Sterling, which letter speaks for itself. Def. 56.1 ¶ 16. Plaintiff fails to cite any admissible evidence in support of the remainder of this statement, and, therefore, Sterling disputes it and requests that it be stricken.

15.    After learning of the existence of intellectual property rights, Sterling's puzzles and games editor inquired as to the nature and geographic scope of Plaintiff's copyright protection. Plaintiff in turn, based on his narrow and limited knowledge of copyright protection and to his best ability, responded:

> Concerning protection, as I understand it copyright - which surpasses patent protection - is applicable world wide [sic], or at least to all the countries that have signed the World Trade Organization Treaty....

Ederer Decl. ¶ 12, Ex. 10 [July 7, 2004 email chain between Plaintiff and Sterling] at DEFS000237.

*Sterling's Response*:

(15)    Sterling admits that when Sterling's puzzles and games editor inquired as to the nature and geographic scope of Plaintiff's purported intellectual protection, Plaintiff responded with an email containing the language quoted above. *See* Def. 56.1 ¶ 17. Plaintiff fails to cite any admissible evidence in support of the remainder of this statement, and, therefore, Sterling disputes it and requests that it be stricken.

## IV.    WARD PROVIDED STERLING WITH PUBLISHING RIGHTS TO THE WORK WITHOUT GRANTING OWNERSHIP RIGHTS OR OR AUTHORSHIP RIGHTS TO STERLING.

16.    On October 14, 2004, Ward and Defendant Sterling entered into their first Publishing Agreement (the "2004 Agreement"). SUF ¶ 19; Ederer Decl. ¶ 13, Ex. 11 at

DEFS000223-227.

*Sterling's Response*:

**(16)**  Undisputed.  *See* Def. 56.1 ¶ 19.

17.  The 2004 Agreement provided, among other things, for Sterling's publication of six (6) single-player scratch-off Hangman books created based on Plaintiff Ward's book series. Ederer Decl. ¶ 13, Ex. 11 at Preamble.

*Sterling's Response*:

**(17)**  Sterling admits that the 2004 Agreement provided, among other things, for Sterling's publication of six (6) single-player scratch-off Hangman books, with text (*i.e.*, game words) to be supplied by Plaintiff.  *See* Def. 56.1 ¶ 21. Sterling further states, however, that the 2004 Agreement is devoid of any reference to "Plaintiff Ward's book series".  *See* Ederer Decl. ¶ 13, Ex. 11.  Plaintiff fails to cite any admissible evidence in support of the remainder of this statement, and, therefore, Sterling disputes it and requests that it be stricken.

18.  The 2004 Agreement further granted Sterling a perpetual option to publish two (2) additional single-player scratch-off Hangman books every six (6) months. SUF ¶ 21; Ederer Decl. ¶ 13, Ex. 11 at Preamble at DEFS000223.

*Sterling's Response*:

**(18)**  Sterling admits this statement, but adds, for purposes of clarification, that the 2004 Agreement further granted Sterling the perpetual option to publish two (2) additional single-player scratch-off Hangman books, with text (*i.e.*, game words) to be supplied by Plaintiff, every six (6) months.  *See* Def. 56.1 ¶ 21.

19.  Importantly, the 2004 Agreement, drafted by Sterling, provided:

> The publisher shall copyright the Work in the United States in the name of the Author.

13

Ederer Decl. ¶ 13, Ex. 11 ¶ 2 (DEFS000223).

**Sterling's Response:**

(19)     Sterling admits that the foregoing quoted language appears in the 2004 Agreement, but adds, for clarification, that the next sentence provides that to the extent Sterling "supplie[d] material for the [books] (such as illustrations)," Sterling was entitled to "copyright such material in its own name" — accordingly, the 2004 Agreement provided that Plaintiff's U.S. copyright in any single-player scratch-off Hangman game books published under his name would be limited only to the materials he supplied for those books (*i.e.*, game words). *See Def.* 56.1 ¶ 22. Plaintiff fails to cite any admissible evidence in support of the remainder of this statement, and, therefore, Sterling disputes it and requests that it be stricken.

20.     The 2004 Agreement also provided that where Sterling "supplie[d] material for the [books] (such as illustrations)", Sterling had the *option* to "copyright such material in its own name" Ederer Decl. ¶ 13, Ex. 11 ¶ 2 (DEFS000223) notably, Sterling never exercised this option nor did they ever pursue a claim of infringement when they were notified by Ward regarding the AMP matter. (See above at Response to 61, Footnote 1)

**Sterling's Response:**

(20)     Sterling admits that the 2004 Agreement states that to the extent Sterling "supplie[d] material for the [books] (such as illustrations)," Sterling was entitled to "copyright such material in its own name." *See Def.* 56.1 ¶ 22. Plaintiff fails to cite any admissible evidence in support of the remainder of this statement, and, therefore, Sterling disputes it and requests that it be stricken.

Furthermore, Plaintiff's "Response 61, Footnote 1" is not a proper response to Defendants' Statement of Undisputed Facts (Dkt. No. 22), but is more properly treated as an additional statement of undisputed fact by Plaintiff. That Response reads:

14

It is undisputed that Plaintiff notified the Sterling of his intention to pursue an alleged infringer Andrews McMeel Publishing for their publishing of an allegedly infringing work (Janay Decl. ¶ 10 Ex. H); Indeed, Plaintiff requested Defendant Sterling to participate in the enjoining efforts (Id.) which included a lawsuit in which plaintiff alleged *inter alia* that Andrews McMeel Publishing "willful(ly) and blatant(ly) (engaged in) acts of unfair competition and infringement of (Ward's) highly successful series of "Scratch & Solve Hangman" books published by Sterling Publishing Co., Inc. [internal quotations omitted] a subsidiary of Barnes & Noble [internal quotations omitted], for which Brainteaser owns several federally registered copyrights and widely recognized trade dress in the books' unique design." (*quoting* Ward v. Andrews McMeel Pub., LLC, 963 F. Supp. 2d 222, 233-34 (S.D.N.Y. 2013) quoting at ¶ 1. of the Complaint in that action. Resultantly Sterling abandoned or assigned right title and interest in the trade dress to Ward.

### Sterling's Response:

Sterling admits that Plaintiff alleged the following in paragraph 1 of his Complaint in the litigation with Andrews McMeel Publishing:

This action arises out of AMP's willful and blatant acts of unfair competition and infringement of Brainteaser's highly successful series of "Scratch & Solve Hangman" books published by Sterling Publishing Co., Inc. ("Sterling"), a subsidiary of Barnes & Noble (the "S&S Hangman Books"), for which Brainteaser owns several federally registered copyrights and widely recognized trade dress in the books' unique design.

Complaint ¶ 1, *Ward v. Andrews McMeel Publishing*, Case No. 1:12-cv-07987 (S.D.N.Y.).

Plaintiff fails to cite any admissible evidence in support of the remainder of this statement, and, therefore, Sterling disputes it and requests that it be stricken.

21.   The 2004 Agreement also contained a merger clause. SUF ¶ 23; Ederer Decl. ¶ 13, Ex. 11 ¶ 18 at DEFS000227.

### Sterling's Response:

**(21)**   Undisputed. *See* Def. 56.1 ¶ 23.

22.     On February 16, 2005, after the parties had entered into the 2004 Agreement, Sterling sent Plaintiff proofs of the works for review and approval, these titles became the first four (4) books in Sterling's "Scratch & Solve" Hangman series. The interior artwork and gameboard presentation for each of these books, developed by Sterling based on the game presentation, is depicted above at SUF ¶ 24. See SUF ¶ 24; Ederer Decl. ¶ 14, Ex. 12 at DEFS002305, DEFS002357.

*Sterling's Response*:

**(22)**     Sterling admits that on February 16, 2005, Sterling sent Plaintiff proofs of what were to become the first four (4) books in Sterling's "Scratch & Solve" Hangman series, such books to contain "words and phrases" contributed by Plaintiff. *See* Def. 56.1 ¶ 24.  It is undisputed, however, that Sterling developed the interior artwork and gameboard presentation for each of these books, and Plaintiff did not participate in that process. *See* Def. 56.1 ¶¶ 24-25. Plaintiff fails to cite any admissible evidence in support of the remainder of this statement, and, therefore, Sterling disputes it and requests that it be stricken.

23.     After reviewing the above artwork and presentation, Plaintiff Ward became concerned that there were modifications made to the game, and specifically, as to the number of chances a player would get before being hanged:

> I have received the proofs of the "Hangman" & "Tough Hangman"
> titles…. I see that the whole concept of the game has been
> changed; now players only have 5 chances before being hung,
> instead of the original 10.

SUF ¶ 25; Ederer Decl. ¶ 15, Ex. 13 at DEFS000387.

*Sterling's Response*:

**(23)**     Sterling admits that Plaintiff made the above statement in an email to Sterling, but clarifies that Plaintiff's concerns regarding Sterling's "modifications made to the game" arose

from the striking differences between the interior artwork created by Sterling, and the interior

artwork found in Plaintiff's New Zealand Book. *See* Def. 56.1 ¶ 25.

24.     In response to Plaintiff's concern with the modification, Sterling's Senior

Acquisition Editor, Peter Gordon, explained that the modifications were necessary simply to

conform the game to American tradition:

> Were [sic] in America, the traditional way is you get six wrong
> guesses (head, torso, left arm, right arm, left leg, right leg) before
> you are hanged....Solvers can give themselves more turns as they
> want, but we will stick with the traditional allotment of six wrong
> guesses in the book.

Ederer Decl. ¶ 13, Ex. 13 at DEFS00387.

**Sterling's Response:**

**(24)**    Sterling admits that Sterling's Senior Acquisition Editor, Peter Gordon, responded

to Plaintiff's email by writing:

> Here in America, the traditional way to play is you get six wrong
> guesses (head, torso, left arm, right arm, left leg, right leg) before
> you are hanged.... Solvers can give themselves more turns as they
> want, but we will stick with the traditional allotment of six wrong
> guesses in the book.

Ederer Ex. 13 at DEFS000390.  Plaintiff fails to cite any admissible evidence in support of the

remainder of this statement, and, therefore, Sterling disputes it and requests that it be stricken.

25.     On September 1, 2005, after Plaintiff agreed to all stylistic modifications, Sterling

published its first single-player scratch-off Hangman book in its "Scratch & Solve" Hangman

series. This book was entitled *Scratch & Solve Hangman #1*. Ederer Decl. ¶ 30, Ex. 28 at

DEFS000076. Plaintiff's name appeared on the cover of the book. SUF ¶ 26 (Images of the cover

artwork, and interior artwork and gameboard pages of Scratch & Solve Hangman #1); Ederer

Decl. ¶ 16, Ex. 14.

*Sterling's Response*:

(25)    Sterling admits that, on September 1, 2005, Sterling published the first single-player scratch-off Hangman book in its "Scratch & Solve" Hangman series, titled *Scratch & Solve Hangman #1*, and that Plaintiff's name appeared on the cover of the book. *See* Def. 56.1 ¶ 26. Plaintiff fails to cite any admissible evidence in support of the remainder of this statement — namely, that "Plaintiff agreed to all stylistic modifications" to Sterling's interior artwork and gameboard presentation — and, therefore, Sterling disputes it and requests that it be stricken.

26.    The publishing agreements obligated Sterling to obtain copyright registrations for the Works in the authors name, however Sterling could elect to register materials they supplied or contributed to the Work (such as illustrations) in their own name. Ederer Decl. ¶ 13, Ex. 11; Ederer Decl. ¶ 22, Ex. 20.

*Sterling's Response*:

(26)    Sterling admits that, pursuant to the terms of the 2004 Agreement, Sterling was to register U.S. copyrights in single-player scratch-off Hangman books published under Plaintiff's name, except to the extent Sterling "supplie[d] material for the [books] (such as illustrations)", in which case Sterling was entitled to "copyright such material in its own name" — accordingly, the 2004 Agreement provided that Plaintiff's U.S. copyright in any single-player scratch-off Hangman game books published under his name would cover only the material he contributed to those books, namely, the text, or game words. *See* Def. 56.1 ¶ 22.

27.    The Works are a unique tangible expression of an original idea of a one-player hangman game, they are a puzzle book with a scratch-off element, with the drawing of a hangman on one side and the answers on the other; the series involved various difficulty levels for separate titles; the Work was first introduced to Sterling by Plaintiff, Sterling however

obtained a registration for a trademark ownership over "Scratch & Solve" in its own name. Ederer Decl. ¶ 31, Ex. 29 at DEFS000210.

**Sterling's Response:**

(27)   Sterling admits that "Scratch & Solve" is a registered trademark of Sterling. *See* Def. 56.1 ¶ 29.  Plaintiff fails to cite any admissible evidence in support of the remainder of this statement, and, therefore, Sterling disputes it and requests that it be stricken.

28.   Although the publishing agreements provided the option for Sterling to register copyrights in their own name for materials they supplied however they did not do so and they did not pursue potential infringers.

**Sterling's Response:**

(28)   Plaintiff fails to cite any admissible evidence in support of this statement, and, therefore, Sterling disputes it and requests that it be stricken.

29.   After a successful sales campaign of the first issues of Plaintiff's Hangman books, Plaintiff and Sterling entered into several extensions to the 2004 Agreement covering additional "Scratch & Solve" Hangman books to be published under Plaintiff's name. Ederer Decl. ¶ 18, Ex. 16 at DEFS002685-2694.

**Sterling's Response:**

(29)   Sterling admits that Plaintiff and Sterling entered into several extensions to the 2004 Agreement covering additional "Scratch & Solve" Hangman books to be published with game words contributed by Plaintiff. *See* Def. 56.1 ¶ 28.  Plaintiff fails to cite any admissible evidence in support of the remainder of this statement, and, therefore, Sterling disputes it and requests that it be stricken.

30.   On or about April 12, 2012, Plaintiff and Sterling entered into a new contractual agreement (the "2012 Agreement") giving Sterling Publishing rights to two new books to be

published under Plaintiff's name as part of the "Scratch & Solve" Hangman series — *Hangman In The Moon* and *Tough Hangman In The Moon.* Ederer Decl. ¶ 19, Ex. 17 at DES002695-2700.

**Sterling's Response:**

(30)    Undisputed. *See* Def. 56.1 ¶ 30.

31.    In line with the uncontested ownership and authorship of the Hangman Series by Plaintiff, the preamble to the 2012 Agreement, drafted by Sterling, provides:

> This agreement...is made and entered into by and between STERLING PUBLISHING CO., INC. ("Publisher")...and MICHAEL WARD...the author of two (2) works (as further described below) tentatively entitled: "HANGMAN IN THE MOON" ("Book #1") and "TOUGH HANGMAN IN THE MOON" ("Book #2")....

Ederer Decl. ¶ 19, Ex. 17 at DEFS002695.

**Sterling's Response:**

(31)    Sterling admits that the above provision appears in the 2012 Agreement, but adds, for purposes of clarification, that the 2012 Agreement defines "Book #1" and "Book #2" as follows:

> Book #1 shall be described as follows: 100 new and original puzzle words to fill 96 pages.  Book #2 shall be describes as follows: 100 new and original puzzle words to fill 96 pages.

Ederer Ex. 17 at DEFS002695.  Plaintiff fails to cite any admissible evidence in support of the remainder of this statement — namely, "the uncontested ownership and authorship of the Hangman Series by Plaintiff" — and, therefore, Sterling disputes it and requests that it be stricken.

32.    In light of the well-known fact that Plaintiff is the rightful owner and author of the Hangman Series, the first clause of the 2012 Agreement, drafted by Sterling, provides for the assignment and grant of Plaintiff's ownership rights to Sterling:

> Author grants and assigns to Publisher, during the full term of
> copyright and any renewal thereof, the sole and exclusive right to
> produce, manufacture, print, publish, distribute, market and sell
> each Work....

Ederer Decl. ¶ 19, Ex. 17 at DEFS002695 [2012 Agreement, Clause (1)(a)].

### *Sterling's Response*:

**(32)**     Sterling admits that the foregoing provision appears in the 2012 Agreement, but

adds, for purposes of clarification, that Book #1 and Book #2 each comprise a "Work" pursuant

to that Agreement (Ederer Ex. 17 at DEFS002695), and also that Book #1 and Book #2 are

defined as discussed in Sterling's Response to Paragraph 31 above.  Plaintiff fails to cite any

admissible evidence in support of the remainder of this statement — including, without

limitation, the purported "well-known fact that Plaintiff is the rightful owner and author of the

Hangman Series" — and, therefore, Sterling disputes it and requests that it be stricken.

33.     Sterling drafted the 2012 Agreement with only a brief description of the books to

be published in terms of words and pages, without any limitations or specification as to

ownership rights:

> Book #1 shall be described as follows: 100 new and original
> puzzle words to fill 96 pages. Book #2 shall be described as
> follows: 100 new and original puzzle words to fill 96 pages.

Ederer Decl. ¶ 19, Ex. 17 ¶¶ 1 at DEFS002695 [2012 Agreement, Clause (1)(2)].

### *Sterling's Response*:

**(33)**     Sterling admits that the foregoing provision appears in the 2012 Agreement.

Sterling disputes, however, that the 2012 Agreement contained no limitation or specification as

to Plaintiff's contribution or subsequent ownership rights.  Rather, the 2012 Agreement provides

that Sterling will register a copyright in Ward's name only in the "Work[s]," where Book #1 and

Book #2 each comprise a "Work", as discussed in Sterling's Response to Paragraph 32 above,

and where Plaintiff's contribution to Book #1 and Book #2 is defined in the above provision as "puzzle words". *See* Ederer Decl. Ex. 17.

34.     On or about January 22, 2013, Plaintiff and Sterling entered into a new Publishing Agreement (the "2013 Agreement") for two new books to be authored by Plaintiff and published under his name as part of the "Scratch & Solve" Hangman series — *Scratch & Solve Hangman Of Leisure* and *Scratch & Solve Tough Hangman Of Leisure*. Ederer Decl. ¶ 20, Ex. 18 at DEFS002701-2706.

*Sterling's Response*:

(34)    Undisputed. *See* Def. 56.1 ¶ 33.

35.     Similar to the format of the 2012 Agreement, the 2013 Agreement, drafted by Sterling, in its preamble attributes authorship in the two books to Plaintiff:

> This agreement...is made and entered into by and between
> STERLING PUBLISHING CO., INC. ("Publisher")...and
> MICHAEL WARD...the author of two (2) works (as further
> described below) tentatively entitled: "SCRATCH & SOLVE
> HANGMAN OF LEISURE" ("Book #1") and "SCRATCH &
> SOLVE TOUGH HANGMAN OF LEISURE" ("Book #2")....

Ederer Decl. ¶ 20, Ex. 18 [2013 Agreement preamble] at DEFS002701.

*Sterling's Response*:

(35)    Sterling admits that the foregoing provision appears in the 2013 Agreement, but adds, for purposes of clarification, that the 2013 Agreement defines "Book #1" and "Book #2" as follows:

> Book #1 shall be described as follows: sufficient list of words and
> phrases to fill 96 pages.  Book #2 shall be describes as follows:
> sufficient list of words and phrases to fill 96 pages.

Ederer Ex. 18 at DEFS002701.

36.     In addition, the first clause of the 2013 Agreement mirrors that of the 2012

Agreement in expressly providing for the assignment and grant of Plaintiff's ownership and

authorship rights in the books to Sterling:

> Author grants and assigns to Publisher, during the full term of
> copyright and any renewal thereof, the sole and exclusive right to
> produce, manufacture, print, publish, distribute, market and sell
> each Work....

Ederer Decl. ¶ 20, Ex. 18 ¶¶ 1 at DEFS002701.

### *Sterling's Response*:

(36)    Sterling admits that the foregoing provision appears in the 2013 Agreement, but

adds, for purposes of clarification, that Book #1 and Book #2 each comprise a "Work" pursuant

to that Agreement (*see* Ederer Ex. 18 at DEFS002701), and also that Book #1 and Book #2 are

defined as discussed in Sterling's Response to Paragraph 35 above.  Plaintiff fails to cite any

admissible evidence in support of the remainder of this statement, and, therefore, Sterling

disputes it and requests that it be stricken.

37.     Furthermore, without placing any limitation on the contributions of Plaintiff

Ward, Sterling drafted the book descriptions in the 2013 Agreement as follows:

> Book #1 shall be described as follows: sufficient list of words and
> phrases to fill 96 pages. Book #2 shall be described as follows:
> sufficient list of words and phrases to fill 96 pages.

Ederer Decl. ¶ 20, Ex. 18 ¶¶ 1 at DEFS002701 [2013 Agreement, Clause (1)(b)].

### *Sterling's Response*:

(37)    Sterling admits that the foregoing provision appears in the 2013 Agreement.

Sterling disputes, however, that the 2013 Agreement did not contain "any limitation" on

Plaintiff's contributions.  Rather, the 2013 Agreement provides that Plaintiff is to be the author

of Book #1 and Book #2, which are each described as a "sufficient list of words and phrases to

fill 96 pages". Ederer Decl. Ex. 18. Plaintiff fails to cite any admissible evidence in support of the remainder of this statement — namely, that Plaintiff's contributions to Book #1 and Book #2 under the 2013 Agreement were not limited to a "sufficient list of words and phrases to fill 96 pages" — and, therefore, Sterling disputes it and requests that it be stricken.

## V.    WORKS PUBLISHED BY STERLING BASED ON PLAINTIFF'S SCRATCH-HANGMAN SERIES WITHOUT PLAINTIFF'S AUTHORIZATION.

38.    On or about May 28, 2009, Defendant Sterling, without notifying plaintiff, entered into a publishing agreement with Defendant Francis Heaney for a Work tentatively entitled *Trivia Hangman*. Ederer Decl. ¶ 23, Ex. 21 [Sterling/Heaney publishing agreement].

### *Sterling's Response*:

**(38)**    Sterling admits that it entered into a publishing agreement with Francis Heaney, on or about May 28, 2009, for a work tentatively entitled *Trivia Hangman*. *See* Def. 56.1 ¶ 36. Sterling disputes, however, any implication that Sterling had an obligation to notify Plaintiff of its agreement with Heaney. *See* Ederer Decl. Ex. 11. Plaintiff fails to cite any admissible evidence in support of the remainder of this statement, and, therefore, Sterling disputes it and requests that it be stricken.

39.    On or about October 5, 2010, Defendant Sterling published *Trivia Hangman* as part of the "Scratch & Solve" Hangman series, with an identical gameplay, interior elements, use of the scratch-off feature to play the hangman game, and countless other similarities to the works Authored by Plaintiff Ward all done without his knowledge or consent. ¶ 30, Ex. 28 at DEFS000150-51; SUF ¶ 38 (Images of the cover artwork and the interior artwork of *Trivia Hangman*).

**Sterling's Response:**

(39)    Sterling admits that, on or about October 5, 2010, Sterling published *Trivia Hangman* as part of its "Scratch & Solve" Hangman series, and that its *Trivia Hangman* book includes interior artwork and a gameboard presentation that is similar in appearance to the interior artwork and gameboard presentation that Sterling developed and contributed to other books in its "Scratch & Solve" Hangman series, including, *Scratch & Solve Hangman #1*. *Compare* Def. 56.1 ¶¶ 24, 26, *with* 56.1 ¶ 38. Sterling, however, disputes that Plaintiff participated in the development of, much less authored, the interior artwork or gameboard presentation created by Sterling and used across its "Scratch & Solve" Hangman series. *See* Def. 56.1 ¶¶ 24-27.

40.    Plaintiff first learned of Sterling's publication of *Trivia Hangman* in or around "late 2011". Ederer Decl. ¶ 7, Ex. 5 [Supplemental Response to [Defendants'] Request for the Production of Documents] at Response to Request No. 51.

**Sterling's Response:**

(40)    Undisputed. *See* Def. 56.1 ¶ 39.

41.    The cover artwork, interior artwork, and game presentation, as well as, the concepts, depictions and content, reproduced in *Trivia Hangman* contain identical elements and are substantially similar to both Plaintiff's New Zealand work and the U.S. series that he is the author and proprietor of. Ederer Decl. ¶ 6, Ex. 4 at 19:21-25, 20:14-18, 23:16-23.

**Sterling's Response:**

(41)    Plaintiff's statement is not a statement of fact, but rather an unsupported legal conclusion. Notwithstanding this, Sterling disputes that its *Trivia Hangman* title contains any elements that are identical or substantially similar to any copyrightable elements found in Plaintiff's New Zealand Book. *Compare* Def. 56.1 ¶ 9, *with* Def. 56.1 ¶ 38. As for Plaintiff's

statement that Sterling's *Trivia Hangman* title contains elements that are substantially similar to "Plaintiff's Scratch-Hangman series", Plaintiff owns no rights in or to Sterling's "Scratch & Solve" Hangman series beyond the "text" (*i.e.*, game words) that he contributed to the Sterling books for which his was listed as author. *See, e.g.*, Def. 56.1 ¶ 27. In fact, Sterling, not Plaintiff, developed the cover artwork, interior artwork and gameboard presentation used across Sterling's "Scratch & Solve" Hangman series (*see* Def. 56.1 ¶ 24), and Plaintiff has acknowledged the striking differences between the interior artwork and gameboard presentation in his New Zealand Book and the interior artwork and gameboard presentation created by Sterling (*see* Def. 56.1 ¶ 25). In addition, Plaintiff fails to cite any admissible evidence in support of these statements, and, therefore, Sterling disputes them and requests that they be stricken.

42.     On or about November 1, 2011, Sterling published *Hollywood Hangman* as part of the "Scratch & Solve" Hangman series without consulting with Plaintiff Ward or providing for a profit sharing structure. Ederer Decl. ¶ 30, Ex. 28 at DEFS000145-46; Janay Decl. ¶ 14, Ex. L at WARD000006; SUF ¶ 43 ( Images of the cover artwork, and the interior artwork and gameboard pages of *Hollywood Hangman*).

**Sterling's Response:**

**(42)**     Sterling admits that, on or about November 1, 2011, Sterling published *Hollywood Hangman* as part of its "Scratch & Solve" Hangman series. *See* Def. 56.1 ¶ 42. Sterling disputes, however, any implication that Sterling had an obligation to "consult[] with Plaintiff Ward or provid[e] for a profit sharing structure" with respect to its publication of *Hollywood Hangman*. *See* Ederer Decl. Ex. 11. Plaintiff fails to cite any admissible evidence in support of the remainder of these statements and, therefore, Sterling disputes them and requests that they be stricken.

43. Plaintiff first learned of Sterling's publication of *Hollywood Hangman* in or around "early 2012". Ederer Decl. ¶ 7, Ex. 5 [Supplemental Response to [Defendants'] Request for the Production of Documents] at Response to Request No. 51.

**Sterling's Response:**

**(43)** Undisputed. *See* Def. 56.1 ¶ 44.

44. The cover artwork, interior artwork, and game presentation, as well as, the concepts, depictions and content, reproduced in *Hollywood Hangman* contain identical elements and are substantially similar to Plaintiff's Scratch-Hangman series and the New Zealand Book, and as a result they infringe on Plaintiff's copyrights. Ederer Decl. ¶ 30, Ex. 28 at DEFS000145-146; Janay Decl. ¶ 14, Ex. L at WARD000006.

**Sterling's Response:**

**(44)** Plaintiff's statement is not a statement of fact, but rather an unsupported legal conclusion. Notwithstanding this, Sterling disputes that its *Hollywood Hangman* title contains any elements that are identical or substantially similar to any copyrightable elements found in Plaintiff's New Zealand Book. *Compare* Def. 56.1 ¶ 9, *with* Def. 56.1 ¶ 43. As for Plaintiff's statement that Sterling's *Hollywood Hangman* title contains elements that are substantially similar to "Plaintiff's Scratch-Hangman series", Plaintiff owns no rights in or to Sterling's "Scratch & Solve" Hangman series beyond the "text" (*i.e.*, game words) that he contributed to the Sterling books for which he was listed as author. *See, e.g.*, Def. 56.1 ¶ 27. In fact, Sterling, not Plaintiff, developed the cover artwork, interior artwork and gameboard presentation used across Sterling's "Scratch & Solve" Hangman series (*see* Def. 56.1 ¶ 24), and Plaintiff has acknowledged the striking differences between the interior artwork and gameboard presentation in his New Zealand Book and the interior artwork and gameboard presentation created by Sterling (*see* Def. 56.1 ¶ 25). In addition, Plaintiff fails to cite any admissible evidence in

27

support of these statements, and, therefore, Sterling disputes them and requests that they be stricken.

45.     On or about February 5, 2013, Sterling published three (3) additional books in the "Scratch & Solve" Hangman series under the pseudonym "Jack Ketch" — *Science Hangman*, *Geography Hangman*, and *Spelling Bee Hangman*, again, Sterling did not consult with or provide for profit sharing with Plaintiff Ward.  Ederer Decl. ¶ 30, Ex. 28 at DEFS000153-158; Ederer Decl. ¶ 27, Ex. 25; Ederer Decl. ¶ 28, Ex. 26; Ederer Decl. ¶ 29, Ex. 27, Janay Decl. ¶ 13, Ex. K at WARD000007-011; SUF ¶ 47 (Images of the cover artwork, and the interior artwork and gameboard pages of *Science Hangman*); SUF ¶ 48 (Images of the cover artwork, and the interior artwork and gameboard pages of *Geography Hangman*); SUF ¶ 49 (Images of the cover artwork, and the interior artwork and gameboard pages of *Spelling Bee Hangman*).

**Sterling's Response:**

**(45)**     Sterling admits that, on or about February 5, 2013, Sterling published three (3) additional books in its "Scratch & Solve" Hangman series under the pseudonym "Jack Ketch" — *Science Hangman, Geography Hangman*, and *Spelling Bee Hangman*. *See* Def. 56.1 ¶ 46. Sterling disputes, however, any implication that Sterling had an obligation to "consult with or provide for a profit sharing with Plaintiff Ward" with respect to these publications. *See* Ederer Decl. Ex. 11. Plaintiff fails to cite any admissible evidence in support of the remainder of these statements, and, therefore, Sterling disputes them and requests that they be stricken.

46.     The instructional text of at least one of the Works is identical to that of the instructional text of Plaintiff's Scratch & Solve Works:

| Playing instructions found in Plaintiff Mike Ward's *Tough Hangman* | Playing instructions found in Sterling's pseudonym author "Jack Ketch's" *Science Hangman* |
|---|---|
| **How To Play Hangman**<br>It's simple, easy, and fun. Your goal is to fill in the missing letters at the bottom of each puzzle before the body in the gallows is completed. Scratch the silver oval below one of the letters of the alphabet. (Note: it's best not to leave the book in the sun, which may cause the ovals to become dry and harder to scratch off.) If the letter you guessed is correct, a number--or more than one number--will tell you where to enter this letter in the word or words below. If you are wrong, you'll see a bold **X** to indicate that your guess is incorrect (you'll just have to imagine the game-show-style buzzer sound effect), in which case you must fill in one of the dotted lines on the body in the gallows.<br><br>There are six parts to the body--two arms, two legs, the torso, and the head. If you find all the letters in the complete word or phrase before you have to fill in six body parts, you win! If not ....<br><br>Good luck! | **How To Play Hangman**<br>It's simple, easy, and fun. Your goal is to fill in the missing letters at the bottom of each puzzle before the body in the gallows is completed. Scratch the silver oval below one of the letters of the alphabet. (Note: it's best not to leave the book in the sun, which may cause the ovals to become dry and harder to scratch off.) If the letter you guessed is correct, a number--or more than one number--will tell you where to enter this letter in the word or words below. If you are wrong, you'll see a bold **X** to indicate that your guess is incorrect (you'll just have to imagine the game-show-style buzzer sound effect), in which case you must fill in one of the dotted lines on the body in the gallows.<br><br>There are six parts to the body--two arms, two legs, the torso, and the head. If you find all the letters in the complete word or phrase before you have to fill in six body parts, you win! If not ....<br><br>Good luck! |

Janay Decl. ¶ 34, Ex. FF.

**Sterling's Response:**

(46)   Sterling admits that the player instructions found in its *Tough Hangman* and *Science Hangman* titles are identical, but disputes any insinuation that Plaintiff contributed in any way, much less authored, the player instructions that appear in *Tough Hangman*. Furthermore, it is telling that the player instructions in Plaintiff's New Zealand Book (*see* Ederer Decl. Ex. 3) bear no resemblance to the player instructions that appear in any of Sterling's "Scratch & Solve" Hangman books (*see* Janay Decl. Ex. FF).  Plaintiff fails to cite any

admissible evidence that he authored the player instructions that appear in *Tough Hangman*, and, therefore, Sterling requests that this statement be stricken.

47.     The cover artwork, interior artwork, instructional text, and game presentation, as well as, the concepts, depictions and content, reproduced in *Science Hangman*, *Geography Hangman*, and *Spelling Bee Hangman,* contain identical elements and are substantially similar to Plaintiff's Scratch-Hangman series and the New Zealand Book, and, therefore infringe on Plaintiff's copyrights. Ederer Decl. ¶ 5, Ex. 3 [Defendants' Deposition] at WARD000039; Janay Decl. ¶ 13, Ex. K at WARD000005-13.

**Sterling's Response:**

(47)     Plaintiff's statement is not a statement of fact, but rather an unsupported legal conclusion.  Notwithstanding this, Sterling disputes that its *Science Hangman*, *Geography Hangman*, and *Spelling Bee Hangman* titles contain any elements that are identical or substantially similar to any copyrightable elements found in Plaintiff's New Zealand Book. *Compare* Def. 56.1 ¶ 9, *with* Def. 56.1 ¶¶ 47-49.  As for Plaintiff's statement that Sterling's *Science Hangman*, *Geography Hangman*, and *Spelling Bee Hangman* titles contain elements that are substantially similar to "Plaintiff's Scratch-Hangman series", Plaintiff owns no rights in or to Sterling's "Scratch & Solve" Hangman series beyond the "text" (*i.e.*, game words) that he contributed to the Sterling books for which he was listed as author. *See, e.g.*, Def. 56.1 ¶ 27.  In fact, Sterling, not Plaintiff, developed the cover artwork, interior artwork and gameboard presentation used across Sterling's "Scratch & Solve" Hangman series (*see* Def. 56.1 ¶ 24), and Plaintiff has acknowledged the striking differences between the interior artwork and gameboard presentation in his New Zealand Book and the interior artwork and gameboard presentation created by Sterling (*see* Def. 56.1 ¶ 25).  In addition, Plaintiff fails to cite any admissible evidence in support of these statement, including, without limitation, any evidence indicating

that he authored the player instructions, and, therefore, Sterling disputes them and requests that they be stricken.

## VI. PLAINTIFF'S REACTION TO THE UNAUTHORIZED PUBLISHING OF THE BOOKS DESCRIBED ABOVE AND THE SUBSEQUENT RESPONSE BY STERLING.

48.     After discovering the publication of the five books described above, Plaintiff complained to Sterling about publishing plaintiff's book series without plaintiff's agreement and without sharing profits with plaintiff. Janay Decl. ¶ 17 at WARD000060-065.

### *Sterling's Response*:

**(48)**     Sterling admits that Plaintiff first complained to Sterling about its publication of the complained-of books long after Plaintiff discovered them, and clarifies that Plaintiff first contacted Sterling regarding the complained-of books on April 30, 2013 (*see* Def. 56.1 ¶ 72), despite having first learned of Sterling's publication of *Trivia Hangman* in or around "late 2011" (*see* Def. 56.1 ¶ 39) and *Hollywood Hangman* in or around "early 2012" (*see* Def. 56.1 ¶ 44). Plaintiff fails to cite any admissible evidence in support of the remainder of this statement — namely, that "Plaintiff complained to Sterling about publishing plaintiff's book series without plaintiff's agreement and without sharing profits with plaintiff" — and, therefore, Sterling disputes it and requests that it be stricken.

49.     In or around August 2013, Defendant Sterling offered Plaintiff to resume publishing Plaintiff's "Scratch & Solve" Hangman series (with Plaintiff as the author) with a new book, tentatively entitled *Scratch & Solve Underwater Hangman* (Also Scratch & Solve Prime Time). Janay Decl. ¶ 17, Ex. O at WARD000066-067.

### *Sterling's Response*:

**(49)**     Sterling admits that on or about August 20, 2013, Sterling's Senior Acquisition Editor, Peter Gordon, sent an email to Plaintiff stating:

> Just wanted to let you know that we're picking up the option again
> for two more hangman books for Fall 2014. We'll get you a
> contract shortly. The series will continue for Fall 2014 with these
> two book (and the Underwater and Prime Time books may also be
> published in Fall 2014), and I'll let you know by the end of
> February 2014 about Spring 2015.

Janay Decl. Ex. P, at DEFS002768. However, Sterling disputes that Mr. Gordon's August 20,

2013 email constituted an offer from Sterling, rather stating that Mr. Gordon's email was

Sterling's acceptance of Plaintiff's proposal to resolve "the current impasse relating to the

hangman books". Janay Decl. Ex. O, at WARD000066. Indeed, on June 15, 2013, Plaintiff sent

an email to Sterling's Senior Acquisition Editor, Peter Gordon, stating:

> To solve the current impasse relating to the hangman books, I have
> a suggestion that will resolve the current situation:-
>
> The suggestion is that the two Jack Ketch/Sterling titles - *Prime
> Time and Underwater Hangman* - still be issued as previously
> scheduled, with their royalties redirected to me, then further
> contracts to be drawn up for next year to achieve the continuity of
> this title, which would be to everyone's benefit.
>
> Let me know what you think of this proposal…Mike

Janay Decl. Ex. O, at WARD000066. After not receiving an immediate response from Mr.

Gordon, Plaintiff forwarded his June 15, 2013 email to Sterling's Executive Vice President,

Theresa Thompson, on June 26, 2013, stating, in part:

> I sent the enclosed email to Peter Gordon last Monday with a
> suggestion to resolve the impasse in relation to the current
> Hangman saga.

Janay Decl. Ex. O, at WARD000067.

As stated above, Mr. Gordon's August 20, 2013 email to Plaintiff was Sterling's

acceptance of Plaintiff's proposal to resolve "the current impasse relating to the hangman

books". Sterling's Director of Legal Affairs, Gillian Berman, Esq., confirmed as much in her

September 18, 2013 email to Plaintiff, stating, in part:

> We have accepted your offer of June 15 and would like to proceed
> with executing the related paperwork.  I hope to hear from you
> soon with any changes you wish to request to the documents sent
> to you or signed copies if you decide the terms are acceptable as
> provided.

Janay Decl. Ex. O, at DEFS002766.

As Plaintiff fails to cite any admissible evidence in support of his statement that Sterling

made an "offer[]" to Plaintiff, Sterling disputes it and requests that it be stricken.  Moreover, the

"evidence" Plaintiff's cites in support of this statement is inadmissible under Federal Rule of

Evidence 408(a).

50.     The draft 2013 Agreement, drafted by Sterling, for the publishing of *Underwater*

*Hangman* (hereinafter "Draft 2013 Agreement"), for the first time in the parties' long contractual

relationship, provided for any sort of limitation to Ward's expected contribution:

> The Work shall be described as follows: sufficient list of words
> and phrases to fill 96 pages. It is understood and agreed that
> Publisher shall provide materials and content for the Work.

Janay Decl. ¶ 11, Ex. I at DEFS002782-787 [Complaint, Ex. A].

***Sterling's Response:***

(50)     Sterling disputes this statement on the basis that Plaintiff's prior two agreements

with Sterling, executed on or about April 12, 2012 and January 22, 2013, contain virtually

identical language with respect to Plaintiff's contribution to the books covered by those

Agreements. *See* Def. 56.1 ¶¶ 30-31, 33-34.  In fact, under the April 12, 2012 Agreement, the

"Works" to be covered by that Agreement, and Plaintiff's contribution to each such book, was

limited to "100 new and original puzzle words to fill 96 pages" (*see* Def. 56.1 ¶ 31), and,

pursuant to the January 22, 2013 Agreement, the "Works" to be covered by that Agreement, and

Plaintiff's contribution to each such book, was limited to a "sufficient list of words and phrases

to fill 96 pages" (*see* Def. 56.1 ¶ 34).

51.    In addition to the Draft 2013 Agreement — and for the first time in the parties' extensive contractual relationship — Sterling also drafted and requested Plaintiff to sign a RELEASE as a condition to entering into the Draft 2013 Agreement. Janay Decl. ¶ 11, Ex. I at DEFS002782-2787.

***Sterling's Response:***

**(51)**    Sterling admits that it provided Plaintiff with a draft release relating to Plaintiff's claims against Sterling.  Sterling, however, disputes the admissibility of this "evidence" under Federal Rule of Evidence 408(a), as it was proposed by Sterling as part of an attempt to compromise Plaintiff's claim.

52.    The RELEASE, among other things, contained the following language:

> **MICHAEL WARD** ("Releasor")....does hereby RELEASE and DISCHARGE, Sterling and its current and former officers, directors....from or in connection with, and hereby waives and/or settles, any and all actions, causes, suits debts, sums of money, accounts...in connection with the allegedly unauthorized publication and sale of *SCRATCH HANGMAN* and *SCRATCH & SOLVE HANGMAN* books by authors other than the Releasor, including without limitation claims for copyright infringement, trademark or trade dress infringement, unfair competition, damages and/or attorneys' fees. For Clarity, it is agreed and understood that Sterling may continue to sell all *SCRATCH HANGMAN* and *SCRATCH & SOLVE HANGMAN* books by authors other than Releasor that Sterling published prior to the execution of this Release.

Janay Decl. ¶ 11, Ex. I at DEFS002782.

***Sterling's Response:***

**(52)**    Sterling admits that it provided Plaintiff with a draft release relating to Plaintiff's claims against Sterling that contained the above provision, but disputes the admissibility of this "evidence" under Federal Rule of Evidence 408(a), as the draft release was proposed by Sterling as part of an attempt to compromise Plaintiff's claim.

53.     Plaintiff refused to enter into the Draft 2013 Agreement, as well as the

RELEASE, because he believed that the new format of the contractual agreement was an attempt

by Sterling to take advantage of him. Janay Decl. ¶ 11, 12, 18.

> Secondly, your revised contracts had amendments made to them
> which were unacceptable, compared to previous contracts that you
> have drawn up.

Janay Decl. ¶ 18, Ex. P (DEFS002766-2769).

### Sterling's Response:

**(53)**    As Plaintiff fails to cite any admissible evidence in support of his statement that

"he believed that the new format of the contractual agreement was an attempt by Sterling to take

advantage of him", Sterling disputes it and requests that it be stricken.  Moreover, the "evidence"

Plaintiff's cites in support of this statement is inadmissible under Federal Rule of Evidence

408(a).

## VII.     COPYRIGHT INFRINGEMENT

54.     Plaintiff Ward does not allege a cause of action for patent infringement with

respect to his "idea" for a single-player scratch-off Hangman game.  Ederer Decl. ¶ 3, Ex. 1.

### Sterling's Response:

**(54)**    Undisputed.  *See* Def. 56.1 ¶ 52.

55.     Plaintiff's copyright infringement claims in this action are in part based on his

New Zealand copyright in his New Zealand work, which is enforceable in the United States

pursuant to international treaty.  Ederer Decl. ¶ 6, Ex. 4 at 11:3-25; 17:17-20; 78:20-25, Janay

Decl. ¶ 31, Ex. CC.

### Sterling's Response:

**(55)**    Sterling admits that Plaintiff's copyright infringement claims are based

exclusively on his purported unregistered New Zealand copyright in this New Zealand Book,

which he seeks to enforce in the United States pursuant to international treaty (*see* Def. 56.1 ¶¶

10, 53), but disputes that Ward has asserted infringement claims based on purported rights under

the copyright laws of any other country, including, without limitation, any U.S. copyright. *See*

Def. 56.1 ¶ 11; Ederer Decl. ¶ 6, Ex. 4 at 11:15-25 ("Q. [T]he copyright registration on which

you're basing your claim against my clients in this case is your New Zealand copyright? A.

Yes…. Q. Are you asserting any other copyright registrations against my client? A. No."). As

Plaintiff fails to cite any admissible evidence in support of his statement that his copyright claims

are based only "in part" on his purported New Zealand copyright, Sterling disputes it and

requests that it be stricken.

    56.     Additionally Plaintiff's copyright infringement claims is based on Plaintiff's

United States copyrights obtained for Plaintiff by Sterling for the Works published under the

"Scratch & Solve" series which Ward is the proprietor of.  Janay Decl. ¶ 28, Ex. Z.

    ***Sterling's Response***:

    **(56)**    Sterling disputes Plaintiff's contention that his infringement claims are based on

U.S. copyrights.  In fact, Plaintiff testified at his deposition that his infringement claims were not

based on any U.S. copyrights. *See* Def. 56.1 ¶ 53; Ederer Decl. ¶ 6, Ex. 4 at 11:15-25 ("Q. [T]he

copyright registration on which you're basing your claim against my clients in this case is your

New Zealand copyright?  A. Yes…. Q. Are you asserting any other copyright registrations

against my client?  A. No.").  Indeed, the only copyrights ever registered in Plaintiff's name in

the U.S. merely cover the "text" (*i.e.*, game words) Plaintiff contributed to such books. *See* Def.

56.1 ¶ 73.  Sterling further disputes that Plaintiff is the "proprietor" of Sterling's "Scratch &

Solve" series; in fact, Sterling is the proprietor of that series, and "Scratch & Solve" is a

registered trademark of Sterling. *See* Def. 56.1 ¶ 29.  As Plaintiff fails to cite any admissible

evidence in support of his statements that (a) his copyright infringement claims in this action are

based on anything other than his purported unregistered New Zealand copyright; and (b) that he is the "proprietor" of Sterling's "Scratch & Solve" series, Sterling disputes them and requests that they be stricken.

57.     Defendant Sterling used plaintiff's unique concept, layout, gameplay, and similar graphical elements involved in his one player hangman games, the similar combination of elements which include but are not limited to: a book completely devoted to hangman game puzzles, using silver scratch-off ink to conceal answers (akin to an instant lottery ticket), using varying levels of difficulty, different themes. Ederer Decl. ¶ 3, Ex. 1 [Complaint].

   ***Sterling's Response*:**

   **(57)**     Sterling disputes this statement in its entirety.  Sterling, not Plaintiff, developed the interior artwork and gameboard presentation used across Sterling's "Scratch & Solve" Hangman series (*see* Def. 56.1 ¶ 24), and Plaintiff has acknowledged the striking differences between the interior artwork and gameboard presentation in his New Zealand Book, and the interior artwork and gameboard presentation created by Sterling (*see* Def. 56.1 ¶ 25).  Moreover, as Plaintiff fails to cite any admissible evidence in support of these statement, Sterling disputes them and requests that they be stricken.

## VIII.        TRADE DRESS INFRINGEMENT

58.     Plaintiff asserts a violation of the unique trade dress used by Plaintiff in the New Zealand Book, in violation of 15 U.S.C. § 1125(a). Ederer Decl. ¶ 3, Ex. 1 [Complaint].

   ***Sterling's Response*:**

   **(58)**     Sterling admits that Plaintiff's Complaint asserts a cause of action for trade dress infringement in violation of 15 U.S.C. § 1125, and that Plaintiff has testified that his claimed trade dress purportedly appears exclusively in his New Zealand Book. *See* Def. 56.1 ¶¶ 54-55. Sterling, however, disputes that Plaintiff's pleading articulates the elements of the purported

trade dress found in his New Zealand Book, and further notes that Plaintiff has testified that he does not even know whether his New Zealand Book was ever offered for sale or sold in the U.S. *See* Def. 56.1 ¶¶ 11, 54-61.

59.    Specifically, the non-functional, distinctive, unique and highly successful presentation of the New Zealand Book — namely (a) The one-player format; (b) The scratch-off concept akin to instant lottery tickets; (c) the depiction of the hangman logo on the front; (d) the overall feel of the book as a "challenge", and (e) the placing of the hangman image to the right or the left of the scratch-off guesses — was used by Defendant Sterling in publishing five (5) books in the Scratch & Solve series, described above, without Plaintiff's authorization of such use, and in violation of 15 U.S.C. § 1125(a). Ederer Decl. ¶ 3, Ex. 1 [Complaint].

   ***Sterling's Response:***

   **(59)**    Sterling disputes this statement in its entirety.  Although Plaintiff's Complaint asserts a cause of action for trade dress infringement in violation of 15 U.S.C. § 1125(a), Plaintiff's pleading does not articulate the elements of the purported trade dress found in his New Zealand Book.  S*ee* Def. 56.1 ¶¶ 54-55.  The above purported articulation of Plaintiff's trade dress appears nowhere in Plaintiff's Complaint, and differs dramatically from Plaintiff's prior testimony and verified interrogatory response.  *See* Def. 56.1 ¶¶ 56-59.

   Moreover, when Sterling requested, in its First Set of Requests for Production, that Plaintiff produce "[a]ll Documents and Communications Concerning [his] allegation in Paragraph 38 of the Complaint that "Plaintiffs trade dress is widely recognized by consumers as being associated with Plaintiff and has developed a secondary meaning in the marketplace", Plaintiff responded: "there are no documents responsive to this request".  Ederer Decl. Ex. 5, at Response to Document Request No. 48.  Likewise, when Sterling propounded an interrogatory requesting that Plaintiff "[i]dentify all Persons with knowledge of any facts or evidence that

support if controvert [his] allegation in Paragraph 38 of the Complaint that "Plaintiffs trade dress is widely recognized by consumers as being associated with Plaintiff and has developed a secondary meaning in the marketplace", Plaintiff provided the following verified response:

> *Answer: Sterling would have been aware that the sales of the Scratch-Hangman series have been hugely popular in NEW ZEALAND and US, as reflected by their sales figures, and Peter Gordon's New York Times article(WARD000026)*

Ederer Decl. Ex. 6, at Response to Interrogatory No. 15. As a matter of law, Plaintiff cannot claim U.S. rights in a trade dress that has never been introduced in the U.S. *See* Def. 56.1 ¶ 60.

60. In addition, Plaintiff asserts a violation of the unique trade dress used in the Scratch & Solve series, created jointly with Sterling based on Plaintiff's New Zealand Book and marketed successfully with Plaintiff as Author, in violation of 15 U.S.C. § 1125(a). Ederer Decl. ¶ 3, Ex. 1 [Complaint].

**Sterling's Response:**

**(60)** Sterling disputes this statement in its entirety. Plaintiff unequivocally testified at his deposition that his trade dress claim is premised on the alleged trade dress appearing in his New Zealand Book. *See* Def. 56.1 ¶ 55. Moreover, as Plaintiff fails to cite any admissible evidence in support of this statement, and, therefore, Sterling disputes it and requests that it be stricken.

61. Specifically, the non-functional, distinctive, unique and highly successful presentation of the Scratch & Solve series — namely (a) The one-player format; (b) The scratch-off concept akin to instant lottery tickets; (c) the depiction of the hangman logo on the front; (d) the overall feel of the book as a "challenge"; (e) the placing of the hangman image to the right or the left of the scratch-off guesses; (f) the almost identical format of the inside pages; and, (g) the overall design of the Scratch & Solve series which became a market known product as a direct

result of Plaintiff's authorship — has acquired substantial value and recognition in the United

States and abroad, and was used by Defendant Sterling in publishing five (5) books in the

Scratch & Solve series, described above, without Plaintiff's authorization of such use, and in

violation of 15 U.S.C. § 1125(a). Ederer Decl. ¶ 3, Ex. 1 [Complaint].

### *Sterling's Response*:

(61)    Sterling disputes this statement in its entirety. Although Plaintiff's Complaint

asserts a cause of action for trade dress infringement in violation of 15 U.S.C. § 1125(a),

Plaintiff's pleading does not articulate the elements of the purported trade dress found in his New

Zealand Book. S*ee* Def. 56.1 ¶¶ 54-55. The above purported articulation of Plaintiff's trade

dress appears nowhere in Plaintiff's Complaint, and differs dramatically from Plaintiff's prior

testimony and verified interrogatory response. *See* Def. 56.1 ¶¶ 56-59.

Moreover, when Sterling requested, in its First Set of Requests for Production, that

Plaintiff produce "[a]ll Documents and Communications Concerning [his] allegation in

Paragraph 38 of the Complaint that "Plaintiffs trade dress is widely recognized by consumers as

being associated with Plaintiff and has developed a secondary meaning in the marketplace",

Plaintiff responded: "there are no documents responsive to this request". Ederer Decl. Ex. 5, at

Response to Document Request No. 48. Likewise, when Sterling propounded an interrogatory

requesting that Plaintiff "[i]dentify all Persons with knowledge of any facts or evidence that

support if controvert [his] allegation in Paragraph 38 of the Complaint that "Plaintiffs trade dress

is widely recognized by consumers as being associated with Plaintiff and has developed a

secondary meaning in the marketplace", Plaintiff provided the following verified response:

> *Answer: Sterling would have been aware that the sales of the*
> *Scratch-Hangman series have been hugely popular in NEW*
> *ZEALAND and US, as reflected by their sales figures, and Peter*
> *Gordon's New York Times article(WARD000026)*

Ederer Decl. Ex. 6, at Response to Interrogatory No. 15.  As a matter of law, Plaintiff

cannot claim U.S. rights in a trade dress that has never been introduced in the U.S.  *See* Def. 56.1

¶ 60.

62.     Such non-functional, distinctive and unique trade dress, first developed by

Plaintiff, is well known to the consuming public and the trade as identifying and distinguishing

Plaintiff as the exclusive and unique source of the Scratch & Solve series, used in connection

with such trade dress. *See* Janay Decl. ¶ 15, Ex. M at WARD000012 ("In his clever Scratch &

Solve Hangman, Mike Ward offers a neat twist on an old favorite.").

**Sterling's Response:**

**(62)**     Sterling disputes this statement in its entirety.  Although Plaintiff's Complaint

asserts a cause of action for trade dress infringement in violation of 15 U.S.C. § 1125(a),

Plaintiff's pleading does not articulate the elements of the purported trade dress found in his New

Zealand Book. S*ee* Def. 56.1 ¶¶ 54-55.  Moreover, when Sterling requested, in its First Set of

Requests for Production, that Plaintiff produce "[a]ll Documents and Communications

Concerning [his] allegation in Paragraph 38 of the Complaint that "Plaintiffs trade dress is

widely recognized by consumers as being associated with Plaintiff and has developed a

secondary meaning in the marketplace", Plaintiff responded:  "there are no documents

responsive to this request".  Ederer Decl. Ex. 5, at Response to Document Request No. 48.

Likewise, when Sterling propounded an interrogatory requesting that Plaintiff "[i]dentify all

Persons with knowledge of any facts or evidence that support if controvert [his] allegation in

Paragraph 38 of the Complaint that "Plaintiffs trade dress is widely recognized by consumers as

being associated with Plaintiff and has developed a secondary meaning in the marketplace",

Plaintiff provided the following verified response:

> *Answer: Sterling would have been aware that the sales of the*
> *Scratch-Hangman series have been hugely popular in NEW*
> *ZEALAND and US, as reflected by their sales figures, and Peter*
> *Gordon's New York Times article(WARD000026)*

Ederer Decl. Ex. 6, at Response to Interrogatory No. 15. As a matter of law, Plaintiff cannot

claim U.S. rights in a trade dress that has never been introduced in the U.S. *See* Def. 56.1 ¶ 60.

63.      The use of almost identical trade dress by Sterling in publishing the five (5) books

described above led consumers to confuse these books with the highly successful Scratch &

Solve series authored and made successful by Plaintiff. Ederer Decl. ¶ 3, Ex. 1 [Complaint].

**Sterling's Response:**

**(63)**      Sterling disputes this statement in its entirety. Plaintiff has presented no evidence

of any actual consumer confusion between his purported New Zealand Book trade dress and any

of the complained-of books. *See* Def. 56.1 ¶ 61. Moreover, as Plaintiff fails to cite any

admissible evidence in support of this statement, Sterling disputes it and requests that it be

stricken.

64.      Defendant Sterling published *Trivia Hangman* with Defendant Heaney as the

author. Janay Decl. ¶ 14, Ex. L at WARD000005.

**Sterling's Response:**

**(64)**      Sterling admits that, on or about October 5, 2010, Sterling published *Trivia*

*Hangman,* using "sufficient puzzles to comprise a 160-page book" with game words that had

been contributed by Francis Heaney. *See* Def. 56.1 ¶¶ 36-37.

65.      Defendant Sterling published *Hollywood Hangman* with Defendant Blindauer as

the author. Janay Decl. ¶ 14, Ex. L at WARD000006.

*Sterling's Response*:

(65)     Sterling admits that, on or about November 1, 2011, Sterling published

*Hollywood Hangman*, using "92 puzzles and answers to comprise a 96-page book" that had been

contributed by Patrick Blindauer. *See* Def. 56.1 ¶¶ 41-42.

66.     Defendant Sterling published *Science Hangman*, *Geography Hangman*, and

*Spelling Bee Hangman*, on its own under the "Jack Ketch" Pseudonym as the author. Janay Decl.

¶ 14, Ex. L at WARD000007-11.

*Sterling's Response*:

(66)     Sterling admits that, on or about February 5, 2013, Sterling published three books

in its "Scratch & Solve" Hangman series under the pseudonym "Jack Ketch" — *Science*

*Hangman*, *Geography Hangman*, and *Spelling Bee Hangman*. *See* Def. 56.1 ¶ 46.

67.     Defendant B&N acquiesced in the publishing of the five (5) books described

above (heretofore and hereinafter "Infringing Books"). Ederer Decl. ¶ 3, Ex. 1 [Complaint].

*Sterling's Response*:

(67)     As Plaintiff fails to cite any admissible evidence in support of this statement,

Sterling disputes it and requests that it be stricken.

68.     Defendant Sterling first discovered Plaintiff's unique trade dress when Plaintiff

approached him to publish Scratch Hangman books in the United States:

> Another big success is our "Scratch & Solve" line of hangman
> books that work like instant lottery tickets. A guy in New Zealand
> had done it there, and he wanted to expand to the U.S., so he
> contacted me. Less than a minute after I opened the envelope, I
> knew it was going to be huge. We've sold a million of those.

Janay Decl. ¶ 8, Ex. F at WARD000026.

***Sterling's Response***:

(68)    Sterling disputes that it ever "discovered Plaintiff's unique trade dress". *See* Def.

56.1 ¶¶ 54-60. Sterling further notes that the above quoted language, on its face, has nothing to

do with any purported trade dress.

69.    In an attempt to describe the trade dress infringement in his own words, Plaintiff

provided the following testimony during his March 20, 2014 deposition:

> Q. Anything more significant than that in terms of the significant
> elements of your trade dress or does [your response to
> Interrogatory No. 5] say it all?
>
> A. In so much as if anybody buys a product, they generally buy it
> because they know their product. The Hangman game has been
> around hundreds of years, it has even preceded crosswords, so
> once a person sees the name Hangman on the book, it would pique
> their interest, they would open the book, it would pique their
> interest, they would open the book, see it was a sole playing game
> that incorporated scratch-off ink and that would entice them to
> purchase the book.
>
> Q. So those, what you just said, are the elements of the trade dress
> that you claim my clients have infringed; correct?
>
> A. That and the fact that I supplied your client with illustrations
> that were copyrighted and [Sterling] produced books based on
> illustrations that I supplied.
>
> Q. Right. But I'm trying to focus on what are the elements of your
> trade dress and is this an accurate statement in your mind of the
> elements of your trade dress?
>
> A. Yes, it is. The look and the feel of the whole book.
>
> Q. Anything more specific than that?
>
> A. Well, if you compare both books, you can see the trade dress is
> obvious.

Ederer Decl. ¶ 6, Ex. 4 at 165:15-166:20.

***Sterling's Response***:

(69)    Undisputed. *See* Def. 56.1 ¶ 59.

### IX.    DEFENDANTS' UNFAIR COMPETITION UNDER NEW YORK COMMON LAW.

70.    From the July 9, 2004 email (Janay Decl. ¶ 5, Ex. C at WARD00042) onward Plaintiff and Defendant cooperated and produced approximately forty (40) titles in the U.S. under the "Scratch and Solve" moniker with Mike Ward as the Author and continued to sell over 1.5 million copies. Janay Decl. ¶ 9, Ex. G at WARD000090.

*Sterling's Response*:

(70)    Sterling admits that, since September 2005, Sterling has published approximately forty titles in its "Scratch & Solve" series that include "text" (*i.e.*, game words) contributed by Plaintiff, and that over 1.5 million copies of such books have been sold. Plaintiff fails to cite any admissible evidence in support of the remainder of this statement, and, therefore, Sterling disputes it and requests that it be stricken.

71.    In May of 2009, without notifying Ward and without Ward's permission or consent, Sterling began entered into a Publishing Agreement with it's own employee Francis Heaney for a title in the "Scratch and Solve" series that incorporated the identical scratch-off single player hangman game that Ward introduced to Sterling and that they had been publishing in Ward's name since "Scratch & Solve Hangman #1" published in 2005. Janay Decl. ¶ 14, Ex. L at WARD000005.

*Sterling's Response*:

(71)    Sterling admits that, on or about May 28, 2009, Sterling entered into a publishing agreement with Defendant Francis Heaney for a Work (defined as "sufficient puzzles to compromise a 160-page book") tentatively entitled *Trivia Hangman*, which was ultimately published in October 2010 as part of Sterling's "Scratch & Solve" Hangman series. *See* Def. 56.1 ¶¶ 36-37. Sterling further admits that the interior artwork and gameboard presentation that

it developed and contributed to other books in its "Scratch & Solve" Hangman series, including *Scratch & Solve Hangman #1*, is similar to the interior artwork and gameboard presentation that Sterling initially developed for use in *Trivia Hangman*. *See* Def. 56.1 ¶¶ 24, 26, 38. Sterling disputes, however, any implication that Sterling had an obligation to notify Plaintiff or obtain Plaintiff's "permission or consent" to publish *Trivia Hangman* (*see* Ederer Decl. Ex. 11), and, as Plaintiff fails to cite any admissible evidence in support of this statement, Sterling disputes it and requests that it be stricken.

72.     Sterling then published four (4) additional titles once using another employee Patrick Blindauer for a title in 2011 and then three other times using a pseudonym "Jack Ketch" in 2013. Janay Decl. ¶ 14, Ex. L at WARD000007-11.

**Sterling's Response:**

**(72)**     Sterling admits that, on or about November 1, 2011, Sterling published *Hollywood Hangman*, using "92 puzzles and answers to comprise a 96-page book" that had been contributed by Patrick Blindauer. *See* Def. 56.1 ¶¶ 41-42. Sterling further admits that, on or about February 5, 2013, Sterling published three (3) additional books under the pseudonym "Jack Ketch". *See* Def. 56.1 ¶ 46. Plaintiff fails to cite any admissible evidence in support of the remainder of this statement, and, therefore, Sterling disputes it and requests that it be stricken.

## X.     DEFENDANTS' UNJUST ENRICHMENT AT THE EXPENSE OF PLAINTIFF.

73.     Defendant have profited on the sale of Infringing Books. Janay Decl. ¶ 6, Ex. D at WARD0000088.

**Sterling's Response:**

**(73)**     As Plaintiff fails to cite any admissible evidence in support of his statement that Sterling profited from the sale of the complained-of books, Sterling disputes it and requests that

it be stricken. Defendants further note, for purposes of clarification, that the citation provided by Plaintiff above corresponds to a 2008 email that has nothing to do with any of the complained-of books, the earliest of which was not published until October 2010. *See* Def. 56.1 ¶ 37.

74.     Plaintiff testified that Defendant's livelihood was stripped away from him.

Q. What actual monetary loss have

you suffered?

A. They took away my livelihood.

Q. The livelihood being the sale of

this series of books?

A. My livelihood was derived from

the income from royalties from Sterling from

the Scratch Hangman title.

Q. So you lost your royalties. In

other words, they sold these books, they

paid royalties to other people and you

didn't get them; right?

A. Yes.

Janay Decl. ¶ 28, Ex. Z [Plaintiff Deposition at 170: 2-14].

***Sterling's Response***:

(74)     Sterling admits that Plaintiff testified as quoted above, but disputes that it is liable to Plaintiff for any purported loss, and further notes, for purposes of clarification, that Plaintiff provided the following additional testimony:

Q:     Have you done anything, sir, to attempt to find another
publisher in the United States to publish your Hangman
series, Scratch Hangman series?

A:     No.

Q:    Why not?

A:    Why should I?

Q:    You said that Sterling has deprived you of your livelihood, namely the royalties you receive from books that you authored that are published and sold; correct?

A:    Because that wouldn't show much loyalty to Sterling if Sterling were to come up with a settlement out of court. The reason I came over here from New Zealand was to see if a settlement deal can be done.

Janay Decl. Ex. Z, at 178:16-179:8; *see also* Janay Decl. Ex. Z, at 179:9-180:4.


Dated: New York, New York                    ARNOLD & PORTER LLP
       July 11, 2014

                                    By:    _Louis S. Ederer_
                                           Louis S. Ederer
                                           Matthew T. Salzmann
                                           Maxwell C. Preston
                                           399 Park Avenue
                                           New York, New York  10022
                                           Tel:  212.715.1000
                                           Fax:  212.715.1399

                                           *Attorneys for Defendants*