UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL WARD d/b/a/ BRAINTEASER PUBLICATIONS,

      Plaintiff,

 - against -

BARNES & NOBLE, INC., STERLING PUBLISHING CO., INC., FRANCIS HEANEY, and PATRICK BLINDAUER,

      Defendants.

---

Civil Action No. 13-cv-7851 (JMF)

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR PARTIAL RECONSIDERATION

ARNOLD & PORTER LLP
Louis S. Ederer
Matthew T. Salzmann
Maxwell C. Preston
399 Park Avenue
New York, New York 10022
Tel: 212.715.1000
Fax: 212.715.1399

*Attorneys for Defendant*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...................................................................................................................................2

A.    Plaintiff "Contributed" Nothing to the Instructions
in the Sterling Books............................................................................................................2

B.    Plaintiff Concedes He Did Not Author and Is Not the Owner
of the Instructions In the Sterling Books ............................................................................5

C.    This Court Should Not Consider the Ward Declaration or Exhibits ...................................8

D.    Reconsideration of the Court's Feb. 23 Opinion is Warranted............................................9

CONCLUSION.............................................................................................................................10

# TABLE OF AUTHORITIES

Page

*Affiliated Hosp. Prods., Inc. v. Merdel Game Mfg. Co.*,
    513 F.2d 1183 (2d Cir. 1975)...............................................................................................3

*Capitol Records, LLC v. Vimeo, LLC*,
    972 F. Supp. 2d 537 (S.D.N.Y. 2013).................................................................................8, 9

*Community for Creative Non-Violence v. Reid*,
    490 U.S. 730 (1989)................................................................................................................7

*Harris v. Cochise County*,
    2010 WL 960392 (D. Az. Mar. 15, 2010) ...........................................................................10

*Richard J. Zitz, Inc. v. Pereira*,
    225 F.3d 646, 2000 WL 1239830 (2d Cir. Aug. 31, 2000) ................................................7, 8

> *"Plaintiff's U.S. copyright registrations ... protect the 'Scratch and Solve' instructions insofar as the instructions constitute the 'text' of the books."*

Feb. 23 Opinion, Dkt. 38 at 16.

> *"[T]he content for which Plaintiff ha[s] a United States copyright [consists of] the text or words that comprised the solutions to the various hangman puzzles."*

Plaintiff's Local Rule 56.1<br>Counterstatement, Dkt. 28 ¶ 33.

## PRELIMINARY STATEMENT

Plaintiff's otherwise incomprehensible opposition to Sterling's Motion for Partial Reconsideration nevertheless concedes the exact point Sterling maintains the Court overlooked in denying in part Sterling's Motion for Summary Judgment with respect to the instructions in the Challenged Books. Plaintiff now readily admits that he *did not* create the instructions that appear in any of the Hangman books Sterling published under his name (the "Sterling Books"). Rather, at most Plaintiff contends that he provided Sterling with a copy of the substantially different instructions that appeared in his earlier New Zealand Book and contributed an uncopyrightable idea six years later. This is consistent with the Court's own factual finding that it was *Sterling* who created the instructions in the Sterling Books. *See* Dkt. 38 at 4 (citing Dkt. 21, Ex. 12 ). Plaintiff further concedes that Sterling had (and still has) the right, at any time, to register in its own name anything it contributed to the Sterling Books — including the instructions. *See* Dkt. 46 at 4. Therefore, by law, and consistent with the parties' publishing agreements, Plaintiff is not the author (and therefore cannot be the copyright owner) of the instructions in the Sterling Books. Accordingly, if the Court follows its own clear findings of fact, on reconsideration it should grant summary judgment and dismiss the last claim of infringement in this litigation.

Further, as noted in the above quotations, in his summary judgment briefing Plaintiff conceded that the only "text" he contributed to any of the Sterling Books — and, accordingly,

the only "text" covered by any copyright registrations for those books — was the "text or words that comprised the solutions to the various hangman puzzles." Dkt. 28 ¶ 33. As the Court found in its Feb. 23 Opinion, this concession binds Plaintiff as a matter of law. Dkt. 38 at 15. Now, in opposition to Sterling's motion, Plaintiff tries to backtrack from this concession, apparently arguing that it applies only to certain of the Sterling Books but not others (*see* Dkt. 46 at 4-6), an argument that is nothing short of nonsensical.

Finally, realizing that his binding concession precludes a finding that his U.S. copyright registrations cover the instructions in the Sterling Books, Plaintiff reverses field and argues that the instructions in the Challenged Books infringe the instructions in his New Zealand Book. Once again discarding his U.S. copyright theory, Plaintiff now asks the Court to decide the issue of infringement by comparing the instructions in the Challenged Books with those in his New Zealand Book. *See* Dkt. 46 at 3-5; Dkt. 45 ¶ 5. However, aside from the fact that the two sets of instructions are nothing alike (other than they both explain how to play a similar single-person hangman game), this reversal of field merely underscores the fact that the "text" covered by Plaintiff's U.S. copyright registrations does not include the instructions, just as Plaintiff conceded in his summary judgment briefing.

## ARGUMENT

### A.   Plaintiff "Contributed" Nothing to the Instructions in the Sterling Books

In his opposition papers, Plaintiff contends that although he did not draft the instructions in the Sterling Books, he nevertheless "contributed" to them in some fashion. Thus, Plaintiff argues that the instructions in the Sterling Books were merely "paraphrased" from the instructions in his New Zealand Book, were "fundamentally based on and intertwined" with them, and are not "materially different" from them. *See* Dkt. 46 at 3, 5. Plaintiff even goes so far as to argue that "cit[ing] a few differences between the instructions on [sic] Ward's New

2

Zealand books" and those appearing in the Sterling Books "is the definition of failing to see the forest for the trees." *Id.* at 5.

Sterling, however, does not know what forest Plaintiff is referring to. As discussed in Sterling's moving papers, and as the Court itself noted in its Feb. 23 Opinion, the instructions Plaintiff now says he contributed to the Sterling Books are the very instructions he bitterly complained about when Sterling first presented them to him. *See* Dkt. 38 (quoting Dkt. 22 ¶ 24, and Dkt. 21, Ex. 12). Further, as the side-by-side comparison in Sterling's moving papers shows, as a matter of law the instructions in the Sterling Books and the instructions in the New Zealand Book are not even close to being similar, much less "substantially similar". *See* Dkt. 42 at 4. In addition, as the Court found in its Feb. 23 Opinion, any copyright Plaintiff owns in the instructions is extremely limited — not only does copyright law not protect themes or ideas (*see* Dkt. 38 at 8-9), but game instructions are entitled to only the thinnest scope of protection, since there are only a limited number of ways to explain how to play a game. *See Affiliated Hosp. Prods., Inc. v. Merdel Game Mfg. Co.*, 513 F.2d 1183, 1188 (2d Cir. 1975).

Now relying entirely on the new arguments and evidence contained in the improperly filed Declaration of Michael Ward (Dkt. 45), Plaintiff's response is twofold. First, Plaintiff contends that the instructions Sterling drafted and sent to him in 2004 were used only in the earlier Sterling Books; later on, Sterling added the words "It's simple, easy and fun," and "Good luck," thereby mimicking the instructions in his New Zealand Book. So, it now appears that Plaintiff's infringement claim is based on the following set of instructions in the Challenged Books, which, on their face, are still not even close to the instructions in Plaintiff's New Zealand Book:

3

| Dkt. 21, Ex. 9 (New Zealand Book) | Dkt. 21, Ex. 25 (*Science Hangman*)[1] |
|---|---|
| *How to Play the Game*<br><br>Its simple, easy and great fun. Scratch the surface to the letters, the right letter will show a number underneath, place this letter in the correct number below.<br><br>The wrong letter will show a cross, when this happens start drawing up your Hangman grid, one line at a time.<br><br>The object of the game is to guess the complete word, saying, etc. before the Hangman grid is completed. You have a total of ten chances to beat the Hangman.......*Good Luck!* | **How to Play Hangman**<br><br>It's simple, easy, and fun. Your goal is to fill in the missing letters at the bottom of each puzzle before the body in the gallows is completed. Scratch the silver oval below one of the letters of the alphabet. (Note: it's best not to leave the book in the sun, which may cause the ovals to become dry and harder to scratch off.) If the letter you guessed is correct, a number—or more than one number—will tell you where to enter this letter in the word or words below. If you are wrong, you'll see a bold ✘ to indicate that your guess is incorrect (you'll just have to imagine the game-show-style buzzer sound effect), in which case you must fill in one of the dotted lines on the body in the gallows.<br><br>There are six parts to the body—two arms, two legs, the torso, and the head. If you find all the letters in the complete word or phrase before you have to fill in six body parts, you win! If not .... Good luck! |

Second, as further "evidence" that Plaintiff somehow contributed to the instructions in the Sterling Books, and therefore the instructions in the Challenged Books somehow infringe those in his New Zealand Book, Plaintiff comes forward with Exhibit A to the Ward Declaration, a document he omitted from the summary judgment record, showing that *six years after* he objected to Sterling's initial set of instructions (Dkt. 21, Ex. 12), he asked Sterling to include in its instructions a warning that the books "need to be stored in a cool place". Aside from the fact that the Ward Declaration and exhibits were submitted without leave of court (*see* discussion at pp. 8-9 below), what Plaintiff asked Sterling to do in 2010 was to add to the instructions a concept or idea. But as the Court clearly and correctly held in its Feb. 23 Opinion, ideas are not protectable by copyright. *See* Dkt. 38 at 8-9 (citing cases holding that copyright protection extends not to an idea, concept or theme, but only to their "expression"). Here, Sterling did not copy Plaintiff's "expression" of his idea to warn readers to "store the [Sterling Books] in a cool place"; instead, just as it did with remainder of the instructions in the Sterling Books, Sterling

---

[1] The instructions shown here appear in one of the five Challenged Books, *Science Hangman*. The same instructions appear in two other Challenged Books, *Geography Hangman* and *Spelling Bee Hangman*. The instructions in the other two Challenged Books, *Trivia Hangman* and *Hollywood Hangman*, are even less similar to the instructions in Plaintiff's New Zealand Book.

created its own, different expression (of a different idea, no less), advising readers that "it's best not to leave the book in the sun":

| Plaintiff's January 7, 2010 Request | Dkt. 21, Ex. 25 (*Science Hangman*) |
|---|---|
| Also, I would like on the instruction page, a note to say that these books need to be stored in a cool place, otherwise the scratch-off printing tends to dry out and becomes hard to scratch. | (Note: it's best not to leave the book in the sun, which may cause the ovals to become dry and harder to scratch off.) |

So, once again, even if this Court were to consider Plaintiff's improperly filed new evidence — which it should not — all this proves is what the Court has already found as a matter of undisputed fact, namely, that Sterling created its own set of instructions, and Plaintiff contributed nothing to them other than unprotectable ideas. Accordingly, on reconsideration, consistent with its own prior factual findings, this Court should grant Sterling's summary judgment motion in its entirety, since, as a matter of law, the instructions in the Challenged Books do not come close to infringing the instructions in Plaintiff's New Zealand Book.

### B. Plaintiff Concedes He Did Not Author and Is Not the Owner of the Instructions In the Sterling Books

While denying Sterling's Motion for Summary Judgment with respect to the instructions, the Court, in its Feb. 23 Opinion, was careful to note that Plaintiff's U.S. copyright registrations only cover the instructions *"insofar as the instructions constitute the 'text' of the [Sterling Books]."* In assuming, however, that this was the case, the Court overlooked its own earlier finding that Plaintiff had conceded, in his improperly filed Rule 56.1 Counterstatement, that Plaintiff's "United States copyright [consists of] the text or words that comprised the solutions to the various hangman puzzles" (Dkt. 28 ¶ 33), and was bound by that concession. *See* Dkt. 38 at 15 (discussing the binding nature of Plaintiff's concession).

Now realizing he is boxed in by his own binding concession, Plaintiff has reversed field and asked the Court to consider his claim for infringement in the context of the instructions in his

5

New Zealand Book. However, perhaps also realizing this could be the death knell of his sole remaining claim, just as he did with respect to the artwork in the Sterling Books, Plaintiff nevertheless argues that he is still entitled to some level of U.S. copyright protection for the instructions. To the extent Sterling understands Plaintiff's argument, what he seems to be saying is that his concession that the "text" in the Sterling Books only encompasses the game words he supplied should apply to the Sterling Books published under the 2012 Agreement, but not to the Sterling Books published under the 2004 Agreement. In particular, Plaintiff argues that the 2004 Agreement somehow gives him broader rights in the instructions because:

> Section 2 of the of the 2004 Agreement stated that "The Publisher shall copyright the Work in the United States in the name of the Author" and that the Publisher "may copyright such material in its own name or in the name of its owner as the Publisher may elect."

*See* Dkt. 46 at 4.

Aside from the fact that Plaintiff's renewed attempt to get around his binding Rule 56.1 concession makes no sense — under what theory could Plaintiff's concession that his copyright registrations do not cover the instructions apply to some of the Sterling Books but not others? — this Court recognized in its Feb. 23 Opinion (*see* Dkt. 38 at 4) that Section 2 of the 2004 Agreement includes the following key italicized wording that Plaintiff conveniently omitted:

> Copyright. The Publisher shall copyright the Work in the United States in the name of the Author. ***If the Publisher supplies material for the Work (such as illustrations)***, the Publisher may copyright such material in its own name or in the name of its owner, as the Publisher may elect.

*See* Dkt. 21, Ex. 11 (emphasis added). Once again, just as the Court found in connection with its dismissal of Plaintiff's claim with respect to the artwork in the Sterling Books (*see* Dkt. 38 at 15-16), this is a clear acknowledgment that it was never the parties' intention that Plaintiff would own of any materials he did not himself "suppl[y] for the Work." To the contrary, as the Court

found, "the 2004 Publishing Agreement (like the subsequent agreements) expressly entitled Sterling to copyright any material it provided for the works in its own name." *Id.* at 16. In other words, just as the Court rightly found with respect to the artwork, to the extent anyone owns the rights to the instructions in the Sterling Books, it is Sterling.[2]

Finally, not only has Plaintiff made a binding concession that the "text" covered by his U.S. copyrights does not include the instructions in the Sterling Books, but the law is in alignment with this. A copyright registration only protects an author to the extent of what he actually authored — even if he contributed ideas for the copyrighted work, he cannot be considered its author if he was not the one who converted the ideas into a particular expression. A case in point is *Richard J. Zitz, Inc. v. Pereira*, 225 F.3d 646, 2000 WL 1239830 (2d Cir. Aug. 31, 2000), in which the plaintiff, a builder of homes, claimed that his copyrighted townhouse designs had been infringed. The District Court, however, found that all the plaintiff had contributed to those designs was his ideas for how the townhouses should appear, which he asked another engineer to incorporate into architectural drawings, but then registered those drawings in his own name. In affirming the dismissal of plaintiff's infringement claims, the Second Circuit held that the plaintiff could not be considered the author or copyright owner of the registered drawings, because "the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Id.* at *3 (citing *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989)). In *Zitz* on the other hand, "[t]hough some of the ideas that went into the copyrighted

---

[2] On the fourth page of his brief, Plaintiff argues that "[t]here is no doubt that the court examined the differences between the 2004 Agreement and the 2012 Agreement" in regard to the issue of copyright ownership. But after examining these agreements, the Court correctly concluded that the language in the 2004 Agreement supports the proposition advanced by Sterling, namely, that whichever party supplied material to the Sterling Books is the party that owns the copyright in that material.

plans were Zitz's," the plaintiff had concededly not created the architectural drawings; indeed, there was no evidence "that a single line in either sets of blueprints Zitz deposited with the Copyright Office was actually drawn by Zitz." *Id.* Similarly here, since all Plaintiff ever did in regard to the instructions was present Sterling with uncopyrightable ideas, and has conceded, and the Court has found, that in contrast to the game words, it was Sterling who actually wrote the instructions, then as a matter of law his U.S. copyright registrations do not cover them.

### C. This Court Should Not Consider the Ward Declaration or Exhibits

As the Court is aware, in opposing Sterling's Motion for Partial Reconsideration, Plaintiff submitted the Declaration in Opposition of Michael Ward, and Exhibits A and B thereto, without leave of court. Local Civil Rule 6.3, however, clearly provides that on a motion for reconsideration, "[n]o affidavits shall be filed by any party unless directed by the Court." The reason for this is obvious — a motion for reconsideration is to be decided on the same motion record, and "is not an opportunity to advance new facts, issues or arguments not previously presented to the Court...." *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 543 (S.D.N.Y. 2013). Here, there is no dispute that Plaintiff failed to seek leave to file the Ward Declaration, yet he submitted a sworn statement that contains all manner of new arguments, as well as documents and other evidence which were in existence at the time, but which he deliberately chose not to include in the summary judgment record. To allow Plaintiff to rely on such new matter now defeats the whole purpose of Local Civil Rule 6.3.

All of that said, the new matter presented by Plaintiff, and in particular Exhibit A (a January 2010 email chain between Plaintiff and Sterling which purports to show Plaintiff's

"contribution" to the instructions in the Sterling Books),[3] actually proves Sterling's point. As discussed in detail above, this "contribution" was nothing more than a request that Sterling incorporate into the instructions, which Sterling had authored six years earlier, the concept that the Sterling Books "need to be stored in a cool place". Sterling then took this uncopyrightable idea and expressed a different idea in its own way, warning the reader "not to leave the book in the sun". The bottom line is that nothing in the Ward Declaration supports any of the constantly shifting infringement claims Plaintiff has made to date.

### D.  Reconsideration of the Court's Feb. 23 Opinion is Warranted

Plaintiff's opposition contends that reconsideration is not warranted because Sterling has failed to demonstrate that the Court "overlooked" any factual matters before it when it issued its Feb. 23 Opinion. With all respect to the Court, however, that is not the case. What the Court "overlooked" in denying summary judgment with respect to the instructions was its own clear-cut findings that (i) Sterling created the instructions in the Sterling Books, (ii) the parties' agreements provide, as does the law of copyright, that each party owns only what it authored and contributed to the Sterling Books, and nothing more, and (iii) Plaintiff has conceded that the "text" referred to in his U.S. copyrights includes only the game words he contributed to them. All Sterling is asking the Court to do now is to carry these findings forward to their logical conclusion, in which case it will also find that Ward does not own, and his copyright registrations do not cover, the instructions in the Sterling Books. In that event, since the Court

---

[3] Regarding Exhibit A to the Ward Declaration, Sterling, in its March 11, 2015 letter (Dkt. 47), erroneously stated that Plaintiff had never produced that exhibit in discovery. In fact, following the Court's issuance of its April 18, 2014 discovery order (Dkt. 18), Plaintiff's counsel did make a supplemental production, but as shown in the attachment to counsel's March 16, 2014 letter (Dkt. 49), Sterling had technical issues accessing that production. On further review, however, it appears Exhibit A was included in the production. Nevertheless, there is no question this exhibit was never made part of the summary judgment record.

has held that the registrations only protect the instructions "insofar as the instructions constitute the 'text' of the books", on reconsideration, summary judgment should be granted with respect to the last remaining sliver of this case — the single page of instructions in these 100-page books.

In this regard, once again the *Capitol Records* case is instructive. In that case, when, on defendant's motion for reconsideration, it was called to District Judge Abrams' attention that her own prior factual findings were inconsistent with her denial of defendant's motion for summary judgment dismissing plaintiff's copyright infringement claims, she overturned her denial and dismissed those claims. *Capitol Records*, 972 F. Supp. 2d at 544-45. In other words, even though Judge Abrams had not technically "overlooked" any facts, her denial of summary judgment was inconsistent with her own clear factual findings. Then, when defendant pointed out those inconsistencies, she used the motion for reconsideration as a vehicle to bring her findings and her decision into alignment. The same result should obtain here.[4]

## CONCLUSION

For all the foregoing reasons, Sterling respectfully requests that the Court grant its Motion for Partial Reconsideration, and upon reconsideration, award summary judgment in favor of Sterling with respect to the instructions in the Challenged Books.

Dated: New York, New York
March 19, 2015

ARNOLD & PORTER LLP

By: *[signature]*
Louis S. Ederer
Matthew T. Salzmann
*Attorneys for Defendants*

---

[4] Similarly, in *Harris v. Cochise County*, 2010 WL 960392 (D. Az. Mar. 15, 2010), the District Court granted a motion for reconsideration reversing its original grant of summary judgment where that outcome was not in line with its own evidentiary findings in the original decision. Accordingly, reconsideration was appropriate to correct this inconsistency. *Id.* at *2 ("The Court's conclusions are inconsistent and, because one purpose of a motion for reconsideration is to correct a manifest error of fact, ... reconsideration is appropriate." (citation omitted)).